Marc Toberoff (S.B. #188547)
*mtoberoff@toberoffandassociates.com*
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| R. LANCE HILL, an individual,<br><br>Plaintiff,<br><br>v.<br><br>METRO-GOLDWYN-MAYER STUDIOS INC., a Delaware corporation, AMAZON STUDIOS LLC, a California limited liability company, UNITED ARTISTS PICTURES INC., a Delaware corporation, and DOES 1-10,<br><br>Defendants. | Case No. 24-CV-1587<br><br>**COMPLAINT FOR:**<br><br>**[1] DECLARATORY RELIEF**<br>**[2] COPYRIGHT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff R. Lance Hill ("Hill" or "Plaintiff"), for his complaint against defendants Metro-Goldwyn-Mayer Studios Inc. ("MGM"), Amazon Studios LLC ("Amazon Studios"), and United Artists Pictures Inc. (collectively, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1. Hill, also known as by his Hollywood pen name, David Lee Henry, is an accomplished author of both American literature and film. Hill's novels, including *Nails* (1970), *King of White Lady* (1975), and *The Evil That Men Do* (1978) showcase his talent for crafting compelling narratives infused with suspense, intrigue, and psychological depth. As a screenwriter, he has lent his creative vision to several notable films, such as *Harry Tracy, Desperado* (1982), *The Evil That Men Do* (1984), *8 Million Ways to Die* (1986), *Road House* (1989) and *Out for Justice* (1991). Each screenplay bears the hallmark of Hill's distinctive storytelling style, characterized by sharp dialogue, dynamic characters, and gripping plots that resonate with audiences long after the credits roll.

2. Hill is the author of the original screenplay entitled *Roadhouse* dated July 1986 (the "Screenplay"), which he wrote "on spec" on his own initiative.

3. When United Artists Pictures, Inc. ("United Artists") expressed interest in producing a motion picture based on his Screenplay, Hill transferred his copyright therein to the studio by a written assignment executed on September 16, 1986. Thereafter, United Artists produced and exploited the 1989 motion picture, *Road House* (the "1989 Film") based on the Screenplay.

4. On November 10, 2021, Hill properly availed himself of his right under the Copyright Act to recover the copyright to his Screenplay by timely serving United Artists' successors with a statutory notice of termination of Hill's 1986 copyright grant, under 17 U.S.C. § 203(a), bearing an effective termination

1  date of November 11, 2023, and by filing the notice of termination with the U.S.
2  Copyright Office.

3    5. On November 11, 2023, the Screenplay's copyright thereby duly
4  reverted to Hill under the Copyright Act. Yet, in contravention of the Act's
5  fundamental authorial termination right, Defendants refused to acknowledge
6  Hill's statutory termination.

7    6. Instead, Defendants steamrolled ahead with the production of a
8  remake of the 1989 Film (the "2024 Remake") derived from Hill's Screenplay.
9  Defendants' unauthorized 2024 Remake was not completed until late January
10 2024, well *after* the effective date of Hill's statutory termination. This case arises
11 from Defendants' blatant copyright infringement due to their willful failure to
12 license the requisite motion picture and ancillary rights to Hill's Screenplay
13 underlying their derivative 2004 Remake as required by law.

## PARTIES

15   7. Plaintiff R. Lance Hill, aka David Lee Henry, is an individual,
16 citizen and resident of Canada.

17   8. Upon information and belief, Defendant MGM is a corporation
18 organized and existing under the laws of the State of Delaware, which has its
19 principal place of business in the County of Los Angeles, California.

20   9. Upon information and belief, Defendant Amazon Studios is a
21 limited liability company organized and existing under the laws of the State of
22 California, which has its principal place of business in the County of Los
23 Angeles, California.

24   10. Upon information and belief, Defendant United Artists Pictures Inc.
25 is a corporation organized and existing under the laws of the State of Delaware,
26 which has its principal place of business in the County of Los Angeles,
27 California.
28 / / /

# JURISDICTION AND VENUE

11. This is a civil action for copyright infringement and injunctive relief under the United States Copyright Act, 17 U.S.C. §§ 101 *et seq*. (hereinafter, "Copyright Act") and the Declaratory Judgment Act, 28 U.S.C. § 2201.

12. This Court has original subject matter jurisdiction over the claims set forth in this complaint pursuant to the Copyright Act, 17 U.S.C. § 101 *et seq*., 28 U.S.C. §§ 1331, 1332, and 1338(a), and the Declaratory Judgment Act, 28 U.S.C. § 2201.

13. Upon information and belief, this Court has personal jurisdiction over MGM because it has its principal place of business in the State of California and in this District, and because a substantial portion of the relevant acts complained of herein occurred in the State of California and in this District.

14. Upon information and belief, this Court has personal jurisdiction over Amazon Studios because it has its principal place of business in the State of California and in this District, and because a substantial portion of the relevant acts complained of herein occurred in the State of California and in this District.

15. Upon information and belief, this Court has personal jurisdiction over United Artists Pictures Inc. because it has its principal place of business in the State of California and in this District, and because a substantial portion of the relevant acts complained of herein occurred in the State of California and in this District.

16. Upon information and belief, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside in this District, and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this District.

17. Plaintiff is informed and believes and based thereon alleges that the fictitiously named Defendants captioned hereinabove as Does 1 through 10,

inclusive, and each of them (hereinafter "DOE(S)") were in some manner responsible or legally liable for the actions, damages, events, transactions and circumstances alleged herein. The true names and capacities of such fictitiously named defendants, whether individual, corporate, associate, or otherwise are presently unknown to Plaintiff, and Plaintiff will amend this Complaint to assert the true names and capacities of such fictitiously named Defendants when the same have been ascertained. For convenience, each reference herein to a named Defendant or to Defendants shall also refer to the Doe Defendants and each of them.

18. Plaintiff is informed and believes and based thereon alleges that each of the Defendants was the agent, partner, servant, employee, or employer of each of the other Defendants herein, and that at all times herein mentioned, each of the Defendants was acting within the course and scope of such employment, partnership and/or agency and that each of the Defendants is jointly and severally responsible for the damages hereinafter alleged.

## STATUTORY BACKGROUND

19. The Copyright Act provides an author with the inalienable right to recapture the copyright to the author's creative material, after a lengthy waiting period, by statutorily terminating without cause prior transfer(s) of such copyright. Termination is carried out by simply serving advance notice of termination on the original grantee or its successors and filing the notice with the U.S. Copyright Office, within delineated time windows. 17 U.S.C. § 203(a).

20. Section 203(a) provides for the termination of post-1977 transfers of rights under copyright by the author during a five (5) year period commencing thirty-five (35) years after the date the rights were transferred. *Id*. § 203(a)(3). The requisite notice of termination sets forth the "effective date" of termination, within the five-year termination "window," when the previously transferred rights under copyright will be recaptured by the author. Notice of

termination may be served by the author at any time between ten (10), and two (2) years before the effective termination date. *Id*. § 203(a)(4)(A).

21. "Works for hire" are the sole exemption from the Copyright Act's termination provisions. *Id*. § 203(a).

22. The termination right is the most important authorial right provided by the Copyright Act, short of copyright itself. Congress was therefore very protective of the termination right and, to that end, enacted a number of provisions to prevent any waiver or encumbrance of the termination interest even by the author himself. For instance, "[t]ermination of the [author's copyright] grant may be effected notwithstanding any agreement [by the author] to the contrary[.]" *Id*. § 203(a)(5).

23. Furthermore, "[h]armless errors in a [termination] notice that do not materially affect the adequacy of the information required to serve the purposes of . . . section [203(a)] of title 17, U.S.C. . . . shall not render the notice invalid." 37 CFR § 201.10(e)(1).

24. Congress anticipated that an author's exercise of his/her termination right would usually result in a new license by the author to the terminated grantee or its successors (like Defendants). To that end, Congress provided "the original grantee" or its successor with the exclusive opportunity to re-license an author's recaptured copyright "after the notice or termination has been served," but before "the effective date of the termination." *Id*. § 203(b)(4). The termination provisions thus reflect a deliberate balance of competing interests.

25. Under the termination provisions, prior derivative works can continue to be freely distributed just as before pursuant to the terms of the author's original grant. 17 U.S.C. § 203(b)(1). Thus, Hill's recovery of the U.S. copyright to the Screenplay does not prevent Defendants or its licensees from continuing to exploit prior derivative works, including the original 1989 Film; it simply requires a new license for remake or sequel films, and other derivative

- 5 -

works completed after the effective November 11, 2023 Termination date, like the 2024 Remake.

26. In addition, because the Copyright Act has no extraterritorial application, foreign rights to the Screenplay also remain with Defendants, notwithstanding Hill's Termination. After the November 11, 2023 Termination date, a new U.S. license from Hill to Defendants of the Screenplay would fairly enable its author Hill to finally participate with others in the proven market value and financial rewards of his original creation, precisely as Congress intended. H.R. Rep. No. 94-1476, at 124 (1976).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### The Chain of Title

27. In or around July of 1986, Hill authored the *Roadhouse* Screenplay "on spec," meaning that he wrote it on his own volition, in the hope of finding an interested motion picture studio once the work was completed.

28. Under the Copyright Act (17 U.S.C. § 102(a)), Hill secured a statutory copyright in his Screenplay the moment it was fixed in a tangible medium of expression (i.e., when it was written) and regardless of whether or when the Screenplay was published or registered.

29. Upon completion of the Screenplay, Hill's agents at Creative Artists Agency shopped the Screenplay to potential buyers.

30. United Artists recognized the potential in Hill's spec Screenplay and entered into a "Literary Purchase Agreement" with Hill doing business as Lady Amos Literary Works, Ltd. ("Lady Amos"), his wholly owned loan-out entity, and secured a copyright "Assignment" of all rights in the Screenplay from Hill and Lady Amos, all executed on September 16, 1986 (collectively, the "1986 Grant"). This culminated in the production and release of the now-iconic 1989 Film *Road House* starring Patrick Swayze derived from the Screenplay.

31. Hill had neither an employment nor a contractual relationship with

United Artists when he wrote the Screenplay. Rather, United Artists attained the 1986 Grant from Hill well *after* the Screenplay had been completed.

32. On November 10, 2021, Hill properly availed himself of his termination rights under the Copyright Act, 17 U.S.C. § 203(a), by serving Defendants with a statutory notice of termination, terminating Hill's 1986 Grant of all rights under U.S. copyright in his Screenplay, effective November 11, 2023 (the "Termination").

33. The Termination notice, which was recorded with the U.S. Copyright Office on January 8, 2022 (Doc. No. V9985D535), fully complied with Section 203(a) of the Copyright Act and the regulations promulgated thereunder by the Register of Copyrights, 37 C.F.R. § 201.10.

34. Out of an abundance of caution, on November 10, 2021, Hill sent an additional notice of termination, pursuant to 17 U.S.C. § 203(a), to Lady Amos and Defendants, terminating any express or implied grant by Hill to Lady Amos of any rights under U.S. copyright in the Screenplay, with an effective termination date of November 11, 2023 (the "Lady Amos Termination").

35. The Lady Amos Termination notice, which was recorded with the U.S. Copyright Office on January 8, 2022 (Doc. No. V9982D930), likewise complied with Section 203(a) of the Copyright Act and 37 C.F.R. § 201.10.

36. On November 11, 2023, the effective date of both the Termination and the Lady Amos Termination, Hill once again became the sole owner of the U.S. copyright in his original Screenplay.

37. On December 15, 2021, Defendants sent a letter to Plaintiff objecting to the Termination on the purported grounds that Hill was barred from exercising his statutory termination rights with respect to his 1986 Grant because the Screenplay supposedly qualified as a work for hire for Hill's wholly owned loan-out entity Lady Amos. As the sole basis for their assertion Defendants cited a conclusory form recitation in the 1986 Grant, drafted by United Artists, which

says the Screenplay was purportedly a "work made for hire" for Lady Amos.

38. Plaintiff is informed and believes and thereon alleges that United Artists, as well as other movie studios, included this form "work made for hire" recitation by rote whenever transacting with an author's loan-out entity regardless of the true circumstances of a work's creation and whether, as a matter of fact and law, it even qualified as a "work made for hire" under the Copyright Act.

39. Here, the Screenplay at issue, on both the facts and the law, did not constitute or qualify in any respect as a "work made for hire" under the Copyright Act, 17 U.S.C § 101.

40. Hill had no actual employment relationship with Lady Amos and Hill did not conceive or write his spec Screenplay within the scope of any such employment.

41. Hill was not paid a salary by Lady Amos, nor did Hill receive any compensation from Lady Amos or any other entity to write the Screenplay. Lady Amos did not withhold any income tax, social security and/or Medicare (nor pay an employer's matching amount), nor did Lady Amos report or pay payroll taxes or Federal Unemployment tax (FUTA) with respect to Hill, as required by law for actual employees. Hill also did not receive any customary employment benefits from Lady Amos, such as healthcare, a pension, unemployment insurance, or workers' compensation.

42. Nor was the Screenplay written by Hill pursuant to a written agreement or other written instrument wherein Lady Amos specially ordered or commissioned Hill to write the Screenplay as Lady Amos's "work made for hire."

43. Hill was Lady Amos' sole owner, and the entity did not have any actual employees, and had no separate operations from that of Hill. At all times relevant, Hill exercised complete control of Lady Amos, which merely served as

- 8 -

Hill's alter ego for doing business.

44. Neither Lady Amos nor any person or entity assigned, supervised or controlled Hill's writing of the Screenplay. Hill had complete autonomy over every aspect of the work's creation. Lady Amos played no role in the writing of the Screenplay. Lady Amos did not oversee or review Hill's progress in writing the Screenplay, participate in the Screenplay's development, nor did it set any deadlines for Hill with respect to his writing of the Screenplay.

45. Defendants' contention that United Artists' form recitation in the 1986 Grant retroactively converted Hill's pre-existing spec Screenplay into a work made for hire is contrary to law and, as such, United Artists' post-facto boilerplate is of no legal force and effect.

46. United Artists made Hill a party to the 1986 Grant and required Hill's notarized personal signature on the Assignment transferring the copyright in his spec Screenplay to United Artists precisely because the Screenplay did <u>not</u> actually qualify as Lady Amos's "work made for hire."

47. To the extent that the mere work for hire recitation inserted by United Artists in the 1986 Grant is deemed or construed to effectively waive or strip Hill of his inalienable termination right, as now claimed by Defendants, it is also void *ab initio* as an "agreement to the contrary" under 17 U.S.C. § 203(a)(5).

48. Defendants' actions with respect to the 2024 Remake belie their blanket assertion that Hills' Termination is ineffective. Hill is informed and believes and based thereon alleges that Defendants expressly and repeatedly set and emphasized November 10, 2023 as their self-imposed deadline to complete the 2024 Remake — the very day before Hill's Termination was to take effect on November 11, 2023. This is no coincidence.

49. Hill is further informed and believes and based thereon alleges that Defendants went so far as to take extreme measures to try to meet this

November 10, 2023 deadline, at considerable additional cost, including by resorting to the use of AI (Artificial Intelligence) during the 2023 strike of the Screen Actor's Guild ("SAG") to replicate the voices of the 2024 Remake's actors for purposes of ADR (Automatic Dialogue Replacement), all in knowing violation of the collective bargaining agreements of both SAG and the Director's Guild of America (DGA) to which Defendants were signatories. These are not the actions of companies that truly believe that Hill's Termination is ineffective.

50. Ultimately, Defendants failed to complete the 2024 Remake until late January 2024, well after Hill's Termination had taken effect.

<u>The 2024 Remake Exploits Hill's Screenplay</u>

51. As the 2024 Remake remade the 1989 Film, that was based on Hill's original Screenplay, it is unsurprising that the 2024 Remake's shooting script reveals key literary elements substantially similar to those contained in the Screenplay, all as set forth in more detail in Exhibit 1, attached hereto and incorporated by reference herein.

52. In summary, both the Screenplay and the 2024 Remake tell the story of Dalton, a master of various fighting disciplines who is hired to be a bouncer at a bar crawling with troublemakers. With a body covered in scars but in peak physical condition, Dalton exudes a studied nature when it comes to his work, a sort of Art of War approach to being a bouncer. He has a sixth sense for detecting impending violence and displays a levelheaded temperament in violent situations—unless his loved ones are harmed, which sets off a tremendous rage in Dalton.

53. In both works, the introductory scenes establish Dalton's high threshold for pain by depicting him as unfazed when stabbed, which he proceeds to treat himself. In both works, while tending to his stab wound, Dalton receives a job offer to work as a bouncer at a bar with a rough and rowdy clientele.

54. In both works, the owner of the bar is stressed and overwhelmed

with the violence and chaos that have overtaken their establishment. The assortment of characters who cause trouble at the bar are depicted as violent and cartoonishly crude.

55. In both works, Dalton encounters an initial adversary at the bar, a rabble-rouser who frequently comes into the bar to cause trouble. In both works, this antagonist is overconfident and instigates a fight with Dalton but is outmatched by Dalton's martial arts skills.

56. Both works depict the bar's staff as lethargic and disinterested when Dalton first arrives. In both works, Dalton becomes a mentor to younger bouncers at the bar, who grow eager to learn and are somewhat in awe of Dalton. Both works feature montages where different nights are presented in a progression to show how Dalton trains the other bouncers how to react appropriately to violent patrons and maintain order in the bar without resorting to fighting, shaping them into a coherent team.

57. Both works are set in a sprawling bar with a stage for bands to perform which is wrapped in chicken wire to protect the musicians from patrons throwing objects, such as beer bottles, or otherwise attacking them.

58. In both works, Dalton has minimal worldly possessions. He drives an old beat-up car and eschews staying at a local motel to live in an unconventional, minimally appointed space. He speaks relatively little, preferring to listen and observe, but opens up as the story progresses, especially to his love interest—Dr. J. "Doc" Ellsworth in the Screenplay, and Dr. Elizabeth "Ellie" Eames in the 2024 Remake.

59. Ellie, just like Doc, is confident and aggressive, a bit suspicious of Dalton when they first meet in the emergency room where Dalton is being treated for post-fight injuries, but intrigued by Dalton nonetheless. After the two characters eventually begin a romantic relationship, Ellie, just like Doc, makes the first move, physically, in their relationship.

60. Ellie, just like Doc, is quite young for a doctor. In the Screenplay, Doc's father is only in his fifties and Dalton mistakes Doc for a nurse. The shooting script for the 2024 Remake describes Ellie as being the "head of the ER at 28."

61. Both works depict similar themes regarding the undercurrent of violence in America and examine through Dalton's persona the complex nature of masculinity.

62. Given that the 2024 Remake is clearly derived from Hill's original Screenplay, the Writers Guild of America has awarded Hill "Story by" credit on the 2024 Remake (under his pseudonym David Lee Henry) and the credit: "Based on the motion picture 'Road House,' Screenplay by David Lee Henry and Hilary Henkin, Story by David Lee Henry."

<u>Defendants' 2024 Remake Infringes Hill's Copyright in His Screenplay</u>

63. Despite the 2024 Remake's obvious exploitation of the Screenplay, Defendants did not bother to even try to secure a new license of film and ancillary rights in the Screenplay following Hill's recovery on November 11, 2023 of his U.S. copyright therein.

64. The 2024 Remake was not completed until well after the 1986 Grant had been statutorily terminated on November 11, 2023. Consequently, the 2024 Remake, unlike the 1989 Film, does not qualify for the "prior derivative works exception" to statutory termination, 17 U.S.C. § 203(b)(1).

65. Hill is informed and believes and based thereon alleges that at all relevant times hereto Defendants were and are involved in the financing, production, and/or distribution of the 2024 Remake in the United States and that Defendant MGM is the 2024 Remake's purported copyright holder.

66. Without a newly secured license, Defendants' exploitation of the 2024 Remake in the United States constitutes ongoing willful infringement of Hill's copyright, including without limitation, his exclusive right to "prepare

derivative works based upon the copyrighted work," 17 U.S.C. § 106(2), which Defendants had owned pursuant to the 1986 Grant, but lost on November 11, 2023 under the Copyright Act.

67. On November 10, 2021, Defendants were placed on clear notice of Hills' pending recovery of the copyright to his Screenplay when Hill served them with his statutory notices of termination, effective November 11, 2023. Under 17 U.S.C. § 203(b)(4), Defendants, as successors to the 1986 Grant had the ample and exclusive opportunity to re-license Hill's Screenplay over the two-year period between November 10, 2021 (when Hill's notices of termination were served) and November 11, 2023 (when the terminations became effective).

68. On December 15, 2021, however, Defendants responded in total denial of the fact that they were required to secure a new copyright license from Hill to continue exploiting his Screenplay. Instead, they attempted, contrary to law, to metamorphose the Screenplay into an exempt work for hire based solely on the post-facto "work made for hire" form recitation United Artists had inserted in the 1986 Grant.

69. Hill is informed and believes and based thereon alleges that Defendants will continue to prepare, produce, copy, distribute, exploit, and/or authorize others to prepare, produce, copy, distribute, or exploit the infringing 2024 Remake and other derivative works which copy and exploit the Screenplay in violation of the Copyright Act.

70. As a direct and proximate result of Defendants' willful actions, Hill will suffer imminent and irreparable harm, much of which cannot be reasonably or adequately measured or compensated in damages.

## COUNT I: DECLARATORY RELIEF

71. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 70 inclusive, as though fully set forth herein.

72. By reason of the foregoing facts, an actual and justiciable

controversy has arisen and now exists between Hill and Defendants regarding their respective rights and interests regarding the Screenplay, for which Hill desires a declaration of rights.

73. Hill contends and Defendants deny that Hill's Termination or alternatively, Hill's Lady Amos Termination, is valid and effective under the Copyright Act.

74. Hill thus seeks a declaration from this Court that:

    a. Hill's spec Screenplay does not constitute a "work made for hire" under Section 101 of the Copyright Act (17 U.S.C. § 101);

    b. Hill's Termination, or alternatively, Lady Amos Termination, is valid and effective under the Copyright Act (17 U.S.C. § 203(a)), and as of November 11, 2023, the noticed termination date, Hill owns an enforceable U.S. copyright in and to the original Screenplay he solely authored; and

    c. Without a new license for Hill, Defendants do not have any rights to make, exploit, or distribute new derivative works based in whole or in part on Hill's *Roadhouse* Screenplay, including the 2024 Remake *Road House*.

75. A declaration of the Court is necessary and appropriate pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, so that Hill may ascertain his rights with respect to his Termination and Screenplay.

## COUNT II: COPYRIGHT INFRINGEMENT

76. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 75 inclusive, as though fully set forth herein.

77. Plaintiff Hill is the exclusive owner of all rights in and to the original Screenplay *Roadhouse* which has been registered in his name with the United States Copyright Office under Registration Number PA 2-455-802.

78. By Defendants' exploitation and planned release of the 2024

Remake, a motion picture plainly derived from the Screenplay, Defendants knowingly and willfully infringed, and will continue to infringe, Hill's copyright and rights under copyright in the Screenplay.

79. Each infringement by Defendants and/or other parties of the Screenplay constitutes a separate and distinct act of infringement.

80. Hill is further entitled to recover from Defendants the damages, including pre-judgment interest, he sustained and will sustain, and any income, gains, profits, and advantages obtained by Defendants as a result of their wrongful acts alleged hereinabove, in an amount which cannot yet be fully ascertained, but which shall be assessed at the time of trial.

81. Alternatively, Hill is entitled to the maximum statutory damages recoverable, or for such other amounts as may be proper, pursuant to 17 U.S.C. § 504.

82. Hill is further entitled to his attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

83. The ongoing harm Defendants' wrongful conduct will continue to cause Hill is both imminent and irreparable. By reason of Defendants' ongoing and willful copyright infringement, Hill has sustained and, unless and until Defendants are enjoined, will continue to sustain substantial imminent and irreparable injury, loss and damage, including repeated infringement of his copyright and interests, diminution of the value thereof, loss of customers, lost opportunity, dilution of goodwill, and injury to his business reputation.

84. Hill has no adequate remedy at law for many of his injuries in that such injuries cannot be reasonably, adequately, or precisely measured or compensated in damages if such wrongful conduct is not restrained and is allowed to continue unabated.

85. Pursuant to 17 U.S.C. § 502, Hill is entitled to a preliminary injunction during the pendency of this action and a permanent injunction

ordering that Defendants, their agents, employees, licensees and assigns be enjoined from producing, reproducing, distributing and exploiting or authorizing the production, reproduction, distribution or exploitation of the 2024 Remake and ancillary products based thereon, derived from the Screenplay, and from engaging in any further violations of the Copyright Act.

## PRAYER FOR RELIEF

### ON THE FIRST CLAIM FOR RELIEF

1. For a declaration that Hill's Termination, or alternatively, Lady Amos Termination, is valid and effective and that accordingly, on November 11, 2023, Hill duly recovered the U.S. copyright to his original *Roadhouse* Screenplay;

2. For a declaration that, as of November 11, 2023, Defendants did not have any rights to make, produce or distribute the 2024 Remake or any other post-termination derivative work based in whole or in part on the Screenplay and/or the 1989 Film (as derived from the Screenplay); and

3. For an order preliminarily during the pendency of this action and thereafter, permanently, enjoining Defendants, their officers, agents, employees, licensees, and assigns, and all persons acting in concert with them, from distributing the 2024 Remake and any other derivative work based in whole or in part on the Screenplay and/or the 1989 Film (as derived from the Screenplay).

### ON THE SECOND CLAIM FOR RELIEF

4. For an order preliminarily during the pendency of this action and thereafter, permanently, (i) enjoining Defendants, their officers, agents, employees, licensees and assigns, and all persons acting in concert with them, from infringing the copyright in the Screenplay, in any manner, and (ii) enjoining Defendants, their officers, agents, employees, licensees and assigns, and all persons acting in concert with them, from engaging in or authorizing the production, reproduction, distribution, display and/or exploitation of the

infringing 2024 Remake and ancillary products based thereon, derived from the Screenplay, without a new license from Hill;

5. For compensatory and consequential damages, according to proof in an amount determined at trial, together with interest thereon as provided by law;

6. For an accounting and restitution to Hill of all gains, profits and advantages Defendants have derived from their production, distribution, display and exploitation of the infringing 2024 Remake, ancillary exploitations based thereon, and from their copyright infringement of the Screenplay;

7. In the alternative to actual damages, for statutory damages pursuant to 17 U.S.C. §504(c), which election Hill shall make prior to the rendering of final judgment herein; and

8. For such further relief and remedies available under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, which the Court may deem just and proper.

## ON ALL CLAIMS FOR RELIEF

9. For Hill's costs of suit;

10. For interest at the highest lawful rate on all sums awarded to Hill other than punitive damages;

11. For reasonable attorneys' fees; and

12. For such other and further relief as the Court deems just and appropriate.

DATED: February 27, 2024　　　Respectfully Submitted,

TOBEROFF & ASSOCIATES, P.C.

By: */s/ Marc Toberoff*
　　　Marc Toberoff

*Attorneys for Plaintiff*

- 17 -

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury for all issues triable to a jury.

DATED: February 27, 2024     Respectfully Submitted,

TOBEROFF & ASSOCIATES, P.C.

By: */s/ Marc Toberoff*
      Marc Toberoff

*Attorneys for Plaintiff*

- 18 -