SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
WOOK HWANG (*pro hac vice*)
whwang@sheppardmullin.com
KATHERINE ANNE BOY SKIPSEY (*pro hac vice* to be submitted)
kboyskipsey@sheppardmullin.com
30 Rockefeller Plaza
New York, New York 10112-0015
Telephone:  212.653.8700
Facsimile:   212.653.8701

SHEPPARD MULLIN RICHTER & HAMPTON LLP
DYLAN J. PRICE, Cal. Bar No. 258896
dprice@sheppardmullin.com
PAUL A. BOST, Cal. Bar No. 261531
pbost@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California  90067-6017
Telephone:  (310) 228-3700
Facsimile:   (310) 228-3701

Attorneys for Defendants
METRO-GOLDWYN-MAYER STUDIOS INC.,
AMAZON STUDIOS LLC & UNITED ARTISTS
PICTURES INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| R. LANCE HILL, an individual,<br><br>Plaintiff,<br><br>v.<br><br>METRO-GOLDWYN-MAYER STUDIOS INC., a Delaware corporation; AMAZON STUDIOS LLC, a California limited liability company; UNITED ARTISTS PICTURES INC., a Delaware corporation; and DOES 1-10,<br><br>Defendants. | Case No. 2:24-cv-01587-HDV-SSC<br><br>*Assigned to: Hon. Hernan D. Vera*<br><br>**ANSWER OF DEFENDANTS METRO-GOLDWYN-MAYER STUDIOS INC., AMAZON STUDIOS LLC, AND UNITED ARTISTS PICTURES INC. TO COMPLAINT; AND COUNTERCLAIMS**<br><br>[Complaint Filed: February 27, 2024] |

1  METRO-GOLDWYN-MAYER
2  STUDIOS INC., a Delaware
   corporation; AMAZON STUDIOS
3  LLC, a California limited liability
   company; UNITED ARTISTS
4  PICTURES INC., a Delaware
   corporation,
5

6             Counterclaimants,

7       v.

8
   R. LANCE HILL, an individual; and
9  LADY AMOS LITERARY WORKS
10 LTD., a Canadian corporation,

11            Counterclaim Defendant
              and Third-Party
12            Counterclaim Defendant.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants Metro-Goldwyn-Mayer Studios Inc. ("MGM"), Amazon Studios LLC ("Amazon Studios") and United Artists Pictures Inc. ("UA") (collectively, "Defendants") hereby answer the Complaint of Plaintiff R. Lance Hill ("Plaintiff" or "Hill") as follows:[1]

## PRELIMINARY STATEMENT

Plaintiff's Complaint ignores the well-established rule of copyright law that the author of a work made for hire is not the individual who created the work. In 1986, Hill personally acknowledged, represented, warranted—and indeed, contractually *guaranteed*—that the 1986 screenplay entitled *Roadhouse* was created as a work made for hire for his own company, Lady Amos Literary Works, Ltd. ("Lady Amos"), and that Lady Amos—*not* Hill—was therefore its author within the meaning of the U.S. Copyright Act. For that same reason, Lady Amos, not Hill, was the grantor of the rights that UA purchased in 1986. Hill cannot rewrite this history now, nearly four decades after the fact. His attempt to terminate that grant is invalid and his copyright infringement claim is doomed to fail.

## NATURE OF THE ACTION

1. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 of the Complaint, and, accordingly, deny such allegations.

2. Defendants admit upon information and belief that Hill wrote the 1986 screenplay entitled *Roadhouse* (the "1986 Screenplay"). Defendants deny the remaining allegations in Paragraph 2 of the Complaint.

3. Defendants admit that UA acquired the rights to the 1986 Screenplay from Lady Amos and thereafter produced the 1989 film entitled *Road House* (the

---

[1] For the Court's convenience, Defendants' Answer follows the organization of the Complaint and repeats the headings included by Plaintiff therein. Defendants' inclusion of the Complaint's headings should not be construed as, and is not, an admission of any facts referred to therein.

"1989 Film").  Defendants deny the remaining allegations in Paragraph 3 of the Complaint, including that Hill ever held any copyright interest in the 1986 Screenplay.

4.      Defendants deny the allegations in Paragraph 4 of the Complaint, except admit that Hill, through his counsel Marc Toberoff, served a purported notice of termination on UA and MGM on or about November 10, 2021 and appears to have filed this document with the U.S. Copyright Office, along with another document styled as a notice of termination directed to Lady Amos, which was never served on any of Defendants.

5.      Defendants admit that they do not acknowledge the validity of Hill's purported termination.  The remaining allegations in Paragraph 5 of the Complaint are mere legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations in Paragraph 5 of the Complaint.

6.      Defendants admit that they produced the 2024 film entitled *Road House* (the "2024 Film").  Defendants deny the remaining allegations in Paragraph 6 of the Complaint, and further aver that principal photography on the 2024 Film was completed before the purported "effective date" of Plaintiff's invalid notice of termination.

## PARTIES

7.      Defendants admit that Plaintiff is an individual.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 7 of the Complaint and, therefore, deny them.

8.      Defendants admit the allegations in Paragraph 8 of the Complaint.

9.      Defendants admit the allegations in Paragraph 9 of the Complaint.

10.     Defendants admit the allegations in Paragraph 10 of the Complaint.

## JURISDICTION AND VENUE

11.     The allegations in Paragraph 11 of the Complaint are mere legal argument and conclusions to which no response is required.  To the extent that a

response is required, Defendants deny the allegations in Paragraph 11 of the Complaint.

12. The allegations in Paragraph 12 of the Complaint are mere legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations in Paragraph 12 of the Complaint.

13. The allegations in Paragraph 13 of the Complaint are mere legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations in Paragraph 13 of the Complaint.

14. The allegations in Paragraph 14 of the Complaint are mere legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations in Paragraph 14 of the Complaint.

15. The allegations in Paragraph 15 of the Complaint are mere legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations in Paragraph 15 of the Complaint.

16. The allegations in Paragraph 16 of the Complaint are mere legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations in Paragraph 16 of the Complaint.

17. The allegations in Paragraph 17 of the Complaint are mere legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations in Paragraph 17 of the Complaint.

18. The allegations in Paragraph 18 of the Complaint are mere legal argument and conclusions to which no response is required. To the extent that a

DEFENDANTS' ANSWER AND COUNTERCLAIMS

response is required, Defendants deny the allegations in Paragraph 18 of the Complaint.

## STATUTORY BACKGROUND

19.    The allegations in Paragraph 19 of the Complaint are mere legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants aver that Plaintiff's characterizations are wrong and/or incomplete.

20.    The allegations in Paragraph 20 of the Complaint are mere legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants aver that Plaintiff's characterizations are wrong and/or incomplete.

21.    The allegations in Paragraph 21 of the Complaint are mere legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants aver that Plaintiff's characterizations are wrong and/or incomplete.

22.    The allegations in Paragraph 22 of the Complaint are mere legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants aver that Plaintiff's characterizations are wrong and/or incomplete.

23.    The allegations in Paragraph 23 of the Complaint are mere legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants aver that Plaintiff's characterizations are wrong and/or incomplete.

24.    The allegations in Paragraph 24 of the Complaint are mere legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants aver that Plaintiff's characterizations are wrong and/or incomplete.

25.     The allegations in Paragraph 25 of the Complaint are mere legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants aver that Plaintiff's characterizations are wrong and/or incomplete.

26.     Defendants admit that they hold foreign rights to the 1986 Screenplay irrespective of Plaintiff's purported termination.  Defendants deny the remaining allegations in Paragraph 26 of the Complaint, and specifically deny that Hill is an "author" of the 1986 Screenplay under the Copyright Act of 1976.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

27.     Defendants admit on information and belief that Hill wrote the 1986 Screenplay, but specifically deny that Hill is the author of the 1986 Screenplay for purposes of the Copyright Act.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 27 of the Complaint and, therefore, deny them.

28.     Defendants deny the allegations in Paragraph 28 of the Complaint.

29.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 of the Complaint and, therefore, deny them.

30.     Defendants admit that UA acquired the rights to the 1986 Screenplay pursuant to a Literary Purchase Agreement (the "1986 LPA") with Lady Amos, which was executed on or about September 16, 1986; obtained a short-form Assignment pursuant to the 1986 LPA; and, relying on the rights secured pursuant to the LPA, produced and released the 1989 Film starring Patrick Swayze.  Defendants deny the remaining allegations in Paragraph 30.

31.     Defendants admit upon information and belief that UA acquired the rights to the 1986 Screenplay from Lady Amos pursuant to the grant set forth in the 1986 LPA after the 1986 Screenplay had been completed.  Defendants deny the

remaining allegations in Paragraph 31, and refer the Court to the 1986 LPA for its terms.

32.     Defendants deny the allegations in Paragraph 32 of the Complaint, except admit that Hill, through his counsel Marc Toberoff, served a notice of termination on UA and MGM (the "LPA Termination Notice") on or about November 10, 2021 purporting to terminate the rights Defendants acquired from Lady Amos pursuant to the 1986 LPA, with a putative effective date of November 11, 2023.

33.     Defendants deny the allegations in Paragraph 33 of the Complaint.

34.     Defendants deny that Plaintiff served Defendants with an additional notice of termination (the "Lady Amos Termination Notice") purporting to terminate any alleged grant from Hill to Lady Amos of rights in the 1986 Screenplay. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 34 of the Complaint, including whether Plaintiff served the alleged Lady Amos Termination Notice on Lady Amos, and on that basis deny them.

35.     Defendants deny the allegations in Paragraph 35 of the Complaint.

36.     Defendants deny the allegations in Paragraph 36 of the Complaint.

37.     Defendants admit that, on December 15, 2021, Defendants' counsel sent a letter to Plaintiff's counsel explaining that the LPA Termination Notice was invalid because, among other reasons, the 1986 Screenplay had been written as a work made for hire for Lady Amos, a fact that both Hill *and* Lady Amos—through Hill, its President—acknowledged in the 1986 LPA.   Defendants deny the remaining allegations in Paragraph 37 of the Complaint, and refer the Court to the December 15, 2021 letter for its contents.

38.     Defendants deny the allegations in Paragraph 38 of the Complaint, except aver that they lack knowledge or information sufficient to form a belief as to the truth of the allegations about the practices of "other movie studios" in 1986 and,

therefore, deny them.  Defendants further aver that this allegation is immaterial to the issues in this action.

39.     Defendants deny the allegations in Paragraph 39 of the Complaint.

40.     Defendants deny the allegations in Paragraph 40 of the Complaint.

41.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 of the Complaint and therefore deny them.

42.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42 of the Complaint and therefore deny them.

43.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the factual allegations in Paragraph 43 of the Complaint and therefore deny them.  Defendants deny the legal conclusions set forth in Paragraph 43 of the Complaint, and specifically deny Plaintiff's self-serving contention that Lady Amos was Hill's "alter ego for doing business."  Defendants further aver, upon information and belief, that Lady Amos is an Ontario business corporation formed in 1976, more than a decade before it granted rights to UA pursuant to the 1986 LPA.

44.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44 of the Complaint concerning the circumstances of the preparation of the 1986 Screenplay and, therefore, deny them. Defendants further aver that any allegations that Lady Amos lacked involvement in the preparation of the 1986 Screenplay are contradicted by Hill's own allegation that Lady Amos was his "alter ego."

45.     Defendants deny the allegations in Paragraph 45 of the Complaint. Defendants further aver that the 1986 LPA did not "retroactively convert[]" the 1986 Screenplay into a work made for hire.  Rather, as Lady Amos and Hill themselves attested in the 1986 LPA, the 1986 Screenplay was created as a work made for hire.

46.     Defendants deny the allegations in Paragraph 46 of the Complaint.

47. The allegations in Paragraph 47 the Complaint are mere legal argument and conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations in Paragraph 47 of the Complaint.

48. Defendants deny the allegations in Paragraph 48 of the Complaint.

49. Defendants deny the allegations in Paragraph 49 of the Complaint.

50. Defendants deny the allegations in Paragraph 50 of the Complaint, except admit that final post-production work on the 2024 Film unrelated to the 1986 Screenplay was completed in or around January 2024. Defendants further aver that principal photography on the 2024 Film was completed before the purported "effective date" of Plaintiff's invalid notice of termination.

51. Defendants deny the allegations in Paragraph 51 of the Complaint, and further aver that Plaintiff's compilation of purported "similarities" set forth in Exhibit 1 of the Complaint carries no evidentiary weight or probative value.

52. Defendants deny Plaintiff's characterizations of the 1986 Screenplay and 2024 Film in Paragraph 52 of the Complaint, and refer the Court to the 1986 Screenplay and the 2024 Film for their contents.

53. Defendants deny Plaintiff's characterizations of the 1986 Screenplay and 2024 Film in Paragraph 53 of the Complaint, and refer the Court to the 1986 Screenplay and the 2024 Film for their contents.

54. Defendants deny Plaintiff's characterizations of the 1986 Screenplay and 2024 Film in Paragraph 54 of the Complaint, and refer the Court to the 1986 Screenplay and the 2024 Film for their contents.

55. Defendants deny Plaintiff's characterizations of the 1986 Screenplay and 2024 Film in Paragraph 55 of the Complaint, and refer the Court to the 1986 Screenplay and the 2024 Film for their contents.

56. Defendants deny Plaintiff's characterizations of the 1986 Screenplay and 2024 Film in Paragraph 56 of the Complaint, and refer the Court to the 1986 Screenplay and the 2024 Film for their contents.

57.     Defendants deny Plaintiff's characterizations of the 1986 Screenplay and 2024 Film in Paragraph 57 of the Complaint, and refer the Court to the 1986 Screenplay and the 2024 Film for their contents.

58.     Defendants deny Plaintiff's characterizations of the 1986 Screenplay and 2024 Film in Paragraph 58 of the Complaint, and refer the Court to the 1986 Screenplay and the 2024 Film for their contents.

59.     Defendants deny Plaintiff's characterizations of the 1986 Screenplay and 2024 Film in Paragraph 59 of the Complaint, and refer the Court to the 1986 Screenplay and the 2024 Film for their contents.

60.     Defendants deny Plaintiff's characterizations of the 1986 Screenplay and 2024 Film in Paragraph 60 of the Complaint, and refer the Court to the 1986 Screenplay and the 2024 Film for their contents.

61.     Defendants deny Plaintiff's characterizations of the 1986 Screenplay and 2024 Film in Paragraph 61 of the Complaint, and refer the Court to the 1986 Screenplay and the 2024 Film for their contents.

62.     Defendants deny the allegations in Paragraph 62 of the Complaint, except admit that Plaintiff, along with two other individuals, received "Story by" credit on the 2024 Film from the Writers Guild of America, pursuant to a collective bargaining agreement that has no relevance to the issues in this action.

63.     Defendants deny the allegations in Paragraph 63 of the Complaint, except admit that Defendants did not attempt to secure a "new license" with respect to the 1986 Screenplay in connection with the 2024 Film.

64.     Defendants deny the allegations in Paragraph 64 of the Complaint.

65.     Defendants deny the allegations in Paragraph of the Complaint, except admit that some Defendants were involved in the financing, production and/or distribution of the 2024 Film.

66.     Defendants deny the allegations in Paragraph 66 of the Complaint.

67.    Defendants deny the allegations in Paragraph 67 of the Complaint, except admit that Hill, through his counsel Marc Toberoff, served the LPA Termination Notice on or about November 10, 2021 purporting to terminate the rights Defendants acquired from Lady Amos pursuant to the 1986 LPA, with a putative effective date of November 11, 2023.

68.    Defendants deny the allegations in Paragraph 68 of the Complaint, except admit that, on December 15, 2021, Defendants' counsel sent a letter to Plaintiff's counsel explaining that the LPA Termination Notice was invalid, and refer the Court to the December 15, 2021 letter for its contents.

69.    Defendants admit that they continue to distribute and exploit the 2024 Film, and aver that they have the right to create other derivative works based on the 2024 Remake, the 1989 Film and/or the 1986 Screenplay, pursuant to the 1986 LPA and various other agreements relating to these works.  Defendants deny the remaining allegations in Paragraph 69 of the Complaint.

70.    Defendants deny the allegations in Paragraph 70 of the Complaint.

### COUNT I: DECLARATORY RELIEF

71.    Defendants incorporate by this reference their responses to Paragraphs 1-70 of the Complaint.

72.    The allegations in Paragraph 72 of the Complaint are mere legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations in Paragraph 72 of the Complaint.

73.    The allegations in Paragraph 73 of the Complaint are mere legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants admit the allegations in Paragraph 73 of the Complaint insofar as they merely characterize the parties' respective positions in this action.

74.     Defendants deny that Plaintiff is entitled to any of the declaratory relief described in Paragraph 74(a)-(c) of the Complaint, but admit that Plaintiff seeks such relief.

75.     The allegations in Paragraph 75 of the Complaint are mere legal argument and conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations in Paragraph 75 of the Complaint.

## COUNT II: COPYRIGHT INFRINGEMENT

76.     Defendants incorporate by this reference their responses to Paragraphs 1-75 of the Complaint.

77.     Defendants deny the allegations in Paragraph 77 of the Complaint, except admit that Plaintiff, through his counsel Marc Toberoff, registered his purported copyright in the 1986 Screenplay on or about January 24, 2024, based on false information submitted to the U.S. Copyright Office.

78.     Defendants deny the allegations in Paragraph 78 of the Complaint.

79.     Defendants deny the allegations in Paragraph 79 of the Complaint.

80.     Defendants deny the allegations in Paragraph 80 of the Complaint.

81.     Defendants deny the allegations in Paragraph 81 of the Complaint.

82.     Defendants deny the allegations in Paragraph 82 of the Complaint.

83.     Defendants deny the allegations in Paragraph 83 of the Complaint.

84.     Defendants deny the allegations in Paragraph 84 of the Complaint.

85.     Defendants deny the allegations in Paragraph 85 of the Complaint.

Defendants deny that Plaintiff is entitled to any relief whatsoever on his claims, including, without limitation, any of the relief requested in Paragraphs 1-12 of the "Prayer for Relief" in the Complaint.

## SEPARATE AND ADDITIONAL DEFENSES

Defendants state the following separate and additional defenses, without assuming the burden of proof on such defenses that would otherwise rest with

Plaintiff, and without prejudice to Defendants' right to assert any and all other defenses revealed during the course of discovery.

### FIRST DEFENSE

(Failure to State a Claim)

1.      The Complaint fails to state a claim for which relief can be granted.

### SECOND DEFENSE

(Lack of Copyright Ownership / Invalid Termination)

2.      Plaintiff's claims are barred because the 1986 grant of rights is not subject to termination under 17 U.S.C. § 203, such that Plaintiff does not own a valid copyright in the 1986 Screenplay.

### THIRD DEFENSE

(Statute of Limitations)

3.      Plaintiff's claims are barred, in whole or in part, because Plaintiff's claim of authorship with respect to the 1986 Screenplay was expressly repudiated no later than September 16, 1986, such that Plaintiff is time-barred from claiming authorship or ownership pursuant to the three-year statute of limitations set forth in 17 U.S.C. § 507(b).

### FOURTH DEFENSE

(Fraud on the Copyright Office / Invalid Copyright Registration)

4.      Plaintiff's claims are barred because Plaintiff's copyright registration to the 1986 Screenplay was secured through fraudulent statements to the Copyright Office concerning Plaintiff's purported authorship and ownership and, therefore, is invalid.

### FIFTH DEFENSE

(Premature Termination Notices)

5.      Plaintiff's claims are barred because the 1986 grant of rights to UA covers the right of publication of the unpublished 1986 Screenplay and, therefore, the statutory termination window, if any, begins on the earlier of the end of thirty-five

-14-

years from the date of publication of the 1986 Screenplay, or the end of forty years from the date of execution of the 1986 LPA. *See* 17 U.S.C. § 203(a)(3). As a result, Plaintiff's termination notices were premature and invalid.

## SIXTH DEFENSE

### (Failure to Serve Lady Amos Termination Notice)

6. To the extent any grant was made from Plaintiff to Lady Amos, Plaintiff's claims are barred because Plaintiff failed to serve any of Defendants with the Lady Amos Termination Notice.

## SEVENTH DEFENSE

### (Derivative Works Exception)

7. Plaintiff's claims are barred, in whole or in part, based on the derivative works exception set forth in 17 U.S.C. § 203(b)(1).

## EIGHTH DEFENSE

### (License / Authorization)

8. Plaintiff's claims are barred because Defendants have a license and/or authorization to use the 1986 Screenplay.

## NINTH DEFENSE

### (Lack of Standing)

9. Plaintiff's claims are barred because Plaintiff lacks standing to pursue them.

## TENTH DEFENSE

### (Estoppel)

10. Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel, including, without limitation, judicial estoppel and equitable estoppel.

## ELEVENTH DEFENSE

### (Waiver)

11. Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

**TWELFTH DEFENSE**

(Unclean Hands)

12.    Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

**THIRTEENTH DEFENSE**

(Lack of Substantial Similarity)

13.    Plaintiff's claims are barred, in whole or in part, because the protectable elements of the 1986 Screenplay are not substantially similar to the protectable elements of the 2024 Film.

**FOURTEENTH DEFENSE**

(Unprotectable Subject Matter)

14.    Plaintiff's claims are barred, in whole or in part, on the basis that the elements of the 1986 Screenplay that were allegedly infringed are not subject to copyright protection.

**FIFTEENTH DEFENSE**

(Merger/Scènes-à-Faire)

15.    Plaintiff's claims are barred, in whole or in part, by the doctrines of merger and *scènes à faire*.

**SIXTEENTH DEFENSE**

(*De Minimis* Infringement)

16.    Plaintiff's claims are barred, in whole or in part, because any infringement by Defendants was *de minimis* and not actionable.

**PRAYER FOR RELIEF**

WHEREFORE, Defendants pray for judgment as follows on the Complaint:

a.    Judgment in favor of Defendants on each of Plaintiff's claims;

b.    An award of all costs, including reasonable attorney's fees, pursuant to 17 U.S.C. § 505; and

c.    Such other relief as the Court deems proper.

## COUNTERCLAIMS

Counterclaimants Metro-Goldwyn-Mayer Studios Inc. ("MGM"), Amazon Studios LLC ("Amazon Studios") and United Artists Pictures Inc. ("UA") (collectively, "Counterclaimants"), as and for their counterclaims against R. Lance Hill ("Hill") and Lady Amos Literary Works, Ltd. ("Lady Amos"), hereby allege as follows:

## NATURE OF THE ACTION

1.      Counterclaimants and their affiliated entities are the owners of all rights to the *Road House* film franchise, including the 2024 film recently released on Amazon Prime Video, along with the original 1989 cult classic film that was developed from the 1986 screenplay *Roadhouse* that UA acquired from Hill's company, Lady Amos, in 1986.  This countersuit is based on Hill's fraudulent representation to the U.S. Copyright Office that Hill is the "author" of the 1986 screenplay and holds attendant termination rights—the same false representations now made in the Complaint to support Hill's meritless lawsuit.

2.      Two axiomatic and uncontested principles of copyright law dispose of Hill's claim.  *First*, as the Complaint concedes, works made for hire are *not* subject to termination in the first instance, because the "author" of the work is the party that hired the individual and not the individual who created the work.  *See* Cmplt. ¶ 21 (works made for hire are an "exemption from the Copyright Act's termination provisions"); 17 U.S.C. § 203(a) (termination permitted only in the case of works "other than a work made for hire").  *Second*, an "author" recognized as such under the Copyright Act—which Hill is not—may terminate a grant only where the "grant was executed by that author."  *See* 17 U.S.C. § 203(a).

3.      Hill's attempt at termination fails on both fronts, either one of which is fatal to his claim.  Like many writers who set up "loan-out" companies, Hill established Lady Amos as a separate business entity in 1976 for his own business purposes.  Pursuant to a Literary Purchase Agreement entered into with UA more than

a decade later, Lady Amos accepted hundreds of thousands of dollars in consideration for the transfer of all right, title and interest in the 1986 screenplay to UA. Hill himself granted *no* copyright interest in the 1986 screenplay because he had no such interest to grant.

4.     That is because Lady Amos was the author and owner of the 1986 screenplay. Indeed, in the same Literary Purchase Agreement, both Hill personally and Lady Amos—by its President, Hill—acknowledged, represented and warranted to UA that "**[Lady Amos] is the author of the [1986 Screenplay]**" and that it "**constitutes a work-made-for-hire**." Hill's lawsuit against Defendants seeks to rewrite this history based on the remarkable premise that, in fact, Hill and Lady Amos lied when attesting to these facts 38 years ago when the 1986 screenplay was actually written.

5.     Hill's fundamental theory is that the screenplay could not have been a work made for hire because Hill and Lady Amos are "alter egos," with Lady Amos serving as nothing more than a fictitious "doing business as" entity that UA forced Hill to use. The public record conclusively refutes this self-serving narrative. Hill formed Lady Amos in 1976—long before either Hill or Lady Amos had any dealings with UA—by filing of Articles of Incorporation in Canada that identified its purpose "[t]o design, create, and produce screenplays, film scripts, and adaptations" and "[t]o buy, sell and deal in same." In other words, Lady Amos was anything but a fictitious "doing business as" entity lacking corporate form—a fact further underscored by UA's payment of hundreds of thousands of dollars *to Lady Amos* to acquire the rights to the screenplay in reliance on the representations made by Hill and Lady Amos.

6.     The contradictions and falsities set forth in the Complaint are nothing but a fiction drummed up by Hill's counsel, Marc Toberoff, to enrich them both by fabricating a fraudulent claim of copyright authorship. Upon information and belief, Toberoff (or a company owned and controlled by him) has acquired an interest in the rights to the 1986 Screenplay or an equivalent guarantee from his client in the

expectation of an undeserved windfall settlement—a scheme Toberoff has employed to extract self-serving producer deals and other entitlements in numerous works for which he has served notices of copyright termination, ostensibly on his clients' behalf. *See* [Marc Toberoff - IMDb](Marc Toberoff - IMDb).

7.   In furtherance of this scheme, Toberoff, on Hill's behalf, filed an application for copyright registration for the 1986 screenplay on January 24, 2024, based on the knowingly false and fraudulent representation to the U.S. Copyright Office that Hill was the screenplay's "author"—a representation directly refuted by Hill's *own* representation made 38 years earlier that "[Lady Amos] is the author of the [1986 Screenplay]."

8.   This fraud is the predicate for the invalid termination notice Toberoff served and the resulting claim of copyright ownership, which is both an element of Hill's meritless claim for copyright infringement and necessary to establish standing to assert it.  And the U.S. Copyright Office relied on this knowing misrepresentation in issuing the 2024 copyright registration certificate—a related but independent prerequisite for Hill's Complaint.

9.   By this countersuit, Counterclaimants seek a declaration invalidating the copyright registration secured by Toberoff as a product of fraud on the U.S. Copyright Office.   In the alternative, and in the unlikely event that Hill and Lady Amos misrepresented the facts in 1986 (and are telling the truth now, decades later), Counterclaimants assert a claim for breach of contract based on the representations and warranties made by Hill and Lady Amos in 1986, which Hill and Toberoff now claim were false.

## **PARTIES**

10.   Upon information and belief, Hill is a citizen of Canada.

11.   Upon information and belief, Lady Amos is a corporation organized and existing under the laws of the province of Ontario, Canada, with its principal place of business in Ontario, Canada.

## JURISDICTION AND VENUE

12.     This action arises under the United States Copyright Act, 17 U.S.C. §§ 101 *et seq.* and the Declaratory Judgment Act, 28 U.S.C. § 2201.

13.     This Court has original subject matter jurisdiction over the counterclaims set forth herein pursuant to the Copyright Act, 17 U.S.C. § 101 *et seq.*, 28 U.S.C. §§ 1331, 1332, 1338(a), and 2201.

14.     This Court has supplemental subject matter jurisdiction over UA's common law claims against Hill and Lady Amos pursuant to 28 U.S.C. §1367.

15.     This Court has personal jurisdiction over Hill and Lady Amos because, *inter alia*, a substantial portion of the relevant acts complained of herein occurred in the State of California and in this District.

16.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

### Lady Amos's 48-Year Corporate Existence Beginning in 1976

17.     A true and correct copy of the certified corporate records for Lady Amos is annexed hereto as Exhibit A.

18.     As reflected therein, Hill formed Lady Amos (then named Lady Amos Productions Ltd.), through counsel at the Law Offices of Leggett & Harley, on or around June 22, 1976 in Ontario, Canada, with the express purposes "[t]o design, create, and produce screenplays, film scripts, and adaptations"; "[t]o buy, sell and deal in same"; and "[t]o act as consultants and advisors in general to the management and executives of enterprises in the film industry and related industries." *See* Ex. A at 9.

19.     Lady Amos obtained its Certificate of Incorporation on June 22, 1976, and a Certificate of Amendment of Articles effective as of June 9, 1978 changing its name to Lady Amos Literary Works Ltd. *Id.* at 11, 20.

20.   Beginning at least as early as June 1978, both R. Lance Hill and Darlene Hill served as directors and officers of Lady Amos—an arrangement that lasted at least through July 1994.

21.   Upon information and belief, Lady Amos remains an active Ontario business corporation to this day, as reflected on the Ontario Business Registry website (Ontario Business Registry | ontario.ca):



22.   Accordingly, Lady Amos has been in existence, as a business corporation distinct from Hill, from 1976 to 2024—a period of approximately 48 years.

### Lady Amos's Assignment of All Rights
### in the 1986 Screenplay to UA

23.   Upon information and belief, Hill wrote a screenplay entitled *Roadhouse* in or around July 1986 (the "1986 Screenplay").

24.   By the Literary Purchase Agreement dated August 7, 1986, and fully executed as of September 16, 1986 (the "1986 LPA"), UA purchased from Lady Amos all rights to the 1986 Screenplay, as follows (¶ 2):

Owner [i.e. Lady Amos] hereby grants to UA, exclusively, in perpetuity and throughout the universe, all right, title and interest (including all copyrights, and renewals and extensions thereof) in and to the Property

[i.e., the 1986 Screenplay] (hereinafter collectively, "Rights").

A true and correct copy of the 1986 LPA is annexed hereto as <u>Exhibit B</u>.

25.    Accordingly, the rights to the 1986 Screenplay that Lady Amos conveyed to UA were complete and total, and included, "by way of illustration, all motion picture rights, all television rights (pay, free, cable, live and otherwise), and all allied, ancillary and subsidiary rights in the [1986 Screenplay], whether now known or unknown (including, without limitation, so-called home video rights, prequel, sequel and remake rights, music and music publishing rights, soundtrack recording and other exploitation rights, commercial tie-up and merchandising rights, publishing rights, radio rights, stage rights, and promotional and advertising rights)." Ex. B ¶ 2.

26.    As reflected above, these rights were granted by Lady Amos—as "Owner"—*not* by Hill.

27.    The only grant of rights made by Hill (referred to as "Writer") in the 1986 LPA was set forth in the following provision (Ex. B ¶ 2) (emphasis added):

> The Rights herein granted also include, by way of further illustration, all of Owner's [i.e., Lady Amos] and Writer's [i.e., Hill] right, title and interest in and to any and all agreements, assignments, releases and other instruments in writing heretofore or hereafter executed in favor of Owner or Writer, or any predecessor of Owner or Writer, **insofar as said documents grant or purport to grant to Owner or Writer, or any such predecessor, any of the Rights**, together with the full benefit of all representations, warranties and agreements made by any party in favor of Owner or Writer, or any such predecessor, insofar as the same pertain to or affect the Rights.

28.    Upon information and belief, no such documents exist that "grant or purport to grant to Owner or Writer, or any such predecessor, any of the Rights" in the 1986 Screenplay.

29.     Accordingly, Hill did not individually grant any copyright interest in the 1986 Screenplay to UA pursuant to the 1986 LPA.

### The Contemporaneous Representations and Warranties by
### Lady Amos and Hill that Lady Amos Is the 1986 Screenplay's Author

30.     In the 1986 LPA, Lady Amos represented and warranted that the 1986 Screenplay "was created and written solely by [Hill] as an employee of [Lady Amos] pursuant to an employment agreement with [Lady Amos], and, accordingly, [Lady Amos] is the author of the [1986 Screenplay] (which constitutes a **work-made-for-hire**) and the owner thereof and entitled to all copyrights therein …"  Ex. B ¶ 4(f) (emphasis added).

31.     The foregoing representation and warranty was true at the time it was made.

32.     In the same vein, Lady Amos further represented that "[Lady Amos] owns all of the Rights [to the 1986 Screenplay] free and clear of any liens, encumbrances and other third party interests of any kind, and free of any claims ...." *Id.* ¶ 4(b).

33.     The foregoing representation and warranty was true at the time it was made.

34.     Additionally, Hill executed an addendum to the 1986 LPA in which he, guaranteed the truthfulness of Lady Amos's representations and warranties (*id.* at 7; emphases added):

> As a material inducement to [UA] to execute the above agreement ... , I acknowledge that I have read the Agreement and approve the same and agree to be personally bound by the terms and conditions contained therein.  Without in any way limiting the generality of the foregoing, ***I guarantee the truth***, effectiveness and performance ***of all*** of the agreements, grant of rights, undertakings, ***representations***, ***warranties*** and indemnities ***made by [Lady Amos] under the Agreement***, in every

respect as if I were Lady Amos and agree to be liable directly to UA for any breach thereof as I were a direct party to the Agreement. ... I agree to look solely to [Lady Amos] for any and all compensation that may be due me by virtue of the Agreement, the grant of rights thereunder, or my undertakings and agreements herein contained. My agreements above made me shall inure to the benefit of UA, its successors and assigns.

35.     In the 1986 LPA, Lady Amos—and, pursuant to the above, Hill—agreed to indemnify UA and, *inter alia*, its parents, subsidiaries, affiliates, licensees, partners and assigns from "any liability, claim, cost, damage, or expense (including costs and reasonable attorneys' fees, whether or not in connection with litigation) arising out of or in connection with a breach or alleged breach by [Lady Amos] or [Plaintiff] of any warranties, representations, undertakings, covenants or agreements contained in this Agreement." Ex. B ¶ 5.

36.     The 1986 LPA further required that, "[c]oncurrently with the execution of this Agreement, Owner and Writer are executing and delivering the short form Assignment attached hereto." *Id.* ¶ 9. Accordingly, along with the 1986 LPA, Lady Amos and Hill executed a short-form assignment confirming UA's ownership of the 1986 Screenplay (the "Assignment"). This Assignment, by its terms, was expressly made "subject to [the] Literary Purchase Agreement ('Agreement')," and made reference "to the Agreement [i.e., the 1986 LPA] for further particulars with reference to Purchaser's rights in, to and with respect to [the 1986 Screenplay]."

37.     Concurrent with their execution of the 1986 LPA, UA and Lady Amos also entered into a Writer Employment Agreement (the "1986 Writer's Agreement") pursuant to which Lady Amos agreed that it would cause Hill, its employee, to deliver a rewrite of the 1986 Screenplay and further revisions thereto. A true and correct copy of the 1986 Writer's Agreement is annexed hereto as <u>Exhibit C</u>.

38.     In connection with the 1986 Writer's Agreement, Hill executed an annexed Certificate of Authorship, signed and notarized on September 16, 1986,

providing as follows (*id.* at 15; emphasis added), once again attesting that all written materials prepared in connection with the 1986 Screenplay and/or the 1989 Film would be done in his capacity as an employee of Lady Amos, as a work made for hire:

> I hereby certify that, **as an employee of Lady Amos Literary Works, Ltd.** ("Lender"), and in the regular course of my duties of employment I am engaged in writing a rewrite to a screenplay currently entitled "Roadhouse" such rewrite and all revisions thereto hereinafter referred to as the "Work") based upon an original screenplay written by me pursuant to an Agreement ("Agreement") between Lender and United Artists Pictures, Inc. ("UA") dated as of August 7, 1986.  I further certify that the Work is being written or shall be written as a **work-made-for-hire** within the meaning of U.S. Copyright laws and that, pursuant to the Agreement, UA as the assignee of Lender, owns all right, title and interest throughout the world in and to said Work and all of the results and proceeds of my writing services in accordance therewith as if I had been an employee of UA.....

39.    Both the 1986 LPA and the 1986 Writer's Agreement, along with the representations and warranties contained therein, were executed in September 1986, approximately two months after Hill alleges that he wrote the 1986 Screenplay.

40.     Consistent with the 1986 LPA and the 1986 Writer's Agreement, the payments made by UA thereunder were made to Lady Amos, *not* to Hill:





### **Hill's False Claim of Purported Authorship 35 Years After the Fact**

41.     On or about November 10, 2021, Toberoff sent UA and MGM a "Notice of Termination"—on Hill's behalf—purporting to terminate the rights UA acquired from *Lady Amos* pursuant to the 1986 LPA and the Assignment (the "LPA Termination Notice"), effective as of November 11, 2023.  A true and correct copy of this Notice of Termination is annexed hereto as Exhibit D.

42.     Toberoff and Hill knowingly based the LPA Termination Notice on the false premise that Hill, not Lady Amos, was the "author" of the 1986 Screenplay—attempting to disavow the reality to which Hill and Lady Amos had attested 35 years earlier, and just two months after the 1986 Screenplay was allegedly completed, that "[Lady Amos] is the author of the [1986 Screenplay] (which constitutes a work-made-for-hire)."  Ex. B ¶ 4(f).

43.     The LPA Termination Notice was defective for at least two reasons: (1) because works made for hire are not subject to termination in the first instance (*see* 17 U.S.C. 203(a)); and (2) because Hill did not grant *any* copyright interest in the 1986 Screenplay to UA pursuant to the 1986 LPA or the Assignment.  *See id.* (parties may terminate only a grant that "was executed by that author").

44.     As alleged in the Complaint, on November 10, 2021, Hill purports to have sent another termination notice (the "Lady Amos Termination Notice") to his purported "alter ego," Lady Amos, terminating an unidentified "express or implied grant by Hill to Lady Amos" of Hill's non-existent rights to the 1986 Screenplay.  The Lady Amos Termination Notice was subsequently recorded with the U.S. Copyright Office.  *See* Cmplt. ¶¶ 34, 35.

45.     No grant from Hill to Lady Amos has been provided to Counterclaimants because, upon information and belief, no such grant exists.  Nor did Hill or Toberoff serve the Lady Amos Termination Notice on UA or MGM, the successor in title to all of Lady Amos's rights in the 1986 Screenplay.

46.     On or about January 24, 2024, Toberoff, on Hill's behalf, filed a copyright application to register the 1986 Screenplay, based again on the knowingly false representation that the "author" of the 1986 Screenplay was Hill, not Lady Amos—a proposition that each of Hill, Lady Amos and UA had expressly repudiated 38 years earlier in the plain language of the 1986 LPA.

47.     On or about February 21, 2024, the U.S. Copyright Office issued a copyright registration certificate to Hill, addressed to Toberoff and his firm, based on the fraudulent representation by Hill and Toberoff that Hill was the purported author, and now owner, of the 1986 Screenplay.  A true and correct copy of that copyright registration certificate is annexed hereto as Exhibit E.

## FIRST COUNTERCLAIM

**(Declaratory Relief as to Invalidity of Plaintiff's Copyright Registration Based on Fraud on the Copyright Office (17 U.S.C. § 411(b))**

**(Against Hill)**

48.     Counterclaimants repeat and reallege each and every allegation of the preceding paragraphs as though fully set forth herein.

49.     On or about January 24, 2024, Hill, though his counsel Toberoff, submitted a fraudulent application to register the 1986 Screenplay to the U.S. Copyright Office, identifying Hill as the copyright author and copyright claimant in the 1986 Screenplay.

50.     These representations were inaccurate, and knowingly false when made. As Hill and Lady Amos attested in the 1986 LPA, contemporaneously with the completion of the 1986 Screenplay, Lady Amos is the author of the 1986 Screenplay, a work made for hire.

51.     Upon information and belief, Hill and Toberoff knew that the application falsely identified the copyright author and copyright claimant of the 1986 Screenplay and, accordingly, that the application failed to comply with the requirements of 17 U.S.C. § 409.

52.     These false representations were material to the Copyright Office's decision to issue a copyright registration to Hill.

53.     Accordingly, Hill's copyright in and registration of the 1986 Screenplay is invalid because Hill, through Toberoff, secured the registration by knowingly providing inaccurate information to the Copyright Office upon which the Copyright Office materially relied in its decision to issue a copyright registration to Hill.

54.     UA is thus entitled to a declaration, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that Plaintiff's copyright in, and registration of, the 1986 Screenplay is invalid.

**SECOND COUNTERCLAIM**

**(Breach of Contract – In the Alternative to First Counterclaim)**

**(Against Hill and Lady Amos)**

55.     Counterclaimants repeat and reallege each and every allegation of the preceding paragraphs as though fully set forth herein.

56.     UA and Lady Amos are parties to the 1986 LPA.

57.     UA has at all times performed the terms of the 1986 LPA in the manner specified therein.

58.     In the 1986 LPA, Lady Amos represented and warranted that the 1986 Screenplay "was created and written solely by [Hill] as an employee of [Lady Amos] pursuant to an employment agreement with [Lady Amos], and, accordingly, [Lady Amos] is the author of the [1986 Screenplay] (which constitutes a work-made-for-hire) and the owner thereof and entitled to all copyrights therein …"

59.     Hill executed an addendum to the 1986 LPA in which he "guarantee[d] the truth, effectiveness and performance of all of the agreements, grant of rights, undertakings, representations, warranties and indemnities made by [Lady Amos] under the Agreement, in every respect as if I were Lady Amos and agree[d] to be liable directly to UA for any breach thereof as I were a direct party to the Agreement."

60.     In the 1986 LPA, Lady Amos—and Hill, pursuant to the foregoing guarantee—agreed to indemnify UA and, *inter alia*, its parents, subsidiaries, affiliates, licensees, and assigns from "any liability, claim, cost, damage, or expense (including costs and reasonable attorneys' fees, whether or not in connection with litigation) arising out of or in connection with a breach or alleged breach by [Lady Amos] or [Hill] of any warranties, representations, undertakings, covenants or agreements contained in this Agreement."

61.     MGM Studios and Amazon Studios are third-party beneficiaries of Lady Amos's and Hill's indemnification obligations under the 1986 LPA.

62.     If the LPA Termination Notice and/or Lady Amos Termination Notice

DEFENDANTS' ANSWER AND COUNTERCLAIMS

are deemed effective, and Hill's claim of authorship and ownership of the 1986 Screenplay is deemed valid, Hill and Lady Amos necessarily will have materially breached their representations and warranties in the 1986 LPA.

63.     If the LPA Termination Notice and/or Lady Amos Termination Notice are deemed effective, and Hill's claim of authorship and ownership of the 1986 Screenplay is deemed valid, then Hill's and Lady Amos's breach will have caused, and will continue to cause, damages and expense to Counterclaimants for which Hill and Lady Amos are liable pursuant to the 1986 LPA and the indemnification provisions contained therein, including, without limitation, damages from Counterclaimants' investment in the *Road House* franchise and the loss of future revenue from the exploitation of derivative works based on the 1986 Screenplay.

## **PRAYER FOR RELIEF**

WHEREFORE, Counterclaimants pray for judgment as follows on their counterclaims:

a.    On the First Counterclaim:

    i.    For a declaration that Hill's copyright in, and registration of, the 1986 Screenplay is invalid;

    ii.    An order directing the Copyright Office to cancel Hill's registration of the 1986 Screenplay; and

    iii.    An award of all costs, including reasonable attorney's fees, pursuant to 17 U.S.C. § 505.

b.    On the Second Counterclaim (in the alternative to the relief prayed for on the First Counterclaim):

    i.    For compensatory damages from Hill and Lady Amos, subject to proof, and for prejudgment interest according to law; and

    ii.    An award of attorney's fees and costs as damages pursuant to the 1986 LPA's indemnification provision;

c.    Such other relief as the Court deems proper.

1  Dated:  May 3, 2024

2                          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

3

4                          By   /s/ Wook Hwang
                                WOOK HWANG
5                               Attorneys for Defendants/Counterclaimants
                                Metro-Goldwyn-Mayer Studios Inc.,
6                               Amazon Studios LLC and
                                United Artists Pictures Inc.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-31-