Marc Toberoff (S.B. #188547)
*mtoberoff@toberoffandassociates.com*
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333

*Attorneys for Plaintiff/Counterclaim Defendants*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| R. LANCE HILL, an individual, | Case No.: 2:24-cv-01587-HDV-SSC |
| Plaintiff, | Assigned to Hon. Hernan D. Vera |
| v. | |
| METRO-GOLDWYN-MAYER STUDIOS INC., a Delaware corporation, AMAZON STUDIOS LLC, a California limited liability company, UNITED ARTISTS PICTURES INC., a Delaware corporation, and DOES 1-10, | **PLAINTIFF AND COUNTERCLAIM-DEFENDANTS R. LANCE HILL AND LADY AMOS LITERARY WORKS, LTD.'S NOTICE OF SPECIAL MOTION TO STRIKE COUNTERCLAIM PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16** |
| Defendants. | |
| METRO-GOLDWYN-MAYER STUDIOS INC., a Delaware corporation; AMAZON STUDIOS LLC, a California limited liability company; UNITED ARTISTS PICTURES INC., a Delaware corporation, | [Filed with: Declaration of Marc Toberoff; [Proposed] Order Granting Motion] |
| Counterclaimants, | **Hearing Date:** September 12, 2024 |
| v. | **Hearing Time:** 10:00 AM<br>**Place:** Courtroom 5B<br>**Judge:** Hon. Hernan D. Vera |

R. LANCE HILL, an individual; and
LADY AMOS LITERARY WORKS
LTD., a Canadian corporation,

        Counterclaim Defendant
        and Third-Party
        Counterclaim Defendant.

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Thursday, September 12, 2024, at 10:00 am or as soon thereafter as counsel may be heard in the courtroom of the Honorable Hernán D. Vera, Courtroom 5B on the 5th floor of the First Street Courthouse located at 350 W. 1st Street, Courtroom 5B, 5th Floor, Los Angeles, California 90012, Plaintiff/Counterclaim Defendant R. Lance Hill ("Hill" or "Plaintiff") and Third-Party Counterclaim Defendant Lady Amos Literary Works Ltd. ("Lady Amos") (collectively, "Hill Parties") will and hereby do move this Court for an order striking Defendants/Counterclaimants Metro-Goldwyn-Mayer Studios Inc., Amazon Studios LLC, and United Artists Pictures Inc.'s (collectively, "Counterclaimants") Second Counterclaim for Breach of Contract with prejudice pursuant to California Code of Civil Procedure § 425.16.

This Motion is made on the grounds that: (A) the Second Counterclaim arises from the Hill Parties' protected acts in furtherance of their constitutional rights of petition; and (B) Defendants cannot meet their burden of demonstrating a probability that they will prevail on the merits because (i) the predicate acts complained of are the subject of absolute privilege under California Civil Code § 47(b); (ii) the Second Counterclaim is based on an unenforceable "agreement to the contrary" under 17 U.S.C. § 203(a)(5); and (iii) the Second Counterclaim is precluded by "conflict preemption" as it frustrates, undermines and obstructs the clear purpose of the federal law at issue—the Copyright Act's termination provisions, 17 U.S.C. § 203(a).

Should the Court grant this Motion, the Hill Parties respectfully request the opportunity to submit briefing on the amount of fees and costs to which they are entitled per Cal. Code Civ. Proc. § 425.16(c), and *United States ex rel. Newsham v. Lockheed Missile & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999).

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on June 26, 2024.

ANTI-SLAPP MOTION TO STRIKE
CASE NO. CV 24-1587 HDV (SSCx)

1    This Motion is based on this Notice of Motion, the Memorandum of Points
2    and Authorities, the concurrently filed Declaration of Marc Toberoff, all of the
3    pleadings, files, and records in this proceeding, all other matters of which the Court
4    may take judicial notice, and any argument or evidence that may be presented to or
5    considered by the Court prior to its ruling.

6

7    Dated:  July 5, 2024                TOBEROFF & ASSOCIATES, P.C.
8
9                                        By:  _/s/ Marc Toberoff_____
10                                            Marc Toberoff

11                                       *Attorneys for Plaintiff/Counterclaim*
12                                       *Defendants*

# TABLE OF CONTENTS

**Pages**

I.   INTRODUCTION ...................................................................................... 1

II.  STATUTORY BACKGROUND ............................................................... 2

III. FACTUAL BACKGROUND ..................................................................... 4

    A.   Plaintiff Wrote the Screenplay "On Spec" .................................... 4

    B.   United Artists Obtained an Assignment from Plaintiff .................. 5

    C.   Hill's Enforcement of His Statutory Termination Interest ............ 5

IV.  CALIFORNIA'S ANTI-SLAPP STATUTE .............................................. 6

V.   DEFENDANTS' SECOND COUNTERCLAIM
     SHOULD BE STRICKEN PURSUANT TO
     CALIFORNIA'S ANTI-SLAPP STATUTE ............................................. 8

    A.   The Anti-SLAPP Statute Applies ................................................... 8

    B.   The Second Counterclaim Arises from Protected Activity .......... 10

    C.   Defendants Cannot Show a Reasonable Probability
       of Prevailing on Their Counterclaims ......................................... 15

V.   THE HILL PARTIES ARE ENTITLED TO
     THEIR FEES AND COSTS .................................................................... 25

VI.  CONCLUSION ....................................................................................... 25

# **TABLE OF AUTHORITIES**

**Cases**                                                                                     **Pages**

*Alvarez v. XPO Logistics Cartage, LLC,*
  No. CV 18-3736, 2021 WL 5238582 (C.D. Cal. July 14, 2021) ....................*passim*

*Baker v. FirstCom Music,*
  No. LACV 16-8931, 2017 WL 9510144 (C.D. Cal. July 27, 2017)................ 12, 19

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ........................................................................................ 8

*Batzel v. Smith,*
  333 F.3d 1018 (9th Cir. 2003) ........................................................................ 7

*Birker v. Lam,*
  156 Cal. App. 4th 275 (2007)........................................................................ 14

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,*
  489 U.S. 141 (1989) ......................................................................................24

*Braun v. Chronicle Publ'g Co.,*
  52 Cal. App. 4th 1036 (1997)......................................................................... 7

*Briggs v. Eden Council for Hope & Opp'ty,*
  19 Cal. 4th 1106 (1999)...........................................................................*passim*

*Cabral v. Martins,*
  177 Cal. App. 4th 471 (2009)........................................................................ 13

*Chacon v. Litke,*
  181 Cal. App. 4th 1234 (2010)...................................................................... 16

*City of Cotati v. Cashman,*
  29 Cal. 4th 69 (2002)..................................................................................... 10

*CKE Rests., Inc. v. Moore,*
  159 Cal. App. 4th 262 (2008)........................................................................ 14

# TABLE OF AUTHORITIES

**Cases**                                                                      **Pages**

*Classic Media, Inc. v. Mewborn,*
   532 F.3d 978 (9th Cir. 2008)................................................................*passim*

*Cusano v. Klein,*
   473 Fed. Appx. 803 (9th Cir. 2012) .........................................................15

*Dairy, LLC v. Milk Moovement, Inc.*,
   No. CV 21-2233, 2022 WL 2392622 (E.D. Cal. July 1, 2022) ..............13

*Dean v. Kaiser Found. Health Plan, Inc.,*
   562 F. Supp. 3d 928 (C.D. Cal. 2022).........................................................9

*Ekorus, Inc. v. Elohim EPF USA, Inc.,*
   No. CV 20-0310, 2020 WL 3891449 (C.D. Cal. Apr. 24, 2020)..............18

*Estate of Graham v. Sotheby's, Inc.*,
   178 F. Supp. 3d 974 (C.D. Cal. 2016).......................................................24

*Feldman v. Park Lane Assocs.,*
   160 Cal. App. 4th 1467 (2008)..........................................................14, 17

*Fotohaus, LLC v. Proforma, Inc.,*
   No. CV 18-1827, 2019 WL 1493355 (N.D. Cal. Apr. 4, 2019) ..............18

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC,*
   139 S. Ct. 881 (2019) ..........................................................................19-20

*Fugnetti v. Bird B Gone, Inc.,*
   No. CV 19-0847, 2019 WL 6362467 (C.D. Cal. Sept. 16, 2019)........9, 13

*Geragos v. Abelyan*,
   88 Cal. App. 5th 1005 (2023).....................................................................16

*Gilead Scis., Inc. v. Abbott Lab'ys, Inc.*,
   No. CV 13-2034, 2015 WL 1191129 (D. Del. Mar. 13, 2015)...............12

*Gopher Media LLC v. Mod. Doc Media*,
   No. CV 22-0131, 2023 WL 350531 (S.D. Cal. Jan. 20, 2023) ..................9

1

2

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                                **Pages**

3

4

*Gottesman v. Santana,*
   263 F. Supp. 3d 1034 (S.D. Cal. 2017) ................................................................. 12

5

6

*Greater L.A. Agency on Deafness, Inc. v. C.N.N., Inc.,*
   742 F.3d 414 (9th Cir. 2014) .................................................................................. 8

7

8

*Gunn v. Drage,*
   65 F.4th 1109 (9th Cir. 2023) ............................................................................... 10

9

10

*Hearn v. Meyer*,
   664 F. Supp. 832 (S.D.N.Y. 1987) ....................................................................... 20

11

12

*Herring Networks, Inc. v. Maddow,*
   8 F.4th 1148 (9th Cir. 2021) ................................................................................... 8

13

14

*Hilton v. Harllmark Cards,*
   580 F.3d 874 (9th Cir. 2009) ................................................................................. 15

15

16

*In re Finjan Holds., Inc.*,
   58 F.4th 1048 (9th Cir. 2023) ................................................................................. 8

17

18

*In re Outlaw Labs., LP Litig.*,
   352 F. Supp. 3d 992 (S.D. Cal. 2018) ..................................................................... 7

19

20

*Kashian v. Harriman*,
   98 Cal. App. 4th 892 (2002) ........................................................................... 13, 16

21

22

*Kearney v. Foley & Lardner*,
   553 F. Supp. 2d 1178 (S.D. Cal. 2008) ................................................................. 25

23

24

*Ketchum v. Moses*,
   24 Cal. 4th 1122 (2001) ......................................................................................... 25

25

26

*Ludwig v. Superior Court*,
   37 Cal. App. 4th 8 (1995) ....................................................................................... 6

27

28

*Makaeff v. Trump Univ., LLC*,
   715 F.3d 254 (9th Cir. 2013) ................................................................................... 7

ANTI-SLAPP MOTION TO STRIKE
CASE NO. CV 24-1587 HDV (SSCx)

1

**TABLE OF AUTHORITIES**

2

<u>**Cases**</u>                                                                                            **Pages**

3

*Marvel Characters, Inc. v. Simon,*

4

   310 F.3d 280 (2d Cir. 2002)................................................................*passim*

5

*Mazer v. Stein,*

   347 U.S. 201 (1954) ........................................................................ 2

6

7

*Mfd. Home Cmtys., Inc. v. Cnty. of San Diego,*

   655 F.3d 1171 (9th Cir. 2011)............................................................ 8

8

9

*Mills Music, Inc. v. Snyder,*

10

   469 U.S. 153 (1985) ......................................................................*passim*

11

*Mindys Cosmetics, Inc., v. Dakar,*

   611 F.3d 590 (9th Cir. 2010)..........................................................11-12

12

13

*Monex Deposit Co. v. Gilliam,*

   680 F. Supp. 2d 1148 (C.D. Cal. 2010).............................................. 10

14

15

*Montalvo v. Spirit Airlines,*

   508 F.3d 464 (9th Cir. 2007)............................................................ 23

16

17

*Music Sales Corp. v. Morris,*

   73 F. Supp. 2d 364 (S.D.N.Y. 1999).................................................. 23

18

19

*N.Y. Times v. Tasini,*

20

   533 U.S. 483 (2001) ....................................................................4, 24

21

*Navellier v. Sletten,*

   29 Cal. 4th 82 (2002)....................................................................*passim*

22

23

*Nestle USA, Inc. v. Virtual Integration Tech.,*

   No. CV 00-1144, 2000 WL 727859 (C.D. Cal. May 17, 2000) ............................ 19

24

25

*Neville v. Chudacoff,*

   160 Cal. App. 4th 1255 (2008)........................................................*passim*

26

27

*No Doubt v. Activision Publ'g, Inc.,*

   192 Cal. App. 4th 1018 (2011)......................................................... 15

28

ANTI-SLAPP MOTION TO STRIKE
CASE NO. CV 24-1587 HDV (SSCx)

1

# TABLE OF AUTHORITIES

2

**Cases**                                                                                                      **Pages**

3

*Nygard, Inc. v. Uusi-Kerttula*,

4
    159 Cal. App. 4th 1027 (2008) .................................................................................... 15

5

*Olsen v. Harbison*,

6
    191 Cal. App. 4th 325 (2010) ...................................................................................... 16

7

*Pac. Gas & Elec. Co. v. Energy Res. Conserv. & Dev. Comm'n*,

8
    461 U.S. 190 (1983) ...................................................................................................... 22

9

*Pech v. Doniger*,

10
    75 Cal. App. 5th 443 (2022) ........................................................................................ 16

11

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,

12
    134 S. Ct. 1962 (2014) ................................................................................................. 24

13

*Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Assn.*,

14
    136 Cal. App. 4th 464 (2006) ...................................................................................... 16

15

*Quidel Corp. v. Siemens Med. Sols. USA, Inc.*,

16
    No. CV 16-3059, 2019 WL 4747671 (S.D. Cal. Sept. 27, 2019) ............................ 18

17

*Ray Charles Found. v. Robinson*,

    919 F. Supp. 2d 1054 (C.D. Cal. 2013),

18
    *rev'd on other grounds*, 795 F.3d 1109 (9th Cir. 2015) .................................. *passim*

19

20

*Ray Charles Found. v. Robinson*,

    795 F.3d 1109 (9th Cir. 2015) ................................................................................ *passim*

21

22

*RGC Gaslamp, LLC v. Ehmcke Sheet Metal Co.*,

23
    56 Cal. App. 5th 413 (2020) ........................................................................................ 11

24

*Roblox Corp. v. WowWee Grp. Ltd.*,

25
    660 F. Supp. 3d 880 (N.D. Cal. 2023) ....................................................................... 20

26

*Salma v. Capon*,

27
    161 Cal. App. 4th 1275 (2008) .................................................................................... 14

28

ANTI-SLAPP MOTION TO STRIKE
CASE NO. CV 24-1587 HDV (SSCx)

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                                        **Pages**

*Scorpio Music S.A. v. Willis*,
    No. CV 11-1557, 2012 WL 1598043 (S.D. Cal. May 7, 2012) .............................. 14

*Seltzer v. Barnes*,
    182 Cal. App. 4th 953 (2010) ...................................................................16-17

*Shande v. Zoox, Inc.*,
    No. CV 22-5821, 2024 WL 2306284 (N.D. Cal. May 21, 2024) ........................ 10

*Sharper Image Corp. v. Target Corp.*,
    425 F. Supp. 2d 1056 (N.D. Cal. 2006) .................................................. 19

*Smith v. Casey*,
    741 F.3d 1236 (11th Cir. 2014)........................................................... 20

*Sony Corp. of Am. v. Universal City Studios, Inc*,
    464 U.S. 417 (1984) .......................................................................... 2

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001)............................................................... 8

*Stewart v. Abend*,
    495 U.S. 207 (1990) ...................................................................*passim*

*Thomas v. Fry's Electronics, Inc.*,
    400 F.3d 1206 (9th Cir. 2005)............................................................ 7

*Thomson v. Hodgson*,
    No. CV 21-8124, 2021 WL 11550093 (C.D. Cal. Dec. 17, 2021) ........................ 20

*Trident E&P, LLC v. HP Inc.*,
    No. CV 24-0790, 2024 WL 3091969 (N.D. Cal. June 21, 2024) ........................ 7

*UMG Recordings, Inc. v. Glob. Eagle Entm't Inc.*,
    117 F. Supp 3d 1092 (C.D. Cal. 2015).................................................. 19

*United States ex rel. Newsham v. Lockheed Missile & Space Co.*,
    190 F.3d 963 (9th Cir. 1999)............................................................ 25

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Pages**

*X Corp. v. Bright Data Ltd.*,
   No. CV 23-3698, 2024 WL 2113859 (N.D. Cal. May 9, 2024) ............................ 22

*X Corp. v. Ctr. for Countering Digital Hate, Inc.*,
   __ F. Supp. 3d ___, 2024 WL 1246318 (N.D. Cal. Mar. 25, 2024) ...................... 8-9


## Statutes, Rules and Regulations

17 U.S.C.

   § 101 ...............................................................................................................*passim*

   § 102 ...........................................................................................................................5

   § 203 ...............................................................................................................*passim*

   § 304 ...............................................................................................................*passim*

37 C.F.R. § 202.1 .............................................................................................................4-5

   § 201.10 ......................................................................................................................4

   § 202.3 ........................................................................................................................4

California Code of Civil Procedure § 425.16 ...................................................*passim*

California Civil Code § 47 ................................................................................*passim*

Federal Rule of Civil Procedure

   8 ......................................................................................................................*passim*

   12 ....................................................................................................................*passim*

   56 ................................................................................................................................8

# TABLE OF AUTHORITIES

**<u>Other Authorities</u>**                                                                            **Pages**

Carl Sandburg, *The People, Yes* (1936) ......................................................... 1

Raymond J. Dowd, *Copyright Litigation Handbook*
   § 4:1 (2d ed. & Nov. 2023 Update) ..................................................... 20

H.R. Rep. No. 94-1476 (1976) ........................................................... 21, 23

1, 3 Melville Nimmer & David Nimmer, *Nimmer on Copyright* (2023 rev. ed)

   § 1.01 ......................................................................................... 24

   § 11.02 ......................................................................................... 4

   § 11.07 ......................................................................................... 24

   § 11.08 ......................................................................................... 23

   § 13.03 ......................................................................................... 4

S. Rep. No. 94-473, at 108 (1975) ..................................................... 21, 24

6 William F. Patry, *Patry on Copyright* § 21:27 (2024 rev. ed.) ........................ 20

ANTI-SLAPP MOTION TO STRIKE
CASE NO. CV 24-1587 HDV (SSCx)

## I.   **INTRODUCTION**

The old adage, attributed to Pulitzer Prize winning poet and journalist Carl Sandburg, is apt: "If the law is against you, talk about the evidence, [] If the evidence is against you, talk about the law, and, [] if the law and the evidence are both against you, then pound on the table and yell like hell." Sandburg, *The People, Yes* (1936). Defendants lead with neither the facts nor the law in their overwrought, insult-laden Answer and Countercomplaint (Dkt. 22) against the author Plaintiff R. Lance Hill ("Hill") and his solely owned d/b/a entity, Lady Amos Literary Works Ltd. ("Lady Amos") (the "Hill Parties"). Instead, they holler baseless allegations of fraud. While Defendants' vituperations succeeded in grabbing a few headlines in the Hollywood trades, they will not succeed where it matters—before this Court.

Defendants' hyperbole evinces the weakness of their arguments on the merits of the actual dispute—whether Hill's 1986 "spec" screenplay "Roadhouse" qualifies as "work made for hire" under Section 101 of the Copyright Act and binding Supreme Court and Ninth Circuit precedent interpreting the Act.

Try as they might to deflect and convert this federal copyright case into a state-law contest, Defendants' punitive counterclaim for breach of contract fails as a matter of law and should be stricken. Their counterclaim readily qualifies under the first prong of California's anti-SLAPP law, Cal. Code of Civil Procedure ("CCP") § 425.16, as it seeks to punish Hill for (i) serving and recording notices of termination with the U.S. Copyright Office; (ii) registering his copyright with the Copyright Office and (iii) enforcing his copyright in this legal action—all of which constitute protected petitioning activity pursuant to settled precedent. Then, under § 425.16's second prong, Defendants cannot meet their burden of demonstrating a probability they will prevail on their state-law counterclaim because as pled it fails as a matter of law.

*First*, the predicate acts forming the gravamen of Defendants' breach of contract counterclaim (Hill's serving/recording his statutory termination notices and

ANTI-SLAPP MOTION TO STRIKE
CASE NO. CV 24-1587 HDV (SSCx)

registering his screenplay's copyright with the Copyright Office) are necessary prerequisites to filing this copyright action and, as such, are subject to California's robust litigation privilege. Cal. Civ. Code § 47(a).

*Second*, the boilerplate work-for-hire acknowledgment Defendants rely on for their breach of contract counterclaim is unenforceable. Congress clearly enacted the inalienable termination right to benefit authors. To protect authors against the superior bargaining power of publishers Congress unequivocally mandated that "termination … may be effected notwithstanding *any* agreement to the contrary." 17 U.S.C. § 203(a)(5) (emphasis added). Defendants thus pled their breach of contract counterclaim in the alternative if Hill's termination and copyright are held valid. This makes no legal or common sense. An author could not be free to statutorily terminate "notwithstanding an[] agreement to the contrary," *id*., but then be held to have *breached* that same unenforceable agreement for doing so.

Finally, Defendants' state-law counterclaim is subject to conflict preemption (not to be confused with express preemption under 17 U.S.C. § 301(a)) because it undermines, frustrates and obstructs the legislative purposes of a federal copyright law by penalizing Hill for duly exercising his termination right.

Defendants' breach of contract counterclaim fails as a matter of law and should be stricken under CCP § 425.16 without leave to amend.

## II.   **STATUTORY BACKGROUND**

"The economic philosophy behind the [Copyright] clause … is the conviction that encouragement of individual effort by personal gain is the best way to advance the public welfare through the talents of authors[.]" *Mazer v. Stein*, 347 U.S. 201, 219 (1954). Under the Constitution, "it is Congress that has been assigned the task of defining the scope of the limited monopoly that should be granted to authors." *Sony Corp. v. Universal Studios*, 464 U.S. 417, 429 (1984). Commencing with the Copyright Act of 1831, Congress has used this power to provide authors with the right to recover transferred copyright interests and has strengthened those rights over

time. *See Stewart v. Abend*, 495 U.S. 207, 217-20 (1990).

Effective January 1, 1978, the Copyright Act of 1976 significantly enhanced authors' rights. 17 U.S.C. § 101 *et seq*. Congress greatly extended the copyright term and intended to give the benefit of these additional years to authors rather than to grantees for whom the automatic grant of the extension would be a windfall. *See* H.R. Rep. No. 94-1476 at 140 (1976). It therefore provided authors with a new right to recapture their copyrights by terminating decades-old copyright transfers "notwithstanding any agreement to the contrary." 17 U.S.C. § 304(c)(5); § 203(a)(5).

The clear Congressional purpose was to prevent authors from waiving their termination right by contract, directly or indirectly. *See Stewart,* 495 U.S. at 230 ("1976 Copyright Act provides … an inalienable termination right."); *Marvel Characters, Inc. v. Simon* ("*Simon*"), 310 F.3d 280 (2d Cir. 2002) (Marvel cannot bar termination by contractually re-characterizing works as "works for hire").

Section 304(c) applies to pre-1978 copyright transfers. A closely analogous Section 203(a), applicable to Hill's Termination Notices, governs transfers after January 1, 1978, and allows authors to terminate any such transfer after thirty-five years. The Supreme Court has elucidated the intent and purpose behind the termination provisions of the 1976 Act as follows:

> The principal purpose of the [termination right] was to provide added benefits to authors. The ... concept of a termination right itself, w[as] obviously intended to make the rewards for the creativity of authors more substantial. More particularly, the termination right was expressly intended to relieve authors of the consequences of ill-advised and unremunerative grants that had been made before the author had a fair opportunity to appreciate the true value of his work product. That general purpose is plainly defined in the legislative history and, indeed, is fairly inferable from the text of [the statute] itself.

*Mills Music, Inc. v. Snyder*, 469 U.S. 153, 172-73 (1985) (footnote omitted). The termination right lies in stark contrast to ordinary contract principles, as it empowers authors and their statutory heirs to terminate grants of copyright transfers *without*

*cause*, and regardless of the contracting parties' promises, intent or expectations when the transfer was made. 17 U.S.C. §§ 304(c)(5), 203(a)(5).

Congress recognized that publishers held far greater bargaining power and that consequently, authors commonly agreed to one-sided grants which precluded them from sharing in the success of their works. *Id*. The results were often supremely unfair, as when a work proved to have enduring commercial value but enriched only the grantee. Congress thus created termination rights to "safeguard[] authors against unremunerative transfers" made before their works were commercially exploited, and to give authors a second chance to obtain a more equitable portion of a copyright's value when it is no longer conjectural. H.R. Rep. No. 94-1476 at 124 (1976); *see N.Y. Times v. Tasini,* 533 U.S. 483, 496 n.1 (2001) (recognizing Congress' intent to re-adjust "the author/publisher balance" by providing an "inalienable authorial right to revoke a copyright transfer").

Termination is effected by serving advance notice of termination on the grantee or its successor in compliance with the Act, 17 U.S.C. §203(a)(4), and the Copyright Office's regulations, 37 C.F.R. § 201.10. The termination provisions reflect a deliberate balance of competing interests determined by Congress.[1]

"Works for hire" are the sole exemption from the termination provisions. 17 U.S.C. § 203(a). Section 101 governs whether a work is a "work for hire."

## III.   FACTUAL BACKGROUND

### A.   Plaintiff Wrote the Screenplay "On Spec."

Plaintiff R. Lance Hill is author of the original screenplay titled *Roadhouse* dated July 1986 (the "Screenplay"), which he wrote "on spec" on his own initiative

---

[1] For instance, the Act gives a terminated grantee a competitive advantage to reacquire recaptured copyrights. *See* 17 U.S.C. § 304(c)(6)(D); 3 Melville Nimmer and David Nimmer, *Nimmer on Copyright* (*"Nimmer"*) § 11.08[A] n.6. As the Act has no extraterritorial application, termination applies only to the U.S. copyright, *id.* §11.02[B][2] at 11-19. This makes exploitation independent of a terminated grantee practically impossible. Terminated grantees may also continue to distribute all pre-termination derivative works. 17 U.S.C. §304(c)(6)(A).

ANTI-SLAPP MOTION TO STRIKE
CASE NO. CV 24-1587 HDV (SSCx)

prior to any contractual relationship with United Artists Pictures, Inc. ("UA"). Countercompl. ¶ 23; *see also* Answer ¶ 2 ("Defendants admit … that Hill wrote the 1986 screenplay entitled Roadhouse"). Under the Copyright Act, 17 U.S.C. § 102(a), Hill secured a statutory copyright in his Screenplay the moment it was fixed in a tangible medium of expression (i.e., when he wrote it).

### B.   United Artists Obtained an Assignment from Plaintiff.

After Hill completed his Screenplay, Hill's agents at CAA shopped it to potential buyers. Countercompl. Ex. B (Dkt. 22-2) at 5-6. UA sought to produce a motion picture based on the Screenplay, and among other things had Hill, *in his individual capacity,* transfer his Screenplay copyright to UA by a written "Assignment" executed September 16, 1986, which Assignment UA filed with the Copyright Office.[2] Countercompl. ¶¶ 24, 36; Answer ¶ 30; Toberoff Decl. Ex. A.[3] UA produced and released the 1989 motion picture, *Road House* (the "1989 Film") based on the Screenplay. Countercompl. ¶ 1; Answer ¶¶ 3, 69.

### C.   Hill's Enforcement of His Statutory Termination Interest.

***Service and Recordation of Termination Notice***. On November 10, 2021, Hill properly availed himself of his right under the Copyright Act to recover the copyright to his Screenplay by timely serving United Artists' successors with a statutory notice of termination of Hill's 1986 copyright Assignment, under 17 U.S.C. § 203(a), bearing an effective termination date of November 11, 2023 (the "Termination Notice") and filing it with the Copyright Office. Countercompl. ¶ 41; Answer ¶ 4. The Termination Notice, which was recorded with the U.S. Copyright

---

[2] On September 16, 1986, Hill, doing business as Lady Amos, also entered into a long-form agreement with UA, which it had Hill sign personally as well, plus an agreement (irrelevant to this action) for Hill's writing services to revise his Screenplay. Countercompl. ¶ 37, Exs. B-C. Whereas Defendants attached these two agreements plus three more Exhibits to their Counterclaims, they tellingly *omitted* Hills' copyright Assignment of his Screenplay, in his individual capacity, and UA's filing of such Assignment with the Copyright Office, for obvious reasons.

[3] Although unnecessary for the resolution of this Motion, the Court may consider Hill's personal copyright Assignment for context. *See* Request for Judicial Notice at 1-2.

Office on January 8, 2022 (Doc. No. V9985D535), fully complied with Section 203(a) of the Copyright Act and the regulations promulgated thereunder by the Register of Copyrights, 37 C.F.R. § 201.10.[4] Answer ¶ 4.

On November 11, 2023, the Screenplay's U.S. copyright thereby duly reverted to Hill under the Copyright Act. Answer ¶ 4. But Defendants refused to acknowledge Hill's statutory termination and steamrolled ahead with the production of a remake of the 1989 Film derived from Hill's Screenplay. Defendants' unauthorized *Road House* remake was not completed until 2024, well *after* the effective date of Hill's statutory termination. Countercompl. ¶ 1; Answer ¶ 50; Toberoff Decl. Ex. C.

***Registration of the Screenplay with the Copyright Office and Initiation of the Instant Lawsuit.*** As a required prerequisite to bringing this copyright infringement action, Hill "filed an application [with the U.S. Copyright Office] for copyright registration for the 1986 screenplay on January 24, 2024[.]" Countercompl. ¶ 7. On "February 21, 2024, the U.S. Copyright Office issued a copyright registration certificate to Hill" for the Screenplay. *Id.* ¶ 47. Less than a week later, on February 27, 2024, Hill filed his Complaint in this case. Dkt. 1.

## IV.  CALIFORNIA'S ANTI-SLAPP STATUTE

California's anti-SLAPP law, CCP § 425.16, provides substantive immunity from "strategic lawsuits against public participation" and the speedy dismissal of claims that interfere with the exercise of speech and petition rights, including communications with government offices.  *See Ludwig v. Superior Court*, 37 Cal. App. 4th 8, 14 (1995); *Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1268-69 (2008). In enacting the anti-SLAPP law, the legislature found "a disturbing increase in lawsuits brought primarily to chill the valid exercise of [] constitutional rights" and to that end, mandated that the law "shall be construed broadly." CCP

---

[4] In an abundance of caution, Hill also served and filed with the Copyright Office a second notice of termination as to any express or implied copyright grant of the Screenplay from Hill to his solely-owned entity Lady Amos. Countercompl. ¶ 44.

§ 425.16(a). The statute was enacted "to nip SLAPP litigation in the bud[,]" by quickly disposing of claims that target acts in furtherance of such rights. *Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036, 1042 (1997). "SLAPPs 'masquerade as ordinary lawsuits but are brought to deter common citizens from exercising their political or legal rights or to punish them for doing so.'" *U.S. News & World Rep., L.P. v. Chiu*, 2024 WL 2031635, at *16 (N.D. Cal. May 7, 2024) (quoting *Hilton v. Hallmark Cards*, 599 F.3d 894, 902 (9th Cir. 2010)).

Ninth Circuit courts routinely apply California's anti-SLAPP statute to California state-law claims filed in federal court, like Defendant's retaliatory breach of contract counterclaim. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018) ("*Planned Parenthood*").[5]

Courts employ a two-step inquiry to determine if a claim is subject to a special motion to strike. First, the [counterclaim-]defendant must make a prima facie case that the "cause of action … aris[es] from any act of that person in furtherance of [his/her] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." CCP § 425.16(b)(1). Once that showing is made, the burden then shifts to the [counterclaim-]plaintiff to "establish[] that there is a probability that the plaintiff will prevail on the claim." *Id.*; *In re Outlaw Labs., LP Litig.*, 352 F. Supp. 3d 992, 1010 (S.D. Cal. 2018). If the claimant cannot meet its burden on this second step, the Court should grant the motion to strike. *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 265 (9th Cir. 2013).

In applying this two-step process, courts heed the California Legislature's, the California Supreme Court's and Ninth Circuit's admonition that the anti-SLAPP statute "shall be construed broadly." CCP § 425.16(a); *Briggs v. Eden Council for*

---

[5] *See also Batzel v. Smith*, 333 F.3d 1018, 1025-26 (9th Cir. 2003) ("Because California law recognizes the protection of the anti-SLAPP statute as a substantive immunity from suit, this court . . .. will do so as well."); *Thomas v. Fry's Elec., Inc.*, 400 F.3d 1206, 1206-07 (9th Cir. 2005) (noting "California anti-SLAPP motions to strike and entitlement to fees and costs are available to litigants proceeding in federal court"); *Trident E&P, LLC v. HP Inc.*, 2024 WL 3091969, at *6 (N.D. Cal. June 21, 2024) ("California's anti-SLAPP statute applies to state claims in federal court.").

*Hope & Opp'ty*, 19 Cal.4th 1106, 1118 (1999); *Mfd. Home Cmtys., Inc. v. Cnty. of San Diego*, 655 F.3d 1171, 1176 (9th Cir. 2011) ("The legislature instructed the statute 'shall be construed broadly.'"); *Greater L.A. Agency on Deafness, Inc. v. C.N.N., Inc.*, 742 F.3d 414, 421 (9th Cir. 2014) (same).

Where, as here, "an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim," a federal court applies the Fed. R. Civ. Proc. 12(b)(6) standard. *Planned Parenthood*, 890 F.3d at 834; *see also Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021). In such cases, no discovery is required before the Court can rule on the anti-SLAPP motion. *Planned Parenthood*, 890 F.3d at 834. In construing an anti-SLAPP motion under Rule 12, courts accept as true the allegations in the [counter-]complaint, but are not bound to accept as true *a legal conclusion* couched as a factual argument, "and a formulaic recitation of a cause of action's elements will [also] not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This Court may thus consider Defendants' Answer/Counterclaim, documents incorporated by reference, and matters of public record subject to judicial notice. *In re Finjan Holds., Inc.*, 58 F.4th at 1052 n.1. Although the Court must accept well-pleaded *factual* allegations as true, it "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit," nor those "that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Only in the event there is an insufficient basis to strike the subject claim on legal grounds pursuant to Rules 8 and 12, and the Court finds it necessary to instead consider the "factual sufficiency of a claim, then the [Rule] 56 standard will apply" and targeted discovery is allowed. *Planned Parenthood*, 890 F.3d at 834.

## V.   <u>DEFENDANTS' SECOND COUNTERCLAIM SHOULD BE STRICKEN PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE</u>

### A.   The Anti-SLAPP Statute Applies.

"For the purposes of the anti-SLAPP motion, what [Counterclaimants] call

[their] claims is not actually important" because "'the anti-SLAPP statute should be broadly construed.'" *X Corp. v. Ctr. for Countering Digital Hate, Inc.*, 2024 WL 1246318, at *9 (N.D. Cal. Mar. 25, 2024) (citation omitted) (granting Anti-SLAPP motion as to breach of contract claim). The California Supreme Court has made equally clear that "conduct alleged to constitute [a] breach of contract may also come within constitutionally protected speech or petitioning. The anti-SLAPP statute's definitional focus in not the form of the [litigant]'s cause of action[.]" *Navellier v. Sletten*, 29 Cal.4th 82, 92 (2002). Consequently, purported breach of contract claims, like Defendants', are routinely dismissed under the statute. *See, e.g.*, *id.* at 93 (finding breach of contract claim arose from protected activity under Anti-SLAPP statute where alleged breach involved legal claims); *Fugnetti v. Bird B Gone, Inc.*, 2019 WL 6362467 (C.D. Cal. Sept. 16, 2019) (granting Anti-SLAPP motion to strike counterclaim for breach of contract against plaintiff who filed copyright lawsuit).[6]

Defendants cannot avoid that their retaliatory counterclaim punishes Hill for exercising his rights under the Copyright Act nor shield themselves from the broad reach of California's Anti-SLAPP statute. Each act on which Defendants' breach of contract claim is premised—i.e., (i) Hill's service of a statutory notice of termination and recordation of it with the Copyright Office as required by the Act; (ii) Hill's filing of an application to register his spec Screenplay with the Copyright Office as a prerequisite to filing this copyright infringement action; and (iii) Hill's filing the instant lawsuit—constitute "protected" petitioning and free speech activity under step one of the Anti-SLAPP analysis.

As to step two, Defendants, as a matter of law, cannot show a reasonable probability of succeeding on their counterclaim because Hill's statutory notices and

---

[6] *Alvarez v. XPO Logistics Cartage, LLC*, 2021 WL 5238582 (C.D. Cal. July 14, 2021) (striking breach of contract claim based on provision that was unenforceable as against public policy); *Dean v. Kaiser Found. Health Plan, Inc.*, 562 F. Supp. 3d 928, 935 (C.D. Cal. 2022) (striking breach of contract claim); *Gopher Media LLC v. Mod. Doc Media*, 2023 WL 350531, at *5 (S.D. Cal. Jan. 20, 2023) (striking complaint's repeated "fraud-related allegations").

registrations with the Copyright Office are prerequisites to, and were taken in connection with, anticipated and/or actual litigation, such that they are absolutely privileged under California Civil Code § 47. More specifically, each of the above-enumerated acts are prescribed by statute and were *necessary* for Plaintiff Hill to statutorily recover his copyright and to initiate the current proceedings to enforce the same. Accordingly, Defendants' second counterclaim for breach of contract fails as a matter of law and should therefore be dismissed with prejudice.

### B.   The Second Counterclaim Arises from Protected Activity.

"The first prong of the anti-SLAPP analysis involves two related inquiries: (1) whether the Complaint alleges activity protected by section 425.16[(b)(1)] and (2) whether the cause or causes of action alleged arise from those activities. The question is only whether a defendant has made out a prima facie case that activity underlying a plaintiff's claims is statutorily protected." *Shande v. Zoox, Inc.*, 2024 WL 2306284, at *5 (N.D. Cal. May 21, 2024) (quoting *Gunn v. Drage*, 65 F.4th 1109, 1120-21 (9th Cir. 2023)) (internal quotation marks and brackets omitted).

"A defendant meets [its first prong burden under CCP § 425.16(b)(1)] by demonstrating that the act[s] underlying the plaintiff's cause fits one of the [four] categories spelled out in section 425.16, subdivision (e)[.]" *City of Cotati v. Cashman*, 29 Cal.4th 69, 78 (2002):

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

CCP § 425.16(e). The Hill Parties easily meet their initial burden under the Anti-SLAPP statute because, as shown below, the predicate acts which form the basis of

ANTI-SLAPP MOTION TO STRIKE
CASE NO. CV 24-1587 HDV (SSCx)

Defendants' second counterclaim constitute "protected" petitioning and free speech activity as defined in sections 425.16(b)(1) and (e). As California courts have explained, any "necessary prerequisite to bringing" suit constitutes "a protected prelitigation statement preparatory to filing a judicial proceeding" under CCP § 425.16(e). *RGC Gaslamp, LLC v. Ehmcke Sheet Metal Co.*, 56 Cal.App.5th 413, 426 (2020) (citation omitted). Here, the predicate acts underlying Defendants' breach of contract counterclaim were necessary prerequisites to Hill bringing this suit.

In short, "to find that [the] counterclaim, as pled, is not *based* on Plaintiff['s] protected activity of litigating this action would strain credulity." *Alvarez*, 2021 WL 5238582, at *3; *see also id.* at *3 n.2 ("The fact that [Defendant] hypothetically may also be able to allege facts in support of its breach of contract claim that *do not* arise from Plaintiffs' protected activity has little bearing on the realities of this case.").

### 1. Hill's Service and Recordation with the U.S. Copyright Office of His Statutory Notice of Termination Are Protected Activity.

The statutorily prescribed acts of serving a termination notice on a prior grantee and/or its successor and recording the termination notice with the U.S. Copyright Office constitute protected activities both because such acts are in connection with petitioning a government agency and are in anticipation of litigation. As recognized in this district, "claims based upon… the filing and serving of the termination notices," including for breach of contract, readily "fall within the anti-SLAPP statute." *Ray Charles Found. v. Robinson*, 919 F. Supp. 2d 1054, 1064-65 (C.D. Cal. 2013), *rev'd on other grounds*, 795 F.3d 1109 (9th Cir. 2015) (granting special motion to strike breach of contract claim against Charles' heirs, where claim was based on service and filing of termination notices under the Copyright Act).

Here, just as in *Ray Charles Found.*, *supra*, Hill served his Termination Notices and filed them with the Copyright Office as required by 17 U.S.C. § 203(a)(4)(A)-(B) "to establish a property right" under the Copyright Act's comprehensive termination scheme. *Mindys Cosmetics, Inc., v. Dakar*, 611 F.3d 590,

597 (9th Cir. 2010); *see also Gilead Scis., Inc. v. Abbott Lab'ys, Inc.*, 2015 WL 1191129, at *6 (D. Del. Mar. 13, 2015) ("Statements made while petitioning government agencies (including the PTO) qualify as protected activity under the anti-SLAPP statute…[defendant]'s patent applications and declarations to the PTO which give rise to [plaintiff]'s claims, are protected activity under anti-SLAPP.") (citing *Mindys*, 611 F.3d at 596-97; *Ray Charles Found.*, 919 F. Supp. 2d at 1063-64)).

## 2. Hill's Registration of his Screenplay with the U.S. Copyright Office is Protected Activity.

An "act in furtherance of a person's right of petition or free speech" includes a "writing made before … any [] official proceeding authorized by law" and a "writing made in connection with an issue under consideration or review by … any other official proceeding authorized by law." CCP § 425.16(e)(1)-(2). Accordingly, Hill's application to register his Screenplay's copyright is a formal written communication to the Copyright Office made in connection with an official proceeding authorized by law and, as such, is protected activity for anti-SLAPP purposes. *See*, *e.g.*, *Baker v. FirstCom Music*, 2017 WL 9510144, at *4 (C.D. Cal. July 27, 2017) ("[F]iling an application for copyright registration with the U.S. Copyright Office is a protected activity… under section[s] 425.16(e)(1) and … 425.16(e)(2).") (citations omitted); *Gilead*, 2015 WL 1191129, at *6; *Gottesman v. Santana*, 263 F. Supp. 3d 1034, 1045 (S.D. Cal. 2017) ("The law is clear that the act of filing a trademark application … is protected by the anti-SLAPP statute as a writing made before an executive or other official proceeding authorized by law.") (citations omitted); *Mindys*, 611 F.3d at 596 (concluding that the filing of a trademark application is protected by the anti-SLAPP statute as a "writing made before ... [an] official proceeding authorized by law" and is also a "writing made in connection with an issue under consideration ... by ... [an] executive ... body, or any other official proceeding").

///

///

### 3.   Hill's Filing of this Lawsuit to Enforce His Copyright Termination Interest Is Protected Activity.

"A claim for relief filed in federal district court indisputably is a 'statement or writing made before a ... judicial proceeding.'" *Navellier*, 29 Cal.4th at 90 (quoting CCP § 425.16(e)(1)). "Therefore, [Plaintiff]'s filing of [his copyright] claims is an act in furtherance of [his] right of petition or free speech and cannot be the basis of [Defendants]' counterclaims against [him]." *Dairy, LLC v. Milk Moovement, Inc.*, 2022 WL 2392622, at *7 (E.D. Cal. July 1, 2022) (holding that acts related to the filing of a trade secret lawsuit constitutes protected activity); *see also, e.g., Alvarez*, 2021 WL 5238582, at *3 (finding burden satisfied on first prong notwithstanding "[counterclaimant's] attempts to reframe its pleadings by arguing that [it] is not suing Plaintiffs for pursuing this lawsuit, but for breaching their contractual obligations"); *id.* at *3 n.2 ("The fact that [Defendant] hypothetically may also be able to allege facts in support of its breach of contract claim that *do not* arise from Plaintiffs' protected activity has little bearing on the realities of this case."); *Fugnetti*, 2019 WL 6362467, at *2 (finding the "counterclaims arise from an act in furtherance of [plaintiff]'s right to petition. That act is, of course, [plaintiff]'s decision to assert a copyright claim against [defendant]").

### a.   Termination Notices and Copyright Registration Are Also Protected Litigation-Related Activity.

"As CCP § 425.16's protection extends to 'any act … in furtherance of the [] right of petition,' the statute also protects "litigation-related activities," and courts adopt an "expansive view of what constitutes litigation-related activities." *Kashian v. Harriman*, 98 Cal. App. 4th 892, 908 (2002); *Cabral v. Martins*, 177 Cal. App. 4th 471 (2009) (lawyer's revision of will before testator died was protected conduct because eventually the revised will would need to be filed with a probate court). Thus, "communications preparatory to or in anticipation of the bringing of an action" are protected. *Briggs*, 19 Cal. 4th at 1115; *see Neville*, 160 Cal. App. 4th at 1268 (if a

communication "concern[s] the subject of the dispute" and is in "anticipation of litigation," it is protected); *Salma v. Capon*, 161 Cal. App. 4th 1275, 1285 (2008) ("Communications made in preparation for or in anticipation of … an action … fall within the ambit of these subdivisions.").

The service and filing of a termination notice is naturally adversarial, as it involuntarily extinguishes the grantee's ownership of a U.S. copyright. When those copyrights are valuable, the service and filing of termination notices invariably acts as the opening salvo to a lawsuit and/or related settlement negotiations. Absent a settlement, the terminated grantee sues to invalidate the termination, or repudiates the termination, as here, forcing the terminating party to go to court to enforce their termination interest. *See*, *e.g.*, *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 985 (9th Cir. 2008); *Simon*, 310 F.3d 280; *Scorpio Music S.A. v. Willis*, 2012 WL 1598043 (S.D. Cal. May 7, 2012). Here, within weeks of Hill's service of termination notices on Defendants on November 10, 2021, Defendants' litigation counsel Wook Hwang sent Hill's litigation counsel a letter repudiating the termination on December 15, 2021, after which Hill's counsel recorded the terminations notices with the Copyright Office on January 8, 2022. Answer ¶ 37.

In this respect, notices of termination are comparable to other legal notices that courts have consistently held are protected litigation-related activity. *See Salma*, 161 Cal. App. 4th at 1285 (holding notice of rescission of contract protected as litigation-related activity); *CKE Rests., Inc. v. Moore*, 159 Cal. App. 4th 262, 271 (2008) (holding notice to restaurant of health code issues was protected litigation-related activity); *Birker v. Lam*, 156 Cal. App. 4th 275, 282 (2007) (holding notice terminating tenancy is protected litigation-related activity). Notices of Termination likewise resemble other sorts of protected communications made in anticipation of litigation, such as pre-lawsuit demand letters. *See Feldman v. Park Lane Assocs.*, 160 Cal. App. 4th 1467, 1481-82 (2008).

**b.    The Termination Notices Are Also Protected Communications Concerning an Issue of Public Interest.**

CCP § 425.16(e)(4) also generally extends protection to "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." In determining whether communications concern a "public issue," the courts adopt a "broad view." *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1041 (2008). The "issue need not be 'significant' to be protected by the anti-SLAPP statute–it is enough that it is one in which the public takes an interest.'" *Id*. at 1042. *See Hilton v. Harllmark Cards*, 580 F.3d 874, 888 (9th Cir. 2009) (card spoofing Paris Hilton held protected under the anti-SLAPP statute as it concerned "matters of widespread public interest"); *No Doubt v. Activision Publ'g, Inc*., 192 Cal. App. 4th 1018, 1027 (2011) (use of the likenesses of the band No Doubt was a matter of public interest "because of the widespread fame No Doubt had achieved"); *Cusano v. Klein*, 473 Fed.Appx. 803 (9th Cir. 2012) ("The challenged activities were in connection with a public issue because they relate to KISS and its members[.]").

Here, the challenged termination notices concern Hill's original screenplay *Roadhouse.* The resulting film starring Patrick Swayze is iconic and Defendants' 2024 *Road House* remake was reportedly Amazon's most successful film to date. https://tinyurl.com/k7fm9nc9 (Press Release, Amazon (Apr. 30, 2024)) Defendants would be hard pressed to assert that this is not a matter of public interest under CCP § 425.16(e)(4).

**C.    Defendants Cannot Show a Reasonable Probability of Prevailing on Their Counterclaims.**

Because the Hill Parties meet their initial first prong burden showing that Defendants' claim arises from protected activity, the burden shifts to Defendants to "demonstrate that the [claim] is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment[.]" *Premier Med. Mgmt.*

*Sys., Inc. v. Cal. Ins. Guarantee Assn.*, 136 Cal.App.4th 464, 476 (2006) (italics and quotation marks omitted). Defendants can do neither.

## 1. Hill's Actions Fall Squarely Within the Litigation Privilege.

"A [claimant] cannot establish a prima facie case if the litigation privilege precludes [] liability on the claim." *Timothy W. v. Julie W.*, 85 Cal. App. 5th 648, 661 (2022) (citations omitted). "The principal purpose of the litigation privilege is to afford litigants and witnesses the utmost freedom of access to the courts without fear of harassment in subsequent derivative actions." *Geragos v. Abelyan*, 88 Cal. App. 5th 1005, 1031 (2023) (citations omitted). The litigation privilege, codified in California Civil Code § 47(b), applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990). Importantly, whether conduct falls within the scope of the litigation privilege "is an issue of law, and not fact." *Chacon v. Litke*, 181 Cal. App. 4th 1234, 1255 (2010).

"The breadth of the litigation privilege cannot be understated." *Olsen v. Harbison*, 191 Cal. App 4th 325, 333 (2010). "Any doubt about whether the privilege applies is resolved in favor of applying it." *Kashian*, 98 Cal. App. 4th at 913. "The intention of the party making the privileged communication is irrelevant because the privilege is absolute in nature, applying to all publications, irrespective of their maliciousness." *Pech v. Doniger*, 75 Cal.App.5th 443, 465 (2022) (citation and quotation marks omitted). Thus, notwithstanding Defendants' wild accusations of "fraud," "the privilege has been applied in 'numerous cases' involving 'fraudulent communication []' … The litigation privilege protects even communication made with an intent to harm, so long as the communication is made in 'relation' to a… genuinely contemplated judicial or other official proceeding." *Geragos*, 88 Cal. App. 5th at 1031-32 (citations omitted).

Consistent with this treatment, "courts have adopted a fairly expansive view of

what constitutes litigation-related activities within the scope of" the statute. *Seltzer v. Barnes*, 182 Cal. App. 4th 953, 962 (2010) (quotation marks omitted). California courts have also repeatedly held that the litigation privilege can bar "[b]reach of contract claims" and that if "it applies turns on whether the privilege furthers the purposes behind it based on the underlying facts." *Julie W.*, 85 Cal. App. 5th at 663-64 (granting anti-SLAPP motion as to breach of contract claim, held barred by litigation privilege); *see also Feldman*, 160 Cal. App. 4th at 1498 (granting anti-SLAPP motion because "[t]he litigation privilege applies to bar this breach of contract claim.").

Here, the gravamen of Defendants' breach of contract counterclaim are acts squarely protected by the litigation privilege. According to Defendants, Hill breached the 1986 agreement with UA (defined as the "1986 LPA") by registering his spec Screenplay with the Copyright Office and serving notices on Defendants under the Copyright Act terminating his copyright grants and filing such notices with the Copyright Office. *See*, *e.g.*, Countercompl. ¶ 62 ("If the [] Termination Notice[s] … are deemed effective … Hill and Lady Amos necessarily will have materially breached their representations and warranties in the 1986 LPA."). Lest there be any doubt, the very first paragraph of their Countercomplaint literally evokes the litigation privilege: "This countersuit is based on Hill's fraudulent representation to the U.S. Copyright Office that Hill is the 'author' of the 1986 screenplay and holds attendant termination rights—the same false representations now made in the Complaint to support Hill's meritless lawsuit." Countercompl. ¶ 1. That Defendants seek to punish Plaintiff for initiating this lawsuit *and taking the requisite steps to do so* is evident by the vitriolic allegations strewn throughout the Countercomplaint including, by way of example, the following:

> [Counsel,] on Hill's behalf, filed an application for copyright registration for the 1986 screenplay on January 24, 2024, based on the knowingly false and fraudulent representation to the U.S. Copyright Office that Hill was the screenplay's 'author'…. [¶] 8. This fraud is the predicate for the

invalid termination notice [Plaintiff's counsel] served and the resulting claim of copyright ownership, which is both an element of Hill's meritless claim for copyright infringement and necessary to establish standing to assert it. And the U.S. Copyright Office relied on this knowing misrepresentation in issuing the 2024 copyright registration certificate—a related but independent prerequisite for Hill's Complaint.

*Id.* ¶¶ 7-8; *see also id.* ¶¶ 42, 45, 46 (focusing on Hill's termination notices "recorded with the U.S. Copyright Office" and Hill's filing of "a copyright application to register the [] Screenplay").

Defendants thus concede that Plaintiff's statutory termination notices and copyright registration were done in connection with and were prerequisites to anticipated and/or actual litigation, such that they are absolutely privileged under CCP § 47. Ironically, Defendants put the nail in their own coffin, by alleging "[i]f the [] Termination Notice[s] are deemed effective [in this lawsuit] … Counter-Defendants will have materially breached … the 1986 LPA." *Id.*, ¶¶ 62-63.

### a. *Hill's Filing of This Lawsuit.*

Plaintiff initiated this lawsuit to vindicate his statutory termination interest in his "spec" Screenplay under the Copyright Act. As a prerequisite to his claim for copyright infringement, Hill sought a declaration that his termination "is valid and effective and that accordingly, on November 11, 2023, [he] duly recovered the U.S. copyright to his original Roadhouse Screenplay[.]" Compl. at ¶ 1. As Defendants' breach of contract counterclaim is expressly premised on Hill's success in this lawsuit, the litigation privilege immunizes the Hill Parties from such a claim. Countercompl. ¶¶ 62-63. *See, e.g., Quidel Corp. v. Siemens Med. Sols. USA, Inc.*, 2019 WL 4747671, at *8 (S.D. Cal. Sept. 27, 2019) (granting Anti-SLAPP in trademark case); *Ekorus, Inc. v. Elohim EPF USA, Inc.*, 2020 WL 3891449, at *4 (C.D. Cal. Apr. 24, 2020) (granting anti-SLAPP in copyright infringement suit as demand letters and filing suit "obviously falls within the litigation privilege."); *Fotohaus, LLC v. Proforma, Inc.*, 2019 WL 1493355, at *3 (N.D. Cal. Apr. 4, 2019)

(state law claims based on notification letters and filing copyright lawsuit barred by litigation privilege); *UMG Recordings, Inc. v. Glob. Eagle Entm't Inc.*, 117 F. Supp 3d 1092, 1114-15 (C.D. Cal. 2015) (tortious interference claims premised on filing trademark infringement suits dismissed pursuant to litigation privilege).

### b.    *Hill's Registration of The Screenplay's Copyright.*

The litigation privilege also shields Hill's communications in registering his Screenplay with the Copyright Office. Numerous courts have held that the filing of a registration application regarding intellectual property is protected by the litigation privilege. *See Baker v. FirstCom Music*, 2017 WL 9510144, at *4-5 (C.D. Cal. July 27, 2017) ("The Court finds that the litigation privilege applies to ... the application for copyright registration. ... [A] copyright registration is a 'jurisdictional prerequisite to a copyright infringement action' and 'is thus closely related to and in furtherance of an anticipated infringement action.'") (quoting *Nestle USA, Inc. v. Virtual Integration Tech.*, 2000 WL 727859, at *3 (C.D. Cal. May 17, 2000) (finding application for copyright registration and registration to be absolutely privileged) and citing *Monex Deposit Co. v. Gilliam*, 680 F. Supp. 2d 1148, 1161 (C.D. Cal. 2010); *Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056, 1077 (N.D. Cal. 2006); *Silberg*, 50 Cal. 3d at 216).

*Nestle USA, Inc.* is particularly cogent. The court granted counter-defendant's motion to dismiss counterclaims for breach of contract, tortious interference with contract and prospective economic advantage, based on its "copyright registration application or statements therein" because the "copyright application [wa]s absolutely privileged as a communication made in a judicial proceeding." 2000 WL 727859, at *4. The court duly reasoned that "a copyright application is a necessary prerequisite to judicial action. Accordingly, applying the litigation privilege to a copyright application is necessary to protect access to the judicial system." *Id.* at 3.

The holding in *Nestle* stands on even firmer jurisprudential ground in the wake of the Supreme Court's decision in *Fourth Est. Pub. Benefit Corp. v. Wall-Street.*

*Com, LLC*, 139 S. Ct. 881, 886 (2019), and lower court decisions extending its holding that a copyright owner cannot sue for infringement until "registration … has been made." *Id.* at 888. As succinctly put, "[a] party asserting copyright infringement may not sue now and register later." *Promedev, LLC v. Wilson*, 2024 WL 1579505, at *3 (W.D. Wash. Apr. 11, 2024); *see also Roblox Corp. v. WowWee Grp. Ltd.*, 660 F. Supp. 3d 880, 891 (N.D. Cal. 2023) (dismissing without leave to amend copyright complaint absent registration).

### c. *Hill's Service and Recordation of Termination Notices.*

The statutorily prescribed acts of serving and recording Hill's Termination Notice with the Copyright Office were also necessary prerequisites to filing this lawsuit because without performing them, Hill would lack standing to pursue his claims for declaratory relief and copyright infringement. *See*, *e.g.*, 6 William F. Patry, *Patry on Copyright* ("*Patry*") § 21:27 (2024 ed.) ("Also insufficient is the mere existence of a termination right under section 203 or 304; such a right may or may not be exercised, and if held to be a sufficient interest for beneficial ownership would, as one court noted in rejecting the argument, 'make every author a beneficial owner.'") (quoting *Hearn v. Meyer*, 664 F. Supp. 832, 843 (S.D.N.Y. 1987)); Raymond J. Dowd, *Copyright Litigation Handbook* ("*Dowd*") § 4:1 (2d ed. & Nov. 2023 Update) ("In the context of a declaratory judgment action, until a copyright termination notice has been either accepted or rejected by the Copyright Office, the question of whether termination is effective is not ripe for adjudication.") (citing 17 U.S.C. § 203; *Smith v. Casey*, 741 F.3d 1236, 1244-45 (11th Cir. 2014)).

"The Ninth Circuit has held that 'an implied private cause of action' exists under 17 U.S.C. §§ 203 and 304." *Thomson v. Hodgson*, 2021 WL 11550093, at *1 (C.D. Cal. Dec. 17, 2021) (quoting *Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1122 (9th Cir. 2015) ("we conclude that an implied private cause of action exists under the termination provisions.")); *see also* 6 *Patry* § 21:27; *Dowd* § 4:1 ("The Ninth Circuit has determined that Sections 203 and 304(c) of the Copyright Act

create an implied private right of action for authors and statutory heirs to terminate prior grants and recapture copyright ownership for works") (citing 17 U.S.C. § 203, 304(c); *Ray Charles Found*., 795 F.3d at 1123).

As Hill's service and recordation of his Termination Notice are necessary prerequisites to Hill's enforcement of his private cause of action under the Act, these acts readily fall within the scope and protection of Cal. Civ Code § 47.

### 2. The Contract Provisions as Construed and Relied Upon by Defendants are Unenforceable and Void as a Matter of Law.

Defendants' state-law counterclaim for breach of contract directly conflicts with Congress's unequivocal mandate that "[t]ermination … may be effected notwithstanding any agreement to the contrary." 17 U.S.C. § 203(a)(5). The termination right was "needed because of the unequal bargaining position of authors." H.R. Rep. No. 94-1476, at 124. To prevent abuse of this imbalance, Congress determined that the termination right "cannot be waived in advance" or otherwise "contracted away." *Id*. at 125; S. Rep. No. 94-473, at 108 (1975).

"If the [1986] agreement[] [is] interpreted to waive [Hill's] rights to recapture the copyrights at issue, then [it is] plainly an 'agreement[] to the contrary' of the Copyright Act's termination provisions and unenforceable to that extent." *Ray Charles Found.*, 919 F. Supp. at 1066 (holding, in striking plaintiff's breach of contract claim under California's Anti-SLAPP statute, that "the Copyright Act prevents the Court from interpreting the agreements signed by Defendants as limiting their statutory termination rights"); *see also Stewart*, 495 U.S. at 230 ("1976 Copyright Act provides … an inalienable termination right.").

As to this, the Ninth Circuit, in *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 985 (9th Cir. 2008) found the reasoning in *Simon*, 310 F.3d at 284 (re: comparable § 304(c) termination) particularly persuasive, summarizing the decision as follows:

> In 1999, Joe Simon, author of the Captain America Comics, served a termination notice on Marvel pursuant to § 304(c). [*Id*.] The notice sought to terminate a 1969 settlement agreement whereby Simon assigned his

ANTI-SLAPP MOTION TO STRIKE
CASE NO. CV 24-1587 HDV (SSCx)

rights … to Marvel's predecessor. *See id*. at 283-84. Marvel argued that the termination notice was ineffective because Simon had unambiguously acknowledged in the 1969 agreement that the works, many years after their creation, were "work[s] made for hire" thus making them ineligible for termination under § 304(c). *See id*. at 285. The Second Circuit found that to the extent that the retroactive recharacterization of the works in the 1969 agreement was construed to extinguish the termination right long before vesting, it was void as an "agreement to the contrary" under § 304(c)(5). *Id*. at 298-92. [¶] In finding for Simon, the Second Circuit affirmed that "the clear Congressional purpose behind § 304(c) was to prevent authors from waiving their termination right by contract." *Id*. at 290 (citing *Stewart*, 495 U.S. at 230, 110 S.Ct. 1750). The court reasoned that ruling otherwise would allow "litigation-savvy publishers" to use their superior bargaining power to compel authors to similarly recharacterize their works, thus rendering § 304(c) a "nullity." *Id*. at 290-91. According to the court, the "notwithstanding any agreement to the contrary" language was intended to protect against attempted contractual circumvention of the termination right. *See id*. at 284, 290-91.

As a matter of law and logic, Hill could not be free to statutorily terminate the 1986 Agreement "notwithstanding *any* agreement to the contrary," 17 U.S.C. § 203(a)(5) (emphasis added), but then be held in breach of that same unenforceable agreement for doing so. "Any agreement" does not mean "some agreements." No amount of contractual hair splitting by Defendants can extricate them from this inescapable legal conclusion and dismissal of their punitive counterclaim.

### 3. Defendants' State-Law Counterclaim Is Also Preempted.

Whereas the above is more than ample to dismiss Defendants' second counterclaim as a matter of law, their state-law counterclaim is also preempted by federal law. There are three ways in which federal law may preempt state statutory and common law: (1) "express preemption" (e.g., 17 U.S.C. § 301(a)—the Act's preemption provision); (2) "field preemption", or (3) "conflict preemption." *See Pac. Gas & Elec. Co. v. Energy Res. Conserv. & Dev. Comm'n,* 461 U.S. 190, 204 (1983).

Unlike express preemption under 17 U.S.C. § 301(a), "the question presented [by conflict preemption] is not whether rights created by state law are *equivalent* to rights created by federal copyright law but whether enforcement of state law *undermines* federal copyright law." *X Corp. v. Bright Data Ltd*., 2024 WL 2113859, at *13 (N.D. Cal. May 9, 2024). Here, Defendants' Catch-22 breach of contract

claim, pled "in the alternative" is most clearly subject to conflict preemption, which exists "when a state law actually conflicts with federal law or when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting the federal law." *Montalvo v. Spirit Airlines,* 508 F.3d 464, 470 (9th Cir. 2007). Here it obviously does.

In *Mills Music, Inc.*, the Supreme Court elaborated on these objectives:

> The principal purpose … was to provide added benefits to authors. … In explaining the [] termination provision in § 203, the House Report states "A provision of this sort is needed because of the unequal bargaining position of authors, resulting in part from the impossibility of determining a work's value until it has been exploited. Section 203 reflects a practical compromise that will further the objectives of the copyright law while recognizing the problems and legitimate needs of all interests involved." H.R. Rep. No. 94-1476, at 124.

469 U.S. at 172, 173 n. 39 (quoted with approval in *Mewborn*, 532 F.3d at 984).

Lest there be any doubt, Defendants make the corrosive conflict between their Second Counterclaim and Congress's objective crystal clear: "[i]f the [] Termination Notice[s] … are deemed effective [under the Copyright Act] and Hill's claim of authorship and ownership of the 1986 Screenplay is deemed valid [under the Act], [Defendants] will necessarily have breached … the [contract]." Countercompl. ¶ 62.

Defendants' "alternative" counterclaim expressly comes into play if Hill successfully recovers his copyright under federal law and penalizes him for doing so. As shown, Congress unequivocally mandated that "[t]ermination … may be effected notwithstanding *any* agreement to the contrary" to protect authors from publishers' superior bargaining position. 17 U.S.C. § 304(c)(5). Thus, the termination right cannot be bargained away directly *or indirectly* via a post-creation "work for hire" acknowledgement as it constitutes an unenforceable "agreement to the contrary[.]" *Id*. "Neither the author nor the statutory heirs may contract away their termination right, and any contract provision that purports to" do so "is void." *Music Sales Corp. v. Morris*, 73 F. Supp. 2d 364, 372 (S.D.N.Y. 1999).

Defendants' punitive breach of contract counterclaim not only conflicts with federal copyright law, it undermines Congress's express objectives. H.R. Rep. No.

94-1476, at 124. To prevent publishers from abusing their superior bargaining position, Congress decided that the termination right "cannot be waived in advance or contracted away." *Id*. at 125; S. Rep. No. 94-473, at 108. Congress could also not have more clearly manifested its intent that authors *benefit* from the "inalienable authorial right to revoke a copyright transfer." *Tasini,* 533 U.S. at 495 n.3.

Defendants' state-law counterclaim frustrates and undermines federal copyright law by penalizing Hill for exercising his federal termination right and benefitting from his duly recovered copyright interests as Congress intended. "[F]orcing [authors] to choose between incurring a penalty for breaching an agreement or abandoning statutory termination rights is just a more creative way of preventing the exercise of termination rights in the first place." *Ray Charles Found.*, 919 F. Supp. 2d 1054, 1066 (citing *Nimmer* § 11.07[E][2][b][ii], [3] (2012) (explaining how penalties operate as 'agreements to the contrary') and, in granting defendants' Anti-SLAPP motion, finding that plaintiff therefore "has no probability of prevailing on its breach of contract claim."); *see also Nimmer* § 1.01[B][1][a] ("at times a breach of contract cause of action can serve as a subterfuge to control nothing other than … works within the subject matter of copyright"). In *Petrella v. Metro-Goldwyn-Mayer, Inc*., 134 S. Ct. 1962, 1969 (2014), the Supreme Court explained that when Congress provides measures to protect copyright authors (there, a clear statute of limitations), courts should not attempt to substitute inconsistent rules grounded in state law.

"The legislative history [] indicates that Congress intended the termination provisions to produce an accommodation and a balancing among various interests." *Mills Music, Inc*., 469 U.S. at 174 n.41. Under conflict preemption, state law claims "'must give way when they disrupt that balance[,]'" as is the case here. *Estate of Graham v. Sotheby's, Inc.,* 178 F. Supp. 3d 974, 981-82 (C.D. Cal. 2016) (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 152 (1989)).

## VI.    THE HILL PARTIES ARE ENTITLED TO THEIR FEES AND COSTS

Under CCP § 425.16(c), a movant who prevails on a special motion to strike "shall be entitled to recover his or her attorney's fees and costs." This award is "mandatory." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001); *see also Kearney v. Foley & Lardner*, 553 F. Supp. 2d 1178, 1181 (S.D. Cal. 2008) ("[I]t is well-settled that an award of attorney's fees and costs to a successful anti-SLAPP movant is mandatory."); *Planned Parenthood*, 890 F.3d at 834 (the fee provision applies in federal court). It is intended to both "discourage… strategic lawsuits" and "encourage[] private representation in SLAPP cases." *Ketchum*, Cal.4th at 1131 (internal citations and quotations omitted). "[T]he fee should... include compensation for all hours reasonably spent, including those relating solely to obtaining the fee award." *Kearney*, 553 F. Supp. 2d at 1181 (internal citations, brackets omitted).

Here, the Hill Parties are entitled to an award of the attorneys' fees and costs incurred in bringing this motion and defending against Defendants' breach of contract counterclaim subject to proof of such fees and costs to be submitted once this motion is decided. CCP § 425.16(c)(1); *see also United States ex rel. Newsham v. Lockheed Missile & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999).

## VII.   CONCLUSION

For all of the foregoing reasons, the Hill Parties respectfully request that this Court grant their motion to strike the Defendants' Second Counterclaim with prejudice. Hill further requests, pursuant to CCP § 425.16(c), to be awarded the attorneys' fees and costs incurred in defending against such claim.

Dated:  July 5, 2024                    Respectfully submitted,

                                       **TOBEROFF & ASSOCIATES, P.C.**

                                       By:_____*/s/ Marc Toberoff*_____
                                              Marc Toberoff

                                       *Attorneys for Plaintiff / Counterclaim Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiff and Counterclaim-Defendants R. Lance Hill and Lady Amos Literary Works, Ltd., certifies that this brief is no more than 25 pages, in compliance with section IX.C of this Court's Civil Standing Order.

Dated:  July 5, 2024                         **TOBEROFF & ASSOCIATES, P.C.**

By: ___*/s/ Marc Toberoff*_____
Marc Toberoff

*Attorneys for Plaintiff / Counterclaim Defendants*