SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
WOOK HWANG (*pro hac vice*)
whwang@sheppardmullin.com
30 Rockefeller Plaza
New York, New York 10112-0015
Telephone:  212.653.8700
Facsimile:   212.653.8701

DYLAN J. PRICE, Cal. Bar No. 258896
dprice@sheppardmullin.com
PAUL A. BOST, Cal. Bar No. 261531
pbost@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California  90067-6017
Telephone:  (310) 228-3700
Facsimile:   (310) 228-3701

Attorneys for Defendants
METRO-GOLDWYN-MAYER STUDIOS INC.,
AMAZON STUDIOS LLC & UNITED ARTISTS
PICTURES INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| R. LANCE HILL, an individual,<br><br>Plaintiff,<br><br>v.<br><br>METRO-GOLDWYN-MAYER STUDIOS INC., a Delaware corporation; AMAZON STUDIOS LLC, a California limited liability company; UNITED ARTISTS PICTURES INC., a Delaware corporation; and DOES 1-10,<br><br>Defendants. | Case No. 2:24-cv-01587-HDV-SSC<br><br>**OPPOSITION TO COUNTERCLAIM-DEFENDANT R. LANCE HILL AND THIRD-PARTY COUNTERCLAIM DEFENDANT LADY AMOS LITERARY WORKS, LTD.'S SPECIAL MOTION TO STRIKE COUNTERCLAIM PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16**<br><br>Date:       September 12, 2024<br>Time:      10:00 a.m.<br>Crtrm.:    5B<br><br>Judge:    Hon. Hernan D. Vera |

METRO-GOLDWYN-MAYER
STUDIOS INC., a Delaware
corporation; AMAZON STUDIOS
LLC, a California limited liability
company; UNITED ARTISTS
PICTURES INC., a Delaware
corporation,

                Counterclaimants,

      v.

R. LANCE HILL, an individual; and
LADY AMOS LITERARY WORKS
LTD., a Canadian corporation,

                Counterclaim Defendant
                and Third-Party
                Counterclaim Defendant.

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................... 1

II. STATEMENT OF FACTS ........................................................................... 3

    A.    The Representations and Warranties in the 1986 LPA .......................... 3

    B.    The Complaint Expressly Alleges That Movant Breached Their Representations and Warranties ............................................................ 5

    C.    The Studio Parties' Breach of Contract Counterclaim ........................ 6

III. THE ANTI-SLAPP MOTION SHOULD BE DENIED ..................................... 7

    A.    The Anti-SLAPP Framework ................................................................ 7

    B.    Movants Fail to Carry Their Burden on Prong One of the Anti-SLAPP Inquiry Because the Studio Parties' Contract Claim Is Not Based on Any Protected Activity ...................................................... 8

    C.    The Studio Parties State a Valid Claim for Breach of Express Contractual Representations and Warranties ...................................... 13

        1.    The Litigation Privilege Does Not Apply for the Same Reasons the Anti-SLAPP Statute Does Not Apply ................... 13

        2.    Movants' Contractual Representations and Warranties Are Not an "Agreement to the Contrary" Under the Copyright Act .................................................................................................. 16

        3.    There Is No Conflict Preemption ................................................ 19

IV. CONCLUSION ........................................................................................ 23

1

## <u>**TABLE OF AUTHORITIES**</u>

2

**<u>Page(s)</u>**

3 <u>Cases</u>

4 *Allis-Chalmers Corp. v. Lueck*
5    471 U.S. 202 (1985) ...................................................................................... 20

6 *Altria Grp., Inc. v. Good*
7    555 U.S. 70 (2008) ....................................................................................... 19

8 *Asset Mgmt. Consultants, Inc. v. Stella*
   No. B272121, 2017 WL 2351031 (Cal. Ct. App. May 31, 2017)..................... 10
9

10 *Baker v. FirstCom Music*
   No. LACV 16-8931, 2017 WL 9510144 (C.D. Cal. July 27, 2017) ................. 15
11

12 *Baldwin v. EMI Feist Catalog, Inc.*
   805 F.3d 18 (2d Cir. 2015) .................................................................... 18
13

14 *Barris Indus., Inc. v. Worldvision Enters., Inc.*
   875 F.2d 1446 (9th Cir. 1989) ............................................................... 22

15
16 *BH & Sons, LLC v. Ahern*
   No. B272165, 2017 WL 2417217 (Cal. Ct. App. June 5, 2017)....................... 10

17 *BioCorRx, Inc. v. Calista Therapeutics, Inc.*
18    No. 8:24-CV-00640-JVS (JDE), 2024 WL 3636237 (C.D. Cal. July 1,
   2024) ............................................................................................................. 7
19

20 *Bonni v. St. Joseph Health System*
   11 Cal. 5th 995 (2021) ................................................................................ 8
21

22 *Cher v. Bono*
   CV21-08157 JAK, 2024 WL 2789419 (C.D. Cal. May 29, 2024)
23    ................................................................................................... 18, 21, 22

24 *City of Cotati v. Cashman*
   29 Cal. 4th 69 (2002)................................................................................ 8
25

26 *Classic Media, Inc. v. Mewborn*
   532 F.3d 978 (9th Cir. 2008) ................................................................... 18
27

28

*CVS Health Corp. v. Vividus, LLC*
   878 F.3d 703 (9th Cir. 2017) ............................................................................ 16

*Dairy, LLC v. Milk Moovement, Inc.*
   No. 2:21-cv-02233 WBS AC, 2022 WL 2392622 (E.D. Cal. July 1, 2022) ...... 10

*Daniels-Hall v. Nat'l Educ. Ass'n*
   629 F.3d 992 (9th Cir. 2010) .............................................................................. 8

*Ekorus, Inc. v. Elohim Epf United States*
   No. CV 20-310-GW-GJSx, 2020 WL 3891449 (C.D. Cal. Apr. 24, 2020) ....... 14

*Equilon Enters. v. Consumer Cause, Inc.*
   29 Cal. 4th 53 (2002) ........................................................................................ 7

*Est. of Graham v. Sotheby's, Inc.*
   178 F. Supp. 3d 974 (C.D. Cal. 2016), *rev'd in relevant part*, *Close v.
   Sotheby's, Inc.*, 894 F.3d 1061 (9th Cir. 2018) ................................................ 23

*Evans v. Skolnik*
   997 F.3d 1060 (9th Cir. 2021) .......................................................................... 17

*Fidelity Nat. Fin., Inc. v. National Union Fire Ins. Co. of Pittsburgh, P.A.*
   No. 09-CV-140-GPC-KSC, 2014 WL 1286392 (S.D. Cal. Mar. 28, 2014) ...... 14

*Fotohaus, LLC v. Proforma, Inc.*
   No. 18-cv-01827-BLF, 2019 WL 1493355 (N.D. Cal. Apr. 4, 2019) .............. 15

*Fugnetti v. Bird B Gone*
   Case No. SACV 19-00847 AG, 2019 WL 6362467 (C.D. Cal. Sep. 16,
   2019) ................................................................................................................ 10

*Gade v. Nat'l Solid Wastes Management Ass'n*
   505 U.S. 88 (1992) ........................................................................................... 20

*Genesis Merch. Partners, LP v. Nery's USA, Inc.*
   No. 3:11-cv-1589-JM (WVG), 2013 WL 3895002 (S.D. Cal. July 26,
   2013), *vacated on other grounds*, *Genesis Merch. Partners, LP v. Nery's
   USA, Inc.*, 640 F. App'x 623 (9th Cir. 2016) .................................................... 9

*Gilead Scis., Inc. v. Abbott Labs., Inc.*
   Case No. 13-2034-GMS, 2015 WL 1191129 ................................................... 10

-iii-

*Gottesman v. Santana*
   263 F. Supp. 3d 1034 (S.D. Cal. 2017) .............................................................. 10

*Gustafson v. Dunham, Inc.*
   204 Cal. App. 2d 10 (1962) ............................................................................ 9

*Hanni v. Am. Airlines, Inc.*
   No. C 08-00732 CW, 2008 WL 1885794 (N.D. Cal. Apr. 25, 2008) ................ 20

*Hilton v. Hallmark Cards*
   599 F.3d 894 (9th Cir. 2010) ........................................................................ 2, 7

*Hylton v. Frank E. Rogozienski, Inc.*
   177 Cal. App. 4th 1264 (2009) ...................................................................... 11

*Incalza v. Fendi N. Am., Inc.*
   479 F.3d 1005 (9th Cir. 2007) ...................................................................... 20

*Jimenez v. Comm'r of SSA*
   No. CV-18-02076-PHX-JAT, 2019 WL 1970856 (D. Ariz. May 3, 2019) ....... 17

*Marvel Characters, Inc. v. Simon*
   310 F.3d 280 (2d Cir. 2002) ........................................................... 16, 17, 18, 19

*Massacre v. Davies*
   Case No. 13-cv-04005 NC, 2014 WL 662540 (N.D. Cal. Feb. 20, 2014) ......... 22

*McClellan v. I-Flow Corp.*
   776 F.3d 1035 (9th Cir. 2015) ...................................................................... 19

*Milne v. Stephen Slesinger, Inc.*
   No. CV 02-08508 FMC (PLAx), 2003 WL 21076983 (C.D. Cal. May 8, 2003) ............................................................................................................ 18

*Mindy's Cosmetics v. Dakar*
   611 F.3d 590 (9th Cir. 2010) ........................................................................ 10

*Morales v. Trans World Airlines, Inc.*
   504 U.S. 374 (1992) ...................................................................................... 20

*Nestle USA, Inc. v. Virtual Integration Tech.*
   No. CV 00-01144 DDP (Ex), 2000 WL 727859 (C.D. Cal. May 17, 2000)
   ...................................................................................................................... 14, 15

-iv-

*Oren Royal Oaks Venture v. Greenberg, Bernard, Weiss & Karma Inc.*
   42 Cal. 3d 1157 (1986) ................................................................................. 14, 16

*Oxygenated Fuels Ass'n v. Davis*
   331 F.3d 665 (9th Cir. 2003) ..................................................................................... 20

*Pacific Gas & Elec. Co. v. Energy Res. Conserv. & Dev. Comm'n*
   461 U.S. 190 (1983) .................................................................................................. 20

*Park v. Bd. of Trs. of Cal. State Univ.*
   2 Cal. 5th 1057 (2017) ............................................................................................ 8, 9

*Penguin Grp. (USA) Inc. v. Steinbeck*
   537 F.3d 193 (2d Cir. 2008) ...................................................................................... 18

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*
   890 F.3d 828 (9th Cir. 2018) ...................................................................................... 7

*Ray Charles Found. v. Robinson*
   919 F. Supp. 2d 1054 (C.D. Cal. 2013), *rev'd*, 795 F.3d 1109 (9th Cir.
   2015) ................................................................................................................... 10, 17

*Renewable Res. Coal., Inc. v. Pebble Mines Corp.*
   218 Cal. App. 4th 384 (2013) .................................................................................... 13

*Royal Foods Co., Inc. v. RJR Holdings, Inc.*
   252 F.3d 1102 (9th Cir. 2001) ................................................................................... 20

*Ryan v. Editions Ltd. West., Inc.*
   786 F.3d 754 (9th Cir. 2015) ..................................................................................... 22

*San Diegans for Open Government v. San Diego State University Research
   Foundation*
   13 Cal. App. 5th 76 (2017) ......................................................................................... 7

*Sentinel Offender Servs., LLC v. G4S Secure Sols. (USA) Inc.*
   No. SACV14298JLSJPRX, 2015 WL 13546229 (C.D. Cal. Nov. 20, 2015) ...... 9

*Siegel v. Warner Bros. Entm't, Inc.*
   542 F. Supp. 2d 1098 (C.D. Cal. 2008) .................................................................... 21

*Silberg v. Anderson*
   50 Cal. 3d 205 (1990) ............................................................................................... 13

-v-

*Starr v. Ashbrook*
  87 Cal. App. 5th 999 (2023)............................................................... 11

*Topa Equities, Ltd. v. City of Los Angeles*
  342 F.3d 1065 (9th Cir. 2003)........................................................... 21

*UMG Recordings, Inc. v. Glob. Eagle Entm't Inc.*
  117 F. Supp 3d 1092, 1113 (C.D. Cal. 2015)...................................... 15

*Waitt v. Internet Brands, Inc.*
  No. CV103006GHKJCGX, 2011 WL 13214104 (C.D. Cal. Jan. 6, 2011) ......... 9

*Wentland v. Wass*
  126 Cal. App. 4th 1484 (2005)........................................................... 15

*White v. Western Title Ins. Co.*
  40 Cal. 3d 870 (1985).................................................................. 14, 16

*Wong v. Wong*
  43 Cal. App. 5th 358 (2019)............................................................. 12

*Wright v. Costco Wholesale Corp.*
  651 F. Supp. 3d 1099 (N.D. Cal. 2023)............................................... 21

*X Corp. v. Bright Data Ltd.*
  No. C 23-03698 WHA, 2024 WL 2113859 (N.D. Cal. May 9, 2024)
  .................................................................................................. 22, 23

*Yount v. Acuff Rose-Opryland*
  103 F.3d 830 (9th Cir. 1996)............................................................. 22

<u>Statutes</u>

17 U.S.C. § 203(a)(5) ....................................................................... 16, 17

17 U.S.C. § 203(b)(5) ................................................... 3, 18, 20, 21, 23

17 U.S.C. § 304(c) ................................................................................ 18

17 U.S.C. § 304(c)(5) ........................................................................... 18

17 U.S.C. § 304(c)(6)(E) ...................................................................... 21

17 U.S.C. § 411(b) ................................................................................. 6

-vi-

RESPONSE TO SPECIAL MOTION TO STRIKE COUNTERCLAIM
PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16

Cal. Civil Code § 47(b) ................................................................... 13, 14, 15

Cal. Code Civ. Proc. § 425.16 ................................................................... 1

Cal. Code Civ. Proc. § 425.16(b)(1) ......................................................... 7

Other Authorities

Federal Rule of Civil Procedure 12(b)(6) ............................................ 7, 23

Counterclaimants Metro-Goldwyn-Mayer Studios Inc. ("MGM"), Amazon Studios LLC ("Amazon Studios") and United Artists Pictures Inc. ("UA") (collectively, the "Studio Parties") respectfully submit this Opposition to the Special Motion to Strike, brought pursuant to Cal. Code Civ. Proc. § 425.16, by Counterclaim Defendant R. Lance Hill ("Hill") and Third-Party Counterclaim Defendant Lady Amos Literary Works, Ltd. ("Lady Amos," and together with Hill, "Movants") seeking to strike the Second Counterclaim for breach of contract, which the Studio Parties assert in the alternative to their First Counterclaim for copyright fraud.

## I.

## INTRODUCTION

Movants cannot have it both ways: either they breached their agreement with UA for the *Roadhouse* screenplay or Hill's copyright infringement claim is a sham. This anti-SLAPP Motion is nothing more than a smokescreen to obfuscate their own alleged breach and the contractual misrepresentations that they now seek to repudiate decades later. But Movant's attempt at revisionist history cannot change the fundamental facts that are fatal to this motion.

In 1986, Lady Amos and UA entered into a Literary Purchase Agreement (the "1986 LPA") by which UA purchased all rights in the screenplay entitled *Roadhouse* (the "1986 Screenplay") from Lady Amos. In that agreement, Lady Amos—by its President, Hill—acknowledged, represented and warranted that Hill wrote the 1986 Screenplay as a work-made-for-hire for Lady Amos; that Lady Amos, rather than Hill individually, was its "author"; and that Lady Amos therefore owned all rights to the 1986 Screenplay free and clear of any third-party interests of any kind. Hill was not a party to the 1986 LPA, but executed an addendum in his individual capacity attesting to and guaranteeing the truth of all of these representations and warranties.

-1-

By this lawsuit, Movants affirmatively plead that these express representations and warranties were knowingly false at the time they made them.[1]  The Complaint thus concedes that Movants breached these representations and warranties from the moment of contract formation.  Their motion now seeks, decades later, to evade any consequences for purportedly misrepresenting the truth.  This motion is meritless and fails on both prongs of the anti-SLAPP inquiry:

*First*, the motion fails at the outset because the Studio Parties' claim does not arise from any protected "petitioning" or "free speech" activity.  Movants attempt to shoehorn the breach of contract claim into the anti-SLAPP rubric by contending that it was Hill's termination notice, copyright registration and instant lawsuit that formed the breach.  That is plainly wrong.  Assuming *arguendo* that Movants' recitation of history is correct, the breach occurred when they falsely attested to their express contractual representations and warranties *in 1986*, decades before Hill's counsel served a termination notice in 2021, applied for copyright registration in 2024, or brought this lawsuit in 2024.  These later events are simply collateral indicia evidencing the breach of the representations and warranties of contemporaneous facts that Movants *allege* they carried out at the time of contracting.  The breach itself— contractually representing and warranting false facts—is clearly *not* protected activity under settled California law.  This motion fails for this reason alone.

*Second*, though the Court need not proceed further, the motion also fails on the second prong because the breach of contract claim plainly states a valid claim at the pleading stage, as required.  Movants' initial contention that the claim violates their "litigation privilege" fails for the same reason they cannot clear the threshold inquiry:

---

[1] The Studio Parties challenge that assertion, including in their First Counterclaim for copyright fraud based on Hill's false assertion of authorship in his application for copyright registration.  There is no dispute that the anti-SLAPP statute does not apply to that claim.  *See, e.g., Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010) ("[T]he anti-SLAPP statute does not apply to federal law causes of action.").

the contract claim is *not* based on any privileged litigation activity. Movants' second argument that their own representations and warranties violate Hill's "inalienable" termination is equally meritless. Among other reasons, the Studio Parties' contract claim, pleaded in the alternative, *presumes* Hill's copyright authorship of the 1986 Screenplay and does not seek to prevent any exercise of Hill's purported termination rights. Indeed, the claim does not seek to "alienate" *any* rights under the Copyright Act. Movants' conflict preemption argument fails for largely the same reasons, because there is no "conflict" between state law and the Copyright Act under these circumstances. That the Studio Parties are not barred by the Copyright Act from asserting a state law contract claim is made clear by the very termination provisions on which Movants rely, which provide that the "[t]ermination of a grant under this section affects only those rights covered by the grants that arise under this title, and *in no way affects rights arising under any other Federal, State, or foreign laws*." 17 U.S.C. § 203(b)(5) (emphasis added). By the Copyright Act's plain terms, there is no conflict, and no preemption.

This motion thus fails on both prongs of the anti-SLAPP inquiry, and should be denied.

## II.

## STATEMENT OF FACTS

The relevant facts are set forth in the Studio Parties' Counterclaims ("CC"; DE 22), as well as the materials (DE 34-3, 34-4, 34-5) that are the subject of Movants' request for judicial notice (DE 34-6).

### A.   The Representations and Warranties in the 1986 LPA

Hill formed Lady Amos on or around June 22, 1976. CC ¶ 18. As reflected in its certified corporate records, its express purposes were "[t]o design, create, and produce screenplays, film scripts, and adaptations"; "[t]o buy, sell and deal in same"; and "[t]o act as consultants and advisors in general to the management and executives of enterprises in the film industry and related industries." *Id.* ¶ 18, Ex. A at 9. Both

-3-

Hill and his wife, Darlene Hill, served as directors of Lady Amos from approximately June 1978 through at least July 1994.  *Id.* ¶ 20.  Lady Amos remains a viable and active business corporation to this date.  *Id*. ¶ 21.

In or around July 1986, ten years after Hill incorporated Lady Amos, Hill claims to have written the 1986 Screenplay.  Just weeks later, UA and Lady Amos—represented by well-known talent agency Creative Arts Agency[2] (*see* DE 1 ("Cmplt.") ¶ 29)—entered into the 1986 LPA, pursuant to which UA purchased from Lady Amos all rights to the 1986 Screenplay.[3]  CC ¶¶ 24-25.

In the 1986 LPA, Lady Amos represented and warranted that the 1986 Screenplay "was created and written solely by [Hill] as an employee of [Lady Amos] pursuant to an employment agreement with [Lady Amos], and, accordingly, [Lady Amos] is the author of the [1986 Screenplay] (which constitutes a work-made-for-hire) and the owner thereof and entitled to all copyrights therein …"  CC ¶ 30, Ex. B ¶ 4(f).  Lady Amos further represented that "[Lady Amos] owns all of the Rights [to the 1986 Screenplay] free and clear of any liens, encumbrances and other third party interests of any kind, and free of any claims ...."  *Id.* ¶ 32, Ex. B ¶ 4(b).

---

[2]    *See*    https://www.latimes.com/archives/la-xpm-1986-06-22-ca-20509-story.html (June 22, 1986 LA Times article referring to CAA as "the powerful Hollywood talent agency");  https://www.latimes.com/archives/la-xpm-1989-07-02-ca-4858-story.html (July 2, 1989 LA Times article referring to CAA "one of the most powerful ... show business institutions" in LA).

[3] Movants claim that UA "had Hill, *in his individual capacity,* transfer his Screenplay copyright to UA by a written 'Assignment' executed September 16, 1986, which Assignment UA filed with the Copyright Office."  DE 34 (the "Mot.") at 5.  That is false.  This Assignment (DE 34-3) was made collectively by both Lady Amos and Hill expressly "subject to that certain [1986 LPA] between Lady Amos Literary Works, Ltd. and [UA]."  DE 34-3 at 1.  As reflected in the plain terms of the 1986 LPA (*see* CC ¶¶ 26-29, 36), Hill never owned a copyright interest in the 1986 Screenplay.

-4-

Additionally, Hill executed an addendum to the 1986 LPA in which he personally guaranteed the truthfulness of Lady Amos's representations and warranties (*id.* at 7; emphases added):

> As a material inducement to [UA] to execute the above agreement ... , I acknowledge that I have read the Agreement and approve the same and agree to be personally bound by the terms and conditions contained therein.  Without in any way limiting the generality of the foregoing, **I guarantee the truth**, effectiveness and performance **of all of the** agreements, grant of rights, undertakings, **representations**, **warranties** and indemnities **made by [Lady Amos] under the Agreement**, in every respect as if I were Lady Amos **and agree to be liable directly to UA for any breach thereof as I were a direct party to the Agreement**.  ... I agree to look solely to [Lady Amos] for any and all compensation that may be due me by virtue of the Agreement, the grant of rights thereunder, or my undertakings and agreements herein contained.  My agreements above made me shall inure to the benefit of UA, its successors and assigns.

CC ¶ 34, Ex. B at 7.

## B.  The Complaint Expressly Alleges That Movant Breached Their Representations and Warranties

Movants affirmatively allege that all of the foregoing representations and warranties were false.  *See, e.g.,* DE 1 ("Cmplt.") ¶ 2 ("Hill is the author of the original screenplay entitled *Roadhouse* dated July 1986...."), ¶ 39 ("Here, the Screenplay at issue, on both the facts and the law, did not constitute or qualify in any respect as a 'work made for hire' under the Copyright Act"), ¶ 40 ("Hill had no actual employment relationship with Lady Amos and Hill did not conceive or write his spec Screenplay within the scope of any such employment."); Mot. at 4 ("Plaintiff R. Lance Hill is author of the original screenplay titled *Roadhouse* dated July 1986....").

-5-

If Movants' recounting of these purported facts is true—a position contested by the Studio Parties, but a presumption made in their alternative claim for breach of contract—Movants' breach of their representations and warranties occurred as of the date execution of the 1986 LPA.  UA only learned of this purported breach, however, when it received a termination notice from Hill on or around November 10, 2021, in which Hill's counsel claimed that Hill individually was author of the 1986 Screenplay.  CC ¶ 41, Ex. D.  The purported falsity of these representations and warranties is further evidenced in Hill's application for copyright registration, submitted on January 24, 2024, in which Hill, through his counsel, represented to the U.S. Copyright Office that he, rather than Lady Amos, was the author of the 1986 Screenplay.  CC ¶¶ 46, 47, Ex. E.

## C.   The Studio Parties' Breach of Contract Counterclaim

On May 3, 2024, the Studio Parties filed their Answer (DE 22) to Hill's Complaint and denied all material allegations based on their position that Lady Amos, not Hill, was the copyright author and owner of the Screenplay.  The Studio Parties also asserted a First Counterclaim against Hill for fraud on the Copyright Office, pursuant to 17 U.S.C. § 411(b).

In the alternative, UA asserted the Second Counterclaim for breach of contract against Movants.  This claim is based on Movants' breach of their express representations and warranties made in the 1986 LPA.  CC ¶¶ 58, 59.  As explained in the Counterclaims, if Hill is found to be the author of the 1986 Screenplay—a prerequisite (among others) for there to have been a valid termination—that would necessarily evidence, and prove, the falsity of the representations and warranties Movants made in the 1986 LPA.  *Id.* ¶ 62 ("If the LPA Termination Notice and/or Lady Amos Termination Notice are deemed effective, and Hill's claim of authorship and ownership of the 1986 Screenplay is deemed valid, Hill and Lady Amos necessarily will have materially breached their representations and warranties in the 1986 LPA.").

-6-

# III.

## THE ANTI-SLAPP MOTION SHOULD BE DENIED

### A.    The Anti-SLAPP Framework

The anti-SLAPP statute provides that a cause of action "arising from any act ... in furtherance of [the] right of petition or free speech ... in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  Cal. Code Civ. Proc. § 425.16(b)(1).

The anti-SLAPP statute requires a two-pronged analysis.  In prong one, a "court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity."  *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002).  If *and only if* that threshold is satisfied, the court proceeds to prong two to assess the merits.  "[T]he anti-SLAPP statute does not immunize or insulate defendants from *any* liability for claims arising from protected activity."  *San Diegans for Open Government v. San Diego State University Research Foundation*, 13 Cal. App. 5th 76, 95 (2017) (emphasis in original).  In other words, "the statute does not bar a plaintiff from litigating an action that arises out of the defendant's free speech or petitioning; it subjects to potential dismissal only those actions in which the plaintiff cannot state and substantiate a legally sufficient claim."  *Hilton v. Hallmark Cards*, 599 F.3d 894, 908 (9th Cir. 2010) (citation and quotation marks omitted).  Where, as here, "an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated."  *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).  Under that analysis, "the Court must accept 'all well-pleaded' factual allegations as true, and construe such allegations 'in the light most favorable to the non-moving party.'"  *BioCorRx, Inc. v. Calista Therapeutics, Inc.*, No. 8:24-CV-

-7-

00640-JVS (JDE), 2024 WL 3636237, at *3 (C.D. Cal. July 1, 2024) (*quoting Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)).

This motion fails on both prongs.

**B.** **Movants Fail to Carry Their Burden on Prong One of the Anti-SLAPP Inquiry Because the Studio Parties' Contract Claim Is Not Based on Any Protected Activity**

This motion fails on prong one simply because the Studio Parties' contract claim is not based on any of the acts Movants claim are protected.

The standards for resolving the threshold prong have been thoroughly explicated by the California Supreme Court. "A claim arises from protected activity when that activity underlies or forms the basis for the claim." *Park v. Bd. of Trs. of Cal. State Univ.*, 2 Cal. 5th 1057, 1062 (2017). It "may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and **not just evidence of liability**...." *Id.* (bold emphasis added). Nor may a claim be struck "simply because it contests an action ... that was thereafter communicated by means of speech or petitioning activity." *Id.* at 1060 (emphasis added). "The mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute." *Id.* at 1063 (citation and quotation marks omitted); *see also, e.g., City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002) ("That a cause of action arguably may have been triggered by protected activity does not entail that it is one arising from such."). The burden falls on the movant to "identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." *Bonni v. St. Joseph Health System*, 11 Cal. 5th 995, 1009 (2021). If the movant "fails to identify how the speech or conduct underlying" the claim "is protected activity, it will not carry its first-step burden...." *Id.* at 1011.

Under these standards, Movants' anti-SLAPP challenge fails on this prong because the Studio Parties claim is *not* based on Hill's termination notices, copyright

application, or lawsuit.  Rather, the complained-of breach is Movants' allegedly false attestation of contemporaneous facts made in 1986.  There is no question that a claim for breach of contract can be based on false contractual representation and warranty of existing fact.  *See, e.g., Gustafson v. Dunham, Inc.*, 204 Cal. App. 2d 10, 14 (1962) (claim for breach of express contractual representations and warranties "is based upon breach of contract"); *Sentinel Offender Servs., LLC v. G4S Secure Sols. (USA) Inc.*, No. SACV14298JLSJPRX, 2015 WL 13546229, at *5 (C.D. Cal. Nov. 20, 2015) (denying motion for summary judgment to dismiss claim for breach of representations and warranties); *Waitt v. Internet Brands, Inc.*, No. CV103006GHKJCGX, 2011 WL 13214104, at *2 (C.D. Cal. Jan. 6, 2011) (denying motion to dismiss contract claim based on alleged falsity of contractual warranty that previously provided documents "do not contain any untrue statement of a material fact nor omit to state a material fact").  Moreover, where a contract claim is based on the falsity of express contractual representations and warranties, as the Studio Parties' counterclaim is here, "the breaches [are] immediate upon execution." *Genesis Merch. Partners, LP v. Nery's USA, Inc.*, No. 3:11-cv-1589-JM (WVG), 2013 WL 3895002, at *10 (S.D. Cal. July 26, 2013) (contract claim based on false contractual representations and warranties and breach of related indemnification provision), *vacated on other grounds*, *Genesis Merch. Partners, LP v. Nery's USA, Inc.*, 640 F. App'x 623, 624 (9th Cir. 2016) (affirming liability on contract claim but vacating remedies).

The protected activity Movants cite—the termination notice, copyright application and commencement of the instant action—are thus collateral events that merely *evidence* the contractual breach that (under Movants' own theory of the case) occurred in 1986 when they falsely attested to the facts set forth in the 1986 LPA. That does not suffice.  *See supra, Park*, 2 Cal. 5th at 1062.  Indeed, Movants cannot cite to a *single* decision in which a court ruled that a claim based on the breach of a contractual representation and warranty of existing fact could be deemed to be based on protected petitioning or free speech activity, much less stricken pursuant to the

-9-

anti-SLAPP statute.   California courts have rejected that very proposition in circumstances virtually identical to those here.  *See, e.g., BH & Sons, LLC v. Ahern*, No. B272165, 2017 WL 2417217, at *6 (Cal. Ct. App. June 5, 2017) (denying anti-SLAPP motion to strike counterclaim for breach of representation and warranty where "the lawsuits are evidence of the breach of warranties and representations"); *Asset Mgmt. Consultants, Inc. v. Stella*, No. B272121, 2017 WL 2351031, at *3 (Cal. Ct. App. May 31, 2017) (denying anti-SLAPP motion to strike claim for breach of representation and warranty where "it was the filing of those [other] actions that provided notice that the representations and warranties ... were false").  The cases Movants cite are inapposite because they each involved claims *directly* taking aim at protected petitioning activity.[4]

To evade these basic principles, Movants resort to distorting the nature of the Studio Parties' allegations (Mot. at 17):

> According to Defendants, Hill breached the 1986 agreement with UA (defined as the "1986 LPA") by registering his spec Screenplay with the Copyright Office and serving notices on Defendants under the Copyright Act terminating his copyright grants and filing such notices with the Copyright Office.  *See*, *e.g.*, Countercompl. ¶ 62 ("If the [] Termination

---

[4] *See Ray Charles Found. v. Robinson*, 919 F. Supp. 2d 1054, 1064-65 (C.D. Cal. 2013) ("the Foundation expressly alleges that Defendants breached their agreements ... by taking advantage of the Copyright Act's termination provisions"), *rev'd*, 795 F.3d 1109 (9th Cir. 2015); *Fugnetti v. Bird B Gone*, Case No. SACV 19-00847 AG (DFMx), 2019 WL 6362467, at *2 (C.D. Cal. Sep. 16, 2019) (counterclaims based on "decision to assert a copyright claim"); *Mindy's Cosmetics v. Dakar*, 611 F.3d 590, 598 (9th Cir. 2010) (claim based on "act of filing the trademark application"); *Gilead Scis., Inc. v. Abbott Labs., Inc.*, Case No. 13-2034-GMS, 2015 WL 1191129, at *6 (claim based on "patent applications and declarations to the PTO"); *Gottesman v. Santana*, 263 F. Supp. 3d 1034, 1044 (S.D. Cal. 2017) (claim based on "act of filing trademark applications"); *Dairy, LLC v. Milk Moovement, Inc.*, No. 2:21-cv-02233 WBS AC, 2022 WL 2392622, at *7 (E.D. Cal. July 1, 2022) (claim based on "filing its trade secret misappropriation claims").

-10-

Notice[s] … are deemed effective … Hill and Lady Amos necessarily will have materially breached their representations and warranties in the 1986 LPA.").

None of this is accurate.  The referenced allegation (CC ¶ 62) merely observes that a finding that the termination notices are valid would evidence—and conclusively *prove*—that the representations and warranties Movants made in the 1986 LPA were false at the time they were made.  Nowhere do the Studio parties allege, contend or even suggest that the termination notices, copyright registration or commencement of this suit themselves constitute the breach.  They do not, which is clear from the portion of the allegation Movants conspicuously omit: "If the LPA Termination Notice and/or Lady Amos Termination Notice are deemed effective, **and Hill's claim of authorship and ownership of the 1986 Screenplay is deemed valid**, Hill and Lady Amos necessarily will have materially breached their representations and warranties in the 1986 LPA." CC ¶ 62.  In other words, it is Hill's newly asserted claim of authorship that, if true, would both (i) prove the falsity of the contractual representations and warranties, and (ii) clear one hurdle towards rendering the termination notices valid.  That of course does not support the logical fallacy and temporal impossibility that Movants advance: that a contractual representation of existing fact in 1986 could be retroactively rendered false, and thereby breached, by petitioning activity undertaken decades later.  The law is clear that these types of "collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute." *Hylton v. Frank E. Rogozienski, Inc.*, 177 Cal. App. 4th 1264, 1272, 1274 (2009) ("Although petitioning activity is part of the evidentiary landscape within which Hylton's claims arose, the gravamen of Hylton's claims is that Rogozienski engaged in nonpetitioning activity inconsistent with his fiduciary obligations owed to Hylton" by giving "false advice to induce him to pay an excessive fee"); *Starr v. Ashbrook*, 87 Cal. App. 5th 999, 1019 (2023) (denying anti-SLAPP motion seeking to strike claim complaining of defendant's litigation

-11-

activity); *Wong v. Wong*, 43 Cal. App. 5th 358, 365 (2019) ("The Tang Estate has not been sued for pursuing the Asian Square litigation but for breaching its obligation to indemnify the Wong Estate for expenses incurred in that litigation.").

Movants further amplify their distortion by misleadingly citing to the lead paragraph in the Counterclaims (Mot. at 17):

> Lest there be any doubt, the very first paragraph of their Countercomplaint literally evokes the litigation privilege: "This countersuit is based on Hill's fraudulent representation to the U.S. Copyright Office that Hill is the 'author' of the 1986 screenplay and holds attendant termination rights—the same false representations now made in the Complaint to support Hill's meritless lawsuit."

That allegation refers to the Studio Parties' First Counterclaim for fraud on the Copyright Office,[5] a federal question claim that is *not* subject to the anti-SLAPP statute and not at issue on this motion. *See* fn 1 *supra*. The Second Counterclaim for breach of contract, asserted in the alternative, at issue on this motion is predicated on the diametrically opposite premise—that Hill's representations of authorship to the U.S. Copyright Office in 2024 were accurate, and that Movants' express contractual representations of *Lady Amos's* authorship in the 1986 LPA were not.

In the final analysis, the false representations and warranties Movants themselves contend they made in the 1986 LPA do not constitute "protected" activity within the anti-SLAPP statute's purview.  Accordingly, Movants cannot carry their burden to clear prong one under any theory.  This alone requires that this motion be

---

[5] *See* CC ¶ 49 (alleging on the First Counterclaim: "On or about January 24, 2024, Hill, though his counsel Toberoff, submitted a fraudulent application to register the 1986 Screenplay to the U.S. Copyright Office, identifying Hill as the copyright author and copyright claimant in the 1986 Screenplay."), ¶ 50 ("These representations were inaccurate, and knowingly false when made. As Hill and Lady Amos attested in the 1986 LPA, contemporaneously with the completion of the 1986 Screenplay, Lady Amos is the author of the 1986 Screenplay, a work made for hire.").

denied. *See, e.g., Renewable Res. Coal., Inc. v. Pebble Mines Corp.*, 218 Cal. App. 4th 384, 398 (2013) ("[D]efendants failed to meet their threshold burden to show the [plaintiff's] claims arose from [defendants'] constitutionally protected activity.... Therefore, it is unnecessary to address the second prong of the two-part test, i.e., whether the [plaintiff], in opposing the special motion to strike, met its burden to establish a reasonable probability it could prevail on its claims.").

## C.     The Studio Parties State a Valid Claim for Breach of Express Contractual Representations and Warranties

Movants assert three defenses to support their contention that the Studio Parties' fail to state a viable contract claim: (i) that the litigation privilege under California bars the claim; (ii) that Movants' contractual representations and warranties are negated by the Copyright Act's termination provisions as an "agreement to the contrary"; and (iii) that the breach of contract claim is conflict preempted by the Copyright Act.  Although the Court need not reach any of these issues, these arguments are meritless.

### 1.     The Litigation Privilege Does Not Apply for the Same Reasons the Anti-SLAPP Statute Does Not Apply

At the outset, Hill's attempt to invoke the litigation privilege fails for the same reason that his attempt to invoke the anti-SLAPP statute fails:  UA does not seek to impose any liability on Hill based on litigation-privileged communications.

The litigation privilege, codified in California Civil Code § 47(b), "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990).  The litigation privilege bars only claims seeking to impose liability *for* protected communications, but not the use of protected communications as evidence: "on brief reflection, it is quite clear that section 47([b]) has never been thought to bar the *evidentiary* use of every 'statement or publication'

-13-

1  made in the course of a judicial proceeding." *Oren Royal Oaks Venture v. Greenberg,*
2  *Bernard, Weiss & Karma Inc.*, 42 Cal. 3d 1157, 1168 (1986).

3       In determining whether § 47(b) bars a claim, the California Supreme Court has
4  cautioned courts to "draw a careful distinction between a cause of action based
5  squarely on a privileged communication, such as an action for defamation, and one
6  based upon an underlying course of conduct evidenced by the communication." *White*
7  *v. Western Title Ins. Co.*, 40 Cal. 3d 870, 888 (1985). Accordingly, "when allegations
8  of misconduct properly put an individual's intent at issue in a civil action, statements
9  made during the course of a judicial proceeding may be used for evidentiary purposes
10 in determining whether the individual acted with the requisite intent." *Oren Royal*
11 *Oaks Venture*, 42 Cal. 3d at 1168; *see also, e.g., Fidelity Nat. Fin., Inc. v. National*
12 *Union Fire Ins. Co. of Pittsburgh, P.A.*, No. 09-CV-140-GPC-KSC, 2014 WL
13 1286392, at *6 (S.D. Cal. Mar. 28, 2014) (litigation privilege does not immunize
14 insured's attempt to introduce evidence of insurer's litigation conduct in bad faith
15 insurance case).

16      Under these standards, Movants' contention that the litigation privilege applies
17 to the Studio Parties' contract claim (Mot. at 17-18) fails for the same reason this
18 motion fails on the anti-SLAPP statute's threshold prong: the breach on which the
19 claim is based is Movants' assertion of false contractual representations and
20 warranties in the 1986 LPA, *not* on the evidentiary admissions (and, indeed,
21 affirmative contentions) of those breaches made in Hill's termination notices,
22 copyright application, or this litigation.

23      Each of Movants' cited cases are easily distinguished on this basis.[6] Movants'
24 contention that "*Nestle USA, Inc.* is particularly cogent" (Mot. at 19) is based on a

25

---

26 [6] *See Ekorus, Inc. v. Elohim Epf United States*, No. CV 20-310-GW-GJSx, 2020 WL
27 3891449, at *2 (C.D. Cal. Apr. 24, 2020) (claim based on "Defendant's conduct —
   and presumably its statements — during, or in connection with, multiple prior
28 copyright infringement lawsuits Defendant prosecuted against third parties");

misreading of that case.  That decision did *not* dismiss a counterclaim for breach of contract, as Movants erroneously claim.  2000 WL 727859, at *1 (noting counterclaim 4 was for breach of contract, whereas movant sought dismissal of counterclaims 2, 3, 5, and 6).  The parties in that case recognized what Movants miss here: litigation communications are generally immunized "from *tort* liability by the privilege codified as Civil Code section 47(b)."  *Wentland v. Wass*, 126 Cal. App. 4th 1484, 1491 (2005) (emphasis in original; citation and punctuation omitted).  More fundamentally, as in all of Movants' cited cases, the tort claims in *Nestle USA* were based squarely on the counterclaim defendant's *filing* of a copyright application.  2000 WL 727859, at *2 ("VIT alleges that Nestle tortiously interfered with VIT's business relationships 'by wrongfully attempting to register an invalid and unenforceable copyright.'").  Here, by contrast, Hill's application for copyright registration is *not* the basis for the Studio Parties' breach of contract claim, but merely evidences the purported falsity of Movants' representation and warranties in the 1986 LPA.  Under these circumstances, the litigation privilege does not apply.  *See, e.g, Wentland*, 126 Cal. App. 4th at 1494 ("This cause of action is not based on allegedly wrongful conduct during litigation[.]   Rather, it is based on breach of a separate promise independent of the litigation[.]  This breach was not simply a communication, but also

---

*Fotohaus, LLC v. Proforma, Inc.*, No. 18-cv-01827-BLF, 2019 WL 1493355, at *1 (N.D. Cal. Apr. 4, 2019) (counterclaim for "bringing and maintaining a claim against the Franchisees for Copyright infringement…") (internal quotation marks omitted); *UMG Recordings, Inc. v. Glob. Eagle Entm't Inc.*, 117 F. Supp 3d 1092, 1113 (C.D. Cal. 2015) ("Counterclaimants' interference claims are based, in part, on a November 20, 2013 cease-and-desist letter sent to Inflight."); *Baker v. FirstCom Music*, 2 No. LACV 16-8931, 2017 WL 9510144, at *4 (C.D. Cal. July 27, 2017) ("FirstCom's slander-of-title counterclaim, as it pertains to Appendix B, asserts that Plaintiff's litigation activity itself has slandered and harmed FirstCom"); *Nestle USA, Inc. v. Virtual Integration Tech.*, No. CV 00-01144 DDP (Ex), 2000 WL 727859, at *2 (C.D. Cal. May 17, 2000) (litigation privilege applied to claims that "allege[] that Nestle knowingly made an untrue statement in the copyright registration application regarding assignment of ownership rights to the KPI software").

wrongful conduct or performance under the contract"); *Oren Royal Oaks Venture*, 42 Cal. 3d at 1157; *White*, 40 Cal. 3d at 888.

### 2.    Movants' Contractual Representations and Warranties Are Not an "Agreement to the Contrary" Under the Copyright Act

Movants' argument that section 203(a)(5) of the Copyright Act bars the Studio Parties' contract claim is equally meritless and contrary to that provision's plain language.

Section 203(a)(5) provides that "[t]ermination of the grant may be effected notwithstanding any agreement to the contrary, including an agreement to make a will or to make any future grant." 17 U.S.C. § 203(a)(5). It is not implicated here for the simple reason that the Studio Parties' breach of contract claim does not seek to prevent the "termination of the grant" from being "effected."[7]  *See CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703, 706 (9th Cir. 2017) ("In construing the provisions of a statute, we begin by looking at the language of the statute to determine whether it has a plain meaning. If the language has a plain meaning or is unambiguous, the statutory interpretation inquiry ends there.") (citation and quotation marks omitted); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 289-90 (2d Cir. 2002) ("In interpreting a statute, we look first to the language of the statute itself. When the language of a statute is unambiguous, judicial inquiry is complete.") (citation omitted).

The primary case on which Movants rely, *Marvel v. Simon*, underscores the point that the representations and warranties at issue here are *not* an "agreement to the contrary." In that case, the parties entered into an agreement in 1969 that retroactively recharacterized works Simon had created in 1941, decades earlier, as works-made-for-hire for Marvel. *Id.* at 283-84. When Simon sought to terminate that grant in

---

[7] To be sure, the Studio Parties challenge Hill's purported termination right via their defenses and First Counterclaim for copyright fraud, but not in their alternative counterclaim for breach of contract at issue on this motion.

1999, Marvel argued that the works at issue were not subject to termination because Simon had waived his termination right in the 1969 agreement. *Id.* at 285. Under these circumstances, the Second Circuit held that the attempt to extinguish Simons' termination right by a decades-too-late recharacterization constituted an "agreement to the contrary" because purpose of provision "was to prevent authors from *waiving* their termination right by contract." *Id.* at 290 (emphasis added). Movants' reliance on *Ray Charles Found.* is misplaced for the same reasons, because in that case, the heirs holding termination rights agreed that they were expressly "*waiving* any right to make a claim against his estate." *Ray Charles Found. v. Robinson*, 919 F. Supp. 2d 1054, 1060 (C.D. Cal. 2013) (emphasis added), *rev'd*, 795 F.3d 1109 (9th Cir. 2015). The court opined in *dicta* that, "if the agreements are interpreted to *waive* Defendants' rights to recapture the copyrights at issue, then they are plainly 'agreement[s] to the contrary' of the Copyright Act's termination provisions and are unenforceable to that extent." *Id.* at 1066 (emphasis added).[8]

By stark contrast here, the Studio Parties' contract claim *presumes* that Hill was the copyright author of the 1986 Screenplay and therefore seeks *no* relief that would bar Hill's purported "termination of the grant" from being "effected." 17 U.S.C. § 203(a)(5). Rather, the Studio Parties' contract claim seeks damages as a result of the

---

[8] Though the court in *Ray Charles* opined in further *dicta* that "forcing statutory heirs to choose between incurring a penalty for breaching an agreement or abandoning statutory termination rights" might be deemed an "agreement to the contrary" (*id.* at 1066), that *dicta* contradicts all applicable authority, beginning with the Ninth Circuit's controlling guidance on statutory interpretation. No court in any federal jurisdiction has followed it and, of course, it is not binding on this Court. *See, e.g.,* *Evans v. Skolnik*, 997 F.3d 1060, 1067 (9th Cir. 2021) ("[A] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."); *Jimenez v. Comm'r of SSA*, No. CV-18-02076-PHX-JAT, 2019 WL 1970856, at *6 (D. Ariz. May 3, 2019) ("First, the Court notes that it is not bound by district court opinions. Second, it appears to this Court that these opinions are in conflict with controlling Ninth Circuit Court of Appeals precedent.").

-17-

representations and warranties Movants freely made in 1986 at the time Hill alleges he wrote the Screenplay.  "Nothing in the Copyright Act[] has altered the power of private parties to contract" in this manner.  *Milne v. Stephen Slesinger, Inc.*, No. CV 02-08508 FMC (PLAx), 2003 WL 21076983, at *4 (C.D. Cal. May 8, 2003) (citing legislative history).  Indeed, Congress's intent is unambiguous in this regard, as the Copyright Act's plain language makes clear: "[t]ermination of a grant under this section affects only those rights covered by the grants that arise under this title, and *in no way affects rights arising under any other Federal, State, or foreign laws*."  17 U.S.C. § 203(b)(5) (emphasis added).

The decisional authority is equally clear, beginning with *Simon*, that a state law claim that does not seek to extinguish the termination right is *not* an "agreement to the contrary."  *See Simon*, 310 F.3d at 290 (2d Cir. 2002) (purpose of provision "was to prevent authors from *waiving* their termination right by contract") (emphasis added); *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 29 n.5 (2d Cir. 2015) ("Because the 1981 Agreement did not cause anyone else to *lose* termination rights that they otherwise could have exercised, it cannot be a forbidden 'agreement to the contrary.'") (emphasis added); *Penguin Grp. (USA) Inc. v. Steinbeck*, 537 F.3d 193, 203 (2d Cir. 2008) ("*Marvel* concludes only that backward-looking attempts to recharacterize existing grants of copyright so as to *eliminate* the right to terminate under section 304(c) are forbidden by section 304(c)(5).") (emphasis added); *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 985 (9th Cir. 2008) (*Simon* held that, "to the extent that the retroactive recharacterization of the works in the 1969 agreement was construed to *extinguish* the termination right long before vesting, it was void as an 'agreement to the contrary' under § 304(c)(5)) (emphasis added); *Cher v. Bono*, CV21-08157 JAK, 2024 WL 2789419, at *9 (C.D. Cal. May 29, 2024) ("An 'agreement to the contrary' … is only a contractual device that purports to *divest* authors and successors of the right to terminate copyright assignments.") (citation and quotation marks omitted; emphasis added).

-18-

Movants' reliance on *Simon* is misplaced for additional reasons. Not only does the contract claim here not seek to extinguish or eliminate any termination rights, but unlike in *Simon*, Movants' representations and warranties were made within weeks of Hill's claimed completion of the 1986 Screenplay. And unlike in *Simon*—where the studio acquiring rights by the agreement was retroactively designated as employer and copyright author—the acquiring party here (UA) was not. Instead, Movants' representations that Hill wrote the 1986 Screenplay as an employee for Lady Amos were made by Hill and his *own* company, Lady Amos, after its own "agents at Creative Artists Agency shopped the Screenplay to potential buyers." *See* Compl. ¶ 29; CC, Ex. B (1986 LPA) § 11; *fn* 2 *supra*. As the *Simon* court explained, "an employer-publisher does not face the same potential unequal bargaining position as an individual author" and therefore "does not need the same protections as an individual author." 310 F.3d at 291. That reasoning applies here. At minimum, Movants cannot rely on *Simon*, a case resolved on summary judgment, at the pleading stage here after having made *no* showing that UA somehow coerced Movants into forming Lady Amos and falsely attesting that it was the author and owner of the 1986 Screenplay—a proposition rendered impossible by the fact that Hill himself had formed Lady Amos 10 years earlier precisely "[t]o design, create, and produce screenplays, film scripts, and adaptations" and "[t]o buy, sell and deal in same." *Id.* ¶ 18, Ex. A at 9.

In short, this defense fails too.

### 3.      There Is No Conflict Preemption

Movants fare no better by recasting the same argument to assert conflict preemption, which does not apply for similar reasons.

"Conflict preemption is implicit preemption of state law that occurs where 'there is an actual conflict between state and federal law.'" *McClellan v. I-Flow Corp.*, 776 F.3d 1035, 1039 (9th Cir. 2015) (quoting *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76-77 (2008)). It occurs "when compliance with both federal and state

-19-

regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Pacific Gas & Elec. Co. v. Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 204 (1983) (citations and quotation marks omitted).  "Tension between federal and state law is not enough to establish conflict preemption."  *Incalza v. Fendi N. Am., Inc.*, 479 F.3d 1005, 1010 (9th Cir. 2007) (citation omitted).  "Because it is assumed that Congress does not cavalierly decide to override state authority, there is a general presumption against preemption in areas traditionally regulated by states." *Oxygenated Fuels Ass'n v. Davis*, 331 F.3d 665, 668 (9th Cir. 2003).

Congressional intent is the "ultimate touchstone" of any preemption analysis.  *Gade v. Nat'l Solid Wastes Management Ass'n*, 505 U.S. 88, 96 (1992) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 208 (1985)).  And, "[i]n determining Congressional intent to preempt, a court must 'begin with the language employed by Congress and the assumption that the ordinary meaning of the language accurately expresses the legislative purpose,' because '[t]he first and most important step in construing a statute is the statutory language itself.'"  *Hanni v. Am. Airlines, Inc.*, No. C 08-00732 CW, 2008 WL 1885794, at *4 (N.D. Cal. Apr. 25, 2008) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) and *Royal Foods Co., Inc. v. RJR Holdings, Inc.*, 252 F.3d 1102, 1106 (9th Cir. 2001)).

Under this analysis, Movants' preemption argument fails for the same reason that their purportedly false representations and warranties are not an "agreement to the contrary": the Studio Parties' claim does not seek to extinguish any termination right, and thus does not contravene the statutory language of *any* provision in the Copyright Act.  The opposite is true, as the Copyright Act expressly *preserves* state law claims like the one at issue: "[t]ermination of a grant under this section affects only those rights covered by the grants that arise under this title, and *in no way affects rights arising under any other Federal, State, or foreign laws*."  17 U.S.C. § 203(b)(5) (emphasis added).

Accordingly, courts that have analyzed this provision have enforced state law, including, specifically, claims arising under state contract law.  *See Cher*, 2024 WL 2789419, at \*9 (citing 17 U.S.C. § 304(c)(6)(E)) (because termination provision "provides that it 'in no way affects rights arising under any other Federal, State, or foreign laws,' the Notice of Termination cannot affect Plaintiff's contractual right to receive financial compensation in exchange for the release and permanent discharge of any and all claims arising out of her marital relationship with Sonny") (emphasis added); *see also, e.g., Siegel v. Warner Bros. Entm't, Inc.*, 542 F. Supp. 2d 1098, 1140 (C.D. Cal. 2008) ("[T]he statutory text could not be any clearer on this subject. Through this section, Congress expressly limited the reach of what was *gained* by the terminating party through exercise of the termination right....") (emphasis in original); *Topa Equities, Ltd. v. City of Los Angeles*, 342 F.3d 1065, 1070 (9th Cir. 2003) (no conflict preemption where preemption provision of federal statute was limited by savings clause that "[t]his section shall not prevent the establishment, continuing in effect, or enforcement of any law or regulation of any State or political subdivision of a State not inconsistent with the provisions of this subtitle").  Indeed, even absent the savings clause that controls here, courts decline to rule that state law claims seeking to hold defendants liable for their own false representations are preempted by federal law.  *See, e.g., Wright v. Costco Wholesale Corp.*, 651 F. Supp. 3d 1099, 1110 (N.D. Cal. 2023) (rejecting conflict preemption where "state law claims do not impose another definition of what is dolphin-safe [or] create any enforcement scheme" but instead seeks to hold defendant accountable "for the false and misleading advertising of its own heightened 'dolphin safe' representations").

In light of section 203(b)(5), Movants not surprisingly fail to cite a *single* decision in which a state law claim sounding in contract or otherwise has been deemed conflict-preempted by the Copyright Act's termination provisions.  Outside of the termination context, the decisional authority is replete with case law affirming the enforceability of contract rights in agreements, like the 1986 LPA, transferring

copyright ownership.  *See, e.g., Cher*, 2024 WL 2789419, at \*9; *Yount v. Acuff Rose-Opryland*, 103 F.3d 830, 835 (9th Cir. 1996) (citations omitted) ("We have indicated that state law determines the rights and obligations arising under a publishing contract that assigns a copyright.  We have also looked to state law in determining whether the withholding of royalties effected a material breach of a copyright assignment agreement."); *Barris Indus., Inc. v. Worldvision Enters., Inc*., 875 F.2d 1446, 1449-50 (9th Cir. 1989) (state contract law determines ownership of federal statutory royalties due copyright owners); *Massacre v. Davies,* Case No. 13-cv-04005 NC, 2014 WL 662540, at \*2 (N.D. Cal. Feb. 20, 2014) ("Newcombe alleges that the parties had an 'arrangement' in which Newcombe 'conceded a portion of his songwriting' to Davies.  These factual allegations appear to present an ownership dispute governed by state contract law."); *cf. Ryan v. Editions Ltd. West., Inc.*, 786 F.3d 754, 762 (9th Cir. 2015) (contractual fee-shifting provision "poses no serious obstacle" to the Copyright Act's interest in encouraging public registration of rights by predicating statutory attorneys' fees awards on timely registration).

Against this backdrop, Movants cite to one case, *X Corp. v. Bright Data Ltd.*, No. C 23-03698 WHA, 2024 WL 2113859 (N.D. Cal. May 9, 2024), in which a breach of contract claim was deemed to be conflict-preempted by the Copyright Act.  This decision only underscores the lack of merit to Movants' position.  In that case, the court found that the terms of service for the social media platform X (f/k/a Twitter) prohibiting users from copying publicly available data from the platform "would entrench its own private copyright system that rivals, even conflicts with, the actual copyright system enacted by Congress." *Id.* at \*12.  The Studio Parties' contract claim, by contrast, involves no public platform to "rival" the federal copyright system but instead is a private dispute based no on a bilateral arms-length contract between two companies.  As *X Corp.* explained, the court's concern was *not* with this type of "arm's length contract between two sophisticated parties in which one or the other adjusts their rights and privileges under federal copyright law," like the 1986 LPA,

but rather a "standard form contract" of adhesion between an online social media company and its tens of millions of users.  *Id.*, at \*12-13.  It has no relevance here. The only other case Movants cite where a contract claim was deemed conflict-preempted was *reversed* on that very issue.  *See Est. of Graham v. Sotheby's, Inc.*, 178 F. Supp. 3d 974, 988 (C.D. Cal. 2016), *rev'd in relevant part*, *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1072-74 (9th Cir. 2018).  And, critically, neither of these decisions involved the Copyright Act's termination provisions nor implicated Congress's express statutory directive that "[t]ermination of a grant under this section ... in no way affects rights arising under any other Federal, State, or foreign laws."  17 U.S.C. § 203(b)(5).

Conflict preemption does not apply.

## IV.

## CONCLUSION

For the reasons explained above, Movants' anti-SLAPP motion fails on both prongs of the inquiry and should be denied in its entirety.  Movants do not carry their burden of establishing that the Studio Parties' breach of contract counterclaim is based on any protected petitioning or speech activity because it is plainly based instead on the representations and warranties that Movants contend they falsely made in 1986. Though that alone ends the anti-SLAPP inquiry, this motion also fails on the merits because the Studio Parties have stated a claim for breach of contract under the Rule 12(b)(6) pleading standards, and each of the affirmative defenses Movants raise in their motion is unavailing.

1  Dated:  August 13, 2024

2                          SHEPPARD, MULLIN, RICHTER &
3                          HAMPTON LLP

4

5                          By _____/s/Wook Hwang_____
6                                       WOOK HWANG
7                                       DYLAN J. PRICE
                                        PAUL A. BOST
8
9                          Attorneys for METRO-GOLDWYN-MAYER
                           STUDIOS INC., AMAZON STUDIOS LLC,
10                         and UNITED ARTISTS PICTURES INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-24-

RESPONSE TO SPECIAL MOTION TO STRIKE COUNTERCLAIM
                                              PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16