UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **R. Lance Hill,** | Case No. 2:24-cv-01587-HDV-SSC |
| Plaintiff, | **ORDER DENYING PLAINTIFF R. LANCE HILL'S ANTI-SLAPP MOTION TO STRIKE [DKT. NO. 34]** |
| v. | |
| **Metro Goldwyn Mayer Studios Inc., et al.,** | |
| Defendants. | |

## I. INTRODUCTION

This dispute arises out of a screenplay that became a cult-classic movie. In 1986, Plaintiff R. Lance Hill entered into an agreement with United Artists Pictures Inc. that gave the studio the rights to Hill's screenplay that eventually became the well-known movie *Roadhouse*. After Hill purported to terminate the transfer of rights in 2021, this action (and various counterclaims) followed.

Before the Court is Hill's anti-SLAPP motion to strike Defendants' second counterclaim of breach of contract. Hill argues that this counterclaim is based on Hill's protected activity under California's anti-SLAPP statute because it arises out of Hill's filing of a notice of termination.

For the reasons more fully discussed below, the motion to strike is denied. Although the counterclaim was, as a practical matter, undoubtedly put in motion by the notice of termination, the Court concludes that the underlying actions that "supply those elements" of the challenged breach of contract claim are the representations in the 1986 agreement. *Park v. Board of Trustees of California State University*, 393 P.3d 905, 908 (Cal. 2017). Moreover, Defendants' counterclaim easily meets the "minimal merit prong" of the anti-SLAPP analysis. *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010). Specifically, the Court concludes that Defendants' breach of contract theory—here premised on the representations made by Hill in 1986—is legally sufficient and supported by adequate prima facie evidence in the form of the parties' contracts.

## II. BACKGROUND[1]

Plaintiff/Counterclaim Defendant R. Lance Hill ("Hill") incorporated Lady Amos Literary Works Ltd. ("Lady Amos") in Canada in 1976[2] to "design, create, and produce screenplays, film scripts, and adaptations" and "buy, sell, and deal in the same." Answer of Defendants to Complaint

---

[1] Anti-SLAPP motions premised on legal deficiencies in the claim are analogous to motions to dismiss under the federal rules. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). As such, the factual allegations made in the Counterclaim Complaint will be accepted as true for the purposes of this Motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations as true, we are not bound to accept as true a legal conclusion couched as a factual allegation") (citation omitted).

[2] Originally named "Lady Amos Productions Ltd," the name was changed to its current version in 1978. Counterclaim Complaint ¶ 19.

and Counterclaims ("Counterclaim Complaint") [Dkt. No. 22] ¶ 18 (quoting Counterclaim Complaint, Ex. A [Dkt. No. 22-1] at 10). Hill served as a director at Lady Amos until 1994. *Id.* ¶ 20.

In 1986, Hill wrote a screenplay entitled "Roadhouse" ("Screenplay"). *Id.* ¶ 23. On August 7, 1986, Lady Amos entered into a "Literary Purchase Agreement" with Defendant United Artists Pictures Inc. ("UA"). *Id.* ¶ 24. The first paragraph of the agreement reads as follows:

> AGREEMENT ("Agreement") between UNITED ARTISTS PICTURES, INC. ("UA") and LADY AMOS LITERARY, LTD. (Canadian F.I.D. [redacted]-0540) ("Owner") with respect to UA's purchase of all rights in the original unpublished screenplay entitled "Roadhouse" ("Property") written by Lance Hill (a/k/a David Lee Henry) ("Writer")…

Counterclaim Complaint, Ex. B ("1986 Agreement") [Dkt. No. 22-2] at 1. The 1986 Agreement has a section titled "Warranties" that states in relevant part:

> (c) Owner owns all of the rights free and clear of any liens, encumbrances and other third party interests of any kind, and free of any claims or litigation, whether pending or threatened; and Owner has the right to make such changes in the Property and uses thereof as Owner may determine.

*Id.* at 3. Hill executed an addendum to the 1986 Agreement that guaranteed the "truth, effectiveness, and performance of all of the agreement's grant of rights, undertakings, representations, warranties, and indemnities made by [Lady Amos] under the [1986 Agreement]." *Id.* at 7. Hill then went even further and completed a notarized "Certificate of Authorship" that read:

> I hereby certify that, as an employee of [Lady Amos] and in the regular course of my duties of employment I am engaged in writing a rewrite to a screenplay currently entitled "Roadhouse" (such rewrite and all revisions thereto hereinafter referred to as the "Work") based upon an original screenplay written by me pursuant to [the 1986 Agreement] between [Lady Amos] and [UA]…I further certify that the Work is being written or shall be written as a work-made-for-hire within the meaning of U.S. Copyright laws, and that, pursuant to the [1986] Agreement, UA as the assignee of [Lady Amos], owns all right, title and interest throughout the world in and to said Work and all of the results and proceeds of my writing services in accordance therewith as if I had been an employee of UA…

Counterclaim Complaint, Ex. C ("Certificate of Authorship") [Dkt. No. 22-3]. at 16.

On or about November 10, 2021, Hill sent a "Notice of Termination" to UA and Defendant

1  Metro-Goldwyn-Mayer Studios Inc. ("MGM") notifying the parties that Hill "being the author
2  entitled to terminate transfers…hereby terminates the grant of transfer of rights" to the Screenplay
3  made by the [1986 Agreement]." Countercomplaint, Ex. D ("Notice"). [Dkt. No. 22-4] at 2.
4       On February 27, 2024, Hill filed a complaint seeking declaratory relief and copyright
5  infringement against MGM, UA, and Defendant Amazon Studios LLC ("Amazon") (collectively
6  "Defendants"). Complaint [Dkt. No. 1]. On May 3, 2024, Defendants filed an answer to the
7  Complaint that included two counterclaims, the first for declaratory relief and the second for breach
8  of contract. Counterclaim Complaint at 28–29.
9       On July 5, 2024, Hill filed the instant motion challenging Defendants' breach of contract
10 claim ("Second Counterclaim"). Motion to Strike Second Counterclaim ("Motion") [Dkt. No. 34].
11 The Court heard oral argument on September 12, 2024 and took the Motion under submission.

12 **III.   LEGAL STANDARD**

13      California law recognizes that a certain type of lawsuit—specifically, a "strategic lawsuit
14 against public participation," or "SLAPP"—is often filed for the improper purpose of "chill[ing] the
15 valid exercise of the constitutional rights of freedom of speech and petition for the redress of
16 grievances." Cal. Civ. Proc. Code § 425.16(a); *Equilon Enters., LLC v. Consumer Cause, Inc.*, 29
17 Cal. 4th 53, 59 (2002). To guard against these pernicious suits, the California Code of Civil
18 Procedure provides an "anti-SLAPP" mechanism whereby a litigant can bring a special motion to
19 strike any cause of action "arising from any act of that person in furtherance of the person's right of
20 petition or free speech under the United States Constitution or the California Constitution in
21 connection with a public issue." Cal. Civ. Proc. Code § 425.16(b)(1).
22      "A court considering a motion to strike under the anti-SLAPP statute must engage in a two-
23 part inquiry." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (citation omitted).
24 The movant first "must make a prima facie showing that the [] suit arises from an act in furtherance
25 of the [movant's] rights of petition or free speech." *Id.* (citation omitted). If the movant meets the
26 initial threshold, "the burden shifts to the [claimant] to demonstrate a probability of prevailing on the
27 challenged claims." *Id.* (citation omitted). The probability required is "reasonable probability"
28 interpreted as "a minimum level of legal sufficiency and triability" or "minimal merit". *Id.* at 598.

Case 2:24-cv-01587-HDV-SSC    Document 42    Filed 10/01/24    Page 5 of 7    Page ID #:398

## IV. DISCUSSION

### A. Arises from a Protected Act

An act is protected by the anti-SLAPP statute if it fits one of the following four enumerated categories:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of constitutional right of petition or constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Civ. Proc. Code § 425.16(e). The Court finds Hill's filing of a Notice of Termination is a formal communication to the U.S. Copyright Office seeking official action governed by statute, *see* 15 U.S.C. § 1051 ("Application for registration"), and that the activity is protected as a "writing made before a[n]…executive…body, or any other official proceeding authorized by law." *See Mindys Cosmetics, Inc.*, 611 F.3d at 596 (finding that filing a trademark application with the United States Patent and Trademark Office is protected as a "formal communication…seeking official action in a process governed by statute").

Defendants do not contest that the activity described is protected. Instead, Defendants' argument is that the Second Counterclaim is "not based on [Hill's] termination notices," Opposition at 8–9, but is based on Hill's allegedly "false attestation of contemporaneous facts" made in the 1986 Contract. *Id.* at 9. The Court agrees.

The critical question is whether the protected activity "underlies or forms the basis for the claim." *Park v. Board of Trustees of California State University*, 2 Cal. 5th 1057, 1062 (Cal. 2017). A court must "consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently the basis for liability." *Id.* at 1063. A claim for breach of representations and warranties sounds in a breach of contract. *Neman Brothers & Assoc., Inc. v. One Step Up Ltd.*, No. 2:17-cv-06400-RGK-SS, 2017 WL 6885390, at *5 (C.D. Cal. Dec. 13, 2017) (citing *Gustafson v. Dunham, Inc.*, 204 Cal. App. 2d 10, 14 (1962)). The elements for breach of

5

contract are (1) formation, (2) one party's performance, (3) the non-performing party's breach, and (4) damages. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010). The breach is the element underpinning liability, and breach in this context occurs immediately upon execution of the contract. *See Western Filter Corp. v. Argan, Inc.*, 540 F.3d 947, 952 (9th Cir. 2008) ("Representations and warranties are statements of fact as of the date of the execution of the acquisition agreement…") (citation omitted).

Here, Defendants' counterclaim alleges Plaintiff breached the 1986 Agreement by making false representations and warranties regarding Lady Amos's authorship. Second Counterclaim ¶¶ 58, 59. The alleged breach would have been immediate upon the signing of the 1986 Agreement, wholly apart from and decades before the Notice of Termination. That breach of the 1986 Agreement, not the Notice of Termination, "underlies [and] forms the basis for" the Second Counterclaim. Since there can be no colorable argument that the false statements made in a contract between private parties is "protected activity" under the statute, Plaintiff fails to carry its burden.

### B. Probability of Success on the Merits[3]

Even assuming *arguendo* that Plaintiff can establish the first prong of the anti-SLAPP analysis, the Motion is denied because the second part of the anti-SLAPP inquiry—reasonable probability of success on the merits—is easily met here. Often called the "minimal merit prong," the

---

[3] Hill argues that the litigation privilege bars the Second Counterclaim. Motion at 17; Cal. Civ. Code § 47(b). The Court finds that the privilege does not apply here. The litigation privilege "grants absolute immunity from [] liability for communications made in relation to judicial proceedings." *Mindys Cosmetics, Inc.*, 611 F.3d at 599 (citation omitted). The litigation privilege is a "substantive rule of law" whereas anti-SLAPP is a "procedural device to screen out meritless claims." *Id.* (citation omitted). The decision in *Crossroads Investors, L.P. v. Federal National Mortgage Ass'n*, 13 Cal. App. 5th 757 (2017) is instructive. In *Crossroads*, the court held that the privilege will only apply to contract claims if the contract does not "'clearly prohibit' the challenged conduct, and if applying the privilege furthers the policies underlying the privilege . . . ." *Id.* at 787. If application of the privilege would "frustrate the very purpose of the contract," the privilege does not apply. *Id.* Here, application of the privilege would do just that. Defendants allege Hill violated the 1986 Agreement by making false representations in the 1986 Agreement as shown by the Notice of Termination. Preventing Defendants from pursuing a breach of contract claim predicated on alleged misrepresentations would allow litigants to make false statements when contracting as long as the statements constituting breach are illuminated by statements made in official proceedings. Allowing that kind of misuse would defeat its purpose.

6

claimant "need only state and substantiate a legally sufficient claim." *Mindys Cosmetics, Inc.*, 611 F.3d at 598–599 (citation omitted). Put differently, "the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain favorable judgment if the evidence submitted by the plaintiff is credited." *Id.* at 599 (citation omitted). At this point courts "[do] not weigh the credibility or comparative probative strength of competing evidence," rather courts should only grant the motion if "no reasonable jury could find for the [claimant]." *Id.* (citation omitted).

Defendants argue that Hill breached the 1986 Agreement by making false representations therein as shown by the Notice of Termination. *See* Counterclaim Complaint ¶ 42. A reasonable jury might agree. The Copyright Act provides that in the case of a grant of a transfer or license executed by "one author," termination of the grant "may be effected by *that* author" by filing a Notice of Termination. 17 U.S.C. § 203(a)(1) (emphasis added). The Notice declared Hill as the author of the Screenplay. Notice at 3. If the Notice is valid, the warranties and representations in the 1986 Agreement attested to by Hill declaring Lady Amos as the author would necessarily be false. Counterclaim Complaint, Ex. B. That could be enough for a reasonable jury to find for Defendants on the Second Counterclaim, thus satisfying the "minimal merit" prong of the analysis. *Mindys Cosmetics, Inc.*, 611 F.3d at 598.

## V. CONCLUSION

For the foregoing reasons, the Court denies Hill's anti-SLAPP Motion to Strike.

Dated: October 1, 2024

Hernán D. Vera
United States District Judge