# EXHIBIT 11

Exhibit 11
179

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

23823 MALIBU ROAD, SUITE 50-363
MALIBU, CALIFORNIA 90265

Tel: (310) 246-3333 / Fax: (310) 246-3101
*sgibbs@toberoffandassociates.com*

December 11, 2024

*Via Email*

Wook Hwang                                          Dylan J. Price
*whwang@sheppardmullin.com*                         *dprice@sheppardmullin.com*
Katherine Anne Boy Skipsey                          Paul A. Bost
*kboyskipsey@sheppardmullin.com*                    *pbost@sheppardmullin.com*
30 Rockefeller Plaza                                1901 Ave. of the Stars, Ste. 1600
New York, New York 10112                            Los Angeles, California 90067
Sheppard, Mullin, Richter & Hampton LLP

**RE:**   ***Hill v. Metro-Goldwyn-Mayer Studios Inc., et al**, No. CV 24-1587 HDV (SSCx) (C.D. Cal.)*

Counsel:

We write to follow-up after our December 5, 2024 meet and confer regarding Defendants and Counterclaimants Metro-Goldwyn-Mayer Studios Inc., Amazon Studios LLC, and United Artists Pictures Inc.'s (collectively, "Defendants") Responses to Plaintiff R. Lance Hill's ("Hill") Requests for Production of Documents, Set One ("Requests") as well as Hill's November 22, 2024 L. R. 37-1 letter regarding the same.

## I.   Defendants' Bad Faith Participation in Discovery

Judge Vera's standing order provides that parties should "begin to conduct discovery actively before the Scheduling Conference. At the very least, the parties shall comply fully with the letter and spirit of Fed. R. Civ. P. 26(a) and thereby obtain and produce most of what would be produced in the early stage of discovery." Civil Standing Order § A.4 (Rev. 8-22-23). As you know, the Scheduling Conference was scheduled for July 16, 2024. Defendants, however, failed to produce any documents in advance of such date. Promptly thereafter, Hill served his First Set of Requests for Production on August 5, 2024. In the intervening *four and a half months*, Defendants have continued to flout their discovery obligations—failing to produce a *single* document; And even after our meet and confer on December 5, you have refused to commence production immediately or to provide a date certain for Defendants' production. Defendants also interposed grossly deficient responses and objections to Hill's Requests to further stonewall discovery.

On November 22, 2024, Hill sent Defendants a L. R. 37-1 Letter in an effort to address these issues and eliminate the necessity of moving forward with a motion to compel. Local Rule 37-1 provides that the parties must meet and confer within 10 days after such conference has been requested. We offered to make ourselves available to confer on November 25-27; And instead of doing so, you waited to respond until November 26 seeking to delay our conference to December 5 or 6, in contravention of the Local Rules.

Exhibit 11
180

**TOBEROFF & ASSOCIATES, P.C.**

December 11, 2024
Wook Hwang
Page: 2

During our conference on December 5, you refused our accommodation for Defendants to begin production by December 13, even though, by your own admission, Defendants had already collected numerous documents responsive to Hill's Requests. Indeed, when pressed, you *refused to specify any date* by which Defendants would begin their production. In a move that smacked of cynicism and bad faith, you invited us to file a motion to compel, because, according to you, Defendants would produce *some* documents prior to any potential hearing date. You also revealed during the conference that you had not even discussed many of Hill's Requests with your client. Finally, you stated that Defendants would not supplement their written responses to cure the numerous deficiencies identified in detail in our L. R. 37-1 Letter to you on November 22. All of this is unacceptable.

Your clients are not adorned with unfettered time to complete (let alone begin) their production of documents. Judge Vera's operative scheduling order in this case, Dkt. 36, set May 27, 2025 as the fact discovery cut-off date. Given your clients' deficient written responses as well as their refusal to produce entire categories of relevant documents, we have serious concerns that Hill and counterclaim defendant, Lady Amos Literary Works, Ltd., will be unable to secure relevant documents from Defendants. As such, we intend to move forward with a motion to compel and for sanctions unless Defendants make a good faith effort to participate in the discovery process by: (1) beginning production by December 13, 2024, as requested at our meet and confer last week; (2) providing a date certain for the completion of their production; and (3) agreeing to cure the deficiencies in Defendants' written responses outlined below and more fully in our November 22 Letter.

We further ask you to confirm the parties' agreement to produce responsive documents regardless of when they were created with the stipulation, however, that they need not log privileged documents which post-date the filing of Hill's Complaint on February 27, 2024.

## II.    General Deficiencies in Defendants' Written Responses and Production

### A.    Defendants' Failure to Produce Any Documents or Specify a Time When They Will Begin or Complete Production Violates Rule 34

Federal Rule of Civil Procedure 34(b)(4)(B) provides that "[t]he production must [] be *completed* no later than the time for inspection *specified in the request or* another reasonable time *specified in the response*." Fed. R. Civ. P. 34 (emphasis added); *see also* Fed. R. Civ. P. 34(b)(2)(B) Advisory Committee Note to 2015 Amendment ("The production must be completed either by the time for inspection specified in the request or by another reasonable time specifically identified in the response. When it is necessary to make the production in stages the response should *specify the beginning and end dates of the production*.") (emphasis added).

Defendants have violated this rule because they have not produced a single document by the date specified by the Requests nor proposed an alternative, reasonable time in their responses. Hill's Requests stated that Defendants were to "produce all Documents and other materials described herein … within thirty (30) days of service of this Request." Requests at 1. Defendants' Responses do not contain any date when document production will begin or be completed. Putting aside that Defendants have not even asserted in their objections (let alone demonstrated) that it is "necessary" to make the production in stages, in none of their responses do Defendants specify the beginning and end dates of

Exhibit 11
181

**TOBEROFF & ASSOCIATES, P.C.**

December 11, 2024
Wook Hwang
Page: 3

the production. "Given a service date of [August 5, 2024], Defendants' complete production—without reservation of right to supplement—was due [September 4, 2024]." *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 2021 WL 4974618, at *11 (C.D. Cal. July 14, 2021) (finding responses to request for production to be deficient; granting motion to compel).

Relatedly, and as we emphasized in the November 22, 2024 Letter and December 5, 2024 conference, Defendants' claims of undue burden and need for more time fall flat. "The Court [almost certainly will] not accept [Defendants'] argument that it is unable to commit to a reasonable date for production. [They are] large compan[ies] with lots of resources and [are] obliged to deploy those resources to get the production done by a date certain." *Patagonia, Inc. v. Anheuser Busch, LLC*, 2020 WL 6260018, at *2 (C.D. Cal. Feb. 19, 2020) (granting motion to compel). <u>We ask again that you commit to: (1) begin your production by Friday, December 13, 2024, and (2) provide a date by which Defendants will produce all documents responsive to Hill's Requests.</u>

### B. Defendants Have Violated Rule 34(b) By Failing to Identify Whether They Are Withholding Responsive Documents on the Basis of Their Boilerplate "Objections."

We reiterate the concern raised by us in our November 22 letter and again during our conference that Defendants' Responses are improper in that they do not state whether responsive materials are being withheld on the basis of the numerous boilerplate objections contained therein. In response, you stated on the call that Defendants would not supplement or amend their written responses to cure this basic deficiency. Under Rule 34(b), "[a]n objection *must state* whether any responsive materials are being withheld of the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b) (emphasis added); *see also, e.g.,* Advisory Committee Note to 2015 Amendment; *Integrated Sports Media & Ent. PPV, LLC v. Livecast 365*, *LLC*, 2023 WL 8884352, at *11 (C.D. Cal. July 10, 2023) (granting motion to compel and ordering party to provide supplemental responses to the document requests which state whether any responsive documents are being withheld on the basis of objections); *RG Abrams Ins.*, 2021 WL 4974618, at *10 (same). <u>We ask once again that Defendants agree to supplement their written responses to state whether responsive materials are being withheld based upon their objections.</u>

### C. Defendants' Boilerplate General Objections Are Improper and Constitute an Abuse of the Discovery Process

As stated in our Letter and during the conference, Defendants interposed groundless general, boilerplate objections to the Requests. Such boilerplate objections are improper and ineffective. Indeed, courts in the Central District "regard[] General Objections and boilerplate objections without specificity as required by Rule 34(b)(2)(B) as improper"[1] and "an abuse of the discovery process[.]"[2] This is particularly true for Defendants' unsubstantiated, boilerplate relevance, burden, vagueness, and attorney-client privilege/work product objections. *See, e.g., A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("General or boilerplate objections such as 'overly burdensome and

---

[1] *Perrin Bernard Supowitz, LLC v. Morales*, 2022 WL 20273780, at *1 (C.D. Cal. Oct. 31, 2022).

[2] *Gerawan Farming, Inc. v. Rehrig Pac. Co.*, 2013 WL 398740, at *2 (E.D. Cal. Jan. 31, 2013) (collecting cases).

Exhibit 11
182

**TOBEROFF & ASSOCIATES, P.C.**

December 11, 2024
Wook Hwang
Page: 4

harassing' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections. Similarly, boilerplate relevancy objections, without setting forth any explanation or argument why the requested documents are not relevant, are improper.") (citations omitted). You cannot dispute that these objections are nothing more than bare statements devoid of any explanation or argument as to why the respective objections are applicable. These objections are, in fact, "tantamount to no response at all" such that they will be overruled and deemed waived. *See Bragel Int'l, Inc. v. Kohl's Dep't Stores*, 2018 WL 7890682, at *5 (C.D. Cal. Nov. 14, 2018). <u>We ask for the last time that you agree to supplement Defendants' written responses to withdraw their impermissible general objections or to state that notwithstanding such objections Defendants will produce responsive documents.</u>

**III.    <u>Specific Deficiencies in Defendants' Written Responses and Representations as to What Defendants Agreed to Produce</u>**

**Documents Concerning Hill and/or Lady Amos:** During our conference on December 5, you acknowledged that <u>Request No. 2</u> was unlikely to present an undue burden, stating early on in the call, "Maybe you're right. If we searched for 'Lance Hill' and 'Lady Amos' it wouldn't be burdensome." You then proposed producing all such documents with these terms up through the effective date of Hill's termination notice. Although we disagree with your proposed time limitation, your suggestion evinces the reasonableness of this Request. Courts routinely grant motions to compel requests for documents referring to a party in the underlying litigation and reject assertions that such requests are overbroad or seek irrelevant documents.[3] That the Court will find as much is all the more likely because you have not "dispute[d] that [Defendants'] relationship with Plaintiff [and Lady Amos] relate[] exclusively to Plaintiff's" 1986 screenplay and works based thereon.[4] "As such, the request for 'all' documents concerning Plaintiff is not overbroad."[5] The speculative basis used to support your burden argument, including that the search may bring up documents associated with a small number of other works authored by Hill (which you were unable to identify during the conference) lacks any evidentiary support and is ultimately without merit. Moreover, to the extent Defendants' search does result in the identification of documents pertaining to Hill or his loan-out company, Lady Amos, in connection with non-*Road House* works, such documents could still be relevant to the work-for-hire issue in this case.

That employing a search for Plaintiff and Counterclaim-Defendant's names may yield a few documents you unilaterally deem to be "irrelevant" is not a basis for failing to conduct the search or to otherwise withhold discoverable information. Your self-serving view of relevance is far too restrictive.

---

[3] *See, e.g., O. T. v. BabyBjorn Inc.*, 2022 WL 17219007, at *7 (C.D. Cal. Apr. 4, 2022) (request for "any documents concerning Plaintiff" held to be "both relevant to the claims and defenses at issue and proportionate to the needs of the case."); *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 2022 WL 422824, at *8 (C.D. Cal. Jan. 19, 2022) (same; "documents and communications concerning Plaintiffs"; "Indeed, the Court can think of no more relevant a document in this case than documents and communications concerning Plaintiff"); *A.A. v. Cnty. of Riverside*, 2016 WL 10576640, at *4 (C.D. Cal. Mar. 14, 2016) (same; "defendant's communications concerning plaintiff"); *Starbucks Corp. v. Lundberg*, 2004 WL 1784753, at *6 (D. Or. Aug. 10, 2004) (same; documents "that refer or relate to plaintiffs")

[4] *Barten v. State Farm Mut. Auto. Ins. Co.*, 2024 WL 2890246, at *5 (D. Ariz. June 10, 2024) (granting motion to compel request for "all documents" "regarding [plaintiff]" which was "not limited to information relating to Plaintiff's claim")

[5] *Id.*

Exhibit 11
183

**TOBEROFF & ASSOCIATES, P.C.**

December 11, 2024
Wook Hwang
Page: 5

For example, we explained that agreements with writers for the *Road House* films (including the 1989 and 2024 films as well as any other Road House works previously proposed or currently in development) which refer or relate to Plaintiff or his loan-out corporation Lady Amos would be relevant for the reasons set out on pages 2-4 of our November 22 letter (e.g., because they likely contain Defendants' characterizations of the (i) Plaintiff and his loan-out company, as well as (ii) the Work itself and copyrightable elements contained therein in accordance with the contractual direction customary in the film industry that writers work from "assigned material").

Defendants must respond properly. As you yourself put it during the conference, the limitation imposed in your Response to Request No. 2 was at the very least "inartful." If some request scoops up a few documents that the Court later determines are irrelevant, then such documents will be inadmissible. This is discovery, not trial. Your statement on our December 5 call that Defendants intend to file one or more motions *in limine* is of no moment. We are not going to let your clients, or your office, unilaterally determine behind the scenes what is "relevant" and to withhold documents on that basis, particularly without advising what is being withheld on such disputed grounds. We ask you again to confirm that Defendants will run a search pursuant to this Request for the terms (i) "Lance Hill", (ii) his pseudonym, "David Lee Henry", and (iii) "Lady Amos" without the limitation found in your Response that documents be 'in connection' with United Artists' 'acquisition' of the screenplay.

**"Agreements Concerning Hill and/or Lady Amos":** During the conference, you stated that Request Nos. 8-10 were "vague." We, however, explained in our November 22 letter that documents responsive to these Requests include "(1) agreements relating or referring to Hill, Lady Amos and/or the Work; (2) drafts and iterations of said agreements; and (3) documents reflecting negotiations thereof." And during the conference, we further noted that documents responsive to these Requests would include "any agreements referring to Hill, Lady Amos, or the work regardless of whether they were in connection with the production of the 1989 or 2024 film." Please confirm that you understand the categories of documents responsive to Request Nos. 8-10 and that you will produce said documents without the qualification that they only include agreements 'with' Hill or Lady Amos.

**Development of the Story and Screenplay for the 1989 Film and 2024 Remake:** In their written responses to Request Nos. 11-15, Defendants only agreed to produce "versions of the screenplay" for the 1989 and 2024 films. We, in turn, indicated in our November 22 letter as well as during the conference that these Requests were not limited to this narrow category of documents. These Requests also encompass development of the 'Story' (a clearly defined term) for each of the *Road House* films as well as treatments and outlines. As we explained during the conference, these Requests are likely to lead to the discovery of evidence concerning evolution of the 2024 remake, the timeline for its completion (itself relevant to Defendants' argument that it did not "utilize" the work post-termination) and infringement, including the incorporation of discrete copyrightable elements from Hill's work. Likewise, we disposed of your argument on the December 5 call that documents concerning development of the story and screenplay of the 1989 film would only be relevant if Hill were suing for infringement of his work by that film. As we explained, if writers for the 2024 film lifted expressive elements from the 1989 film, and writers for the 1989 film in turn did the same with respect to Hill's work (as is likely), then documents as to each film will be relevant. Counsels' discussion of Request No. 15 during the conference all but proves the relevance and reasonableness of these Requests: At first you stated of Request No. 15: "This is premature. There is no official evolution.

Exhibit 11
184

**TOBEROFF & ASSOCIATES, P.C.**

December 11, 2024
Wook Hwang
Page: 6

We have no objection to this in principle but we stand by this because of the burden." In response we noted that "Producers and production companies keep meticulous details. Writers have detailed schedules, including with regard to drafts, polishes and rewrites. You have those." You indicated that you agreed, remarking, "Okay, this is one we will probably give to you." When asked for a firm "commitment," however, you again demurred. We gave numerous examples of responsive documents beyond drafts of the screenplay, such as emails and attachments among writers, producers, and others, because, as we noted "You often get notes in the margins as to those drafts." You did not dispute the relevance of such documents, and responded, "We can expand this beyond screenplay iterations. But, we aren't going to look through emails." You again turned to your burden objection. As you should know, there is little burden in performing a search of emails among a small number of identified individuals. We ask you to confirm that Defendants will produce the categories of documents specified by Request Nos. 11-15 to include electronically stored information and not simply versions of the screenplays for the 1989 and 2024 films.

**Documents Concerning Your Characterization of the 2024 Remake:** During the conference as well as in our letter, we noted that your response to Request No. 31, which limited the category of documents Defendants agreed to produce to "publicly distributed marketing and advertising material for the 2024 film," was improper. You suggested you were amenable to changing Defendants' response to include internal/non-publicly released documents. However, you coupled that willingness with an improper limitation that the documents "refer[] to Lady Amos, Hill, or the screenplay." When we said that was not what we requested, you replied, "It's a burden issue." As we have repeatedly emphasized in this letter and previously, Defendants' burden objection is without merit. We therefore ask you to confirm that Defendants will produce documents responsive to Request No. 31 as written, i.e., "Documents Concerning Your description or characterization of the 2024 Remake, Including in Your marketing and/or publicizing of the 2024 Remake."

**Communications With Writers Concerning Hill, Lady Amos, and the Development of the 2024 Remake.** You indicated during the conference that Defendants would agree to produce documents responsive to Request No. 32. In addition you agreed in principle that you would not limit the search to credited writers for the 2024 film. Please confirm Defendants will produce documents responsive to Request No. 32 as written.

**Communications With Other Defendants:** You also agreed to produce documents for Request No. 35. Please confirm Defendants will produce documents responsive to Request No. 35 as written.

**Communications With Writers:** You indicated Defendants were willing to produce documents in response to Request No. 40. However, you then repeated your prior refusal to search ESI, proclaiming, "We are not looking through emails, only maintained files." This will not do. Please confirm that you will produce documents responsive to Request No. 40 as written, including from email accounts in your possession, custody, or control.

**Documents Concerning Your Characterization of the Work, 1989 Film, and 2024 Remake:** You refused to produce documents responsive to Request Nos. 16-30 on the ground that, in your opinion, they were "not relevant." Documents containing your clients' characterization of the works and their elements are well within the scope of discovery. *See e.g., Symettrica Ent. LTD. v. UMG*

Exhibit 11
185

**TOBEROFF & ASSOCIATES, P.C.**

December 11, 2024
Wook Hwang
Page: 7

*Recording, Inc.*, 2020 WL 13311700, at *7 (C.D. Cal. Apr. 30, 2020) (internal analysis regarding copyrighted work was "highly relevant"). We noted during the conference that these characterizations are relevant to identify and establish an objective assessment of the extrinsic test criteria and to "impeach your description of [the same criteria for] the film and screenplay," i.e., "to see whether you're consistent [regarding the extrinsic elements] or changed your position in response to the lawsuit." Please confirm that you will produce documents responsive to Request Nos. 16-30.

**Communications Concerning This Action:** You said during the conference that you would "get back to us" on Request Nos. 36-39. Documents concerning this action are plainly relevant to the issues in this case, including both the contract and copyright claims as well as the subsidiary issues raised by them. It strains credulity to maintain (as you must) that documents responsive to these requests will not address relevant issues or point to other documents which will. Any such documents that are non-privileged must be produced. Please confirm that you will produce documents responsive to Request Nos. 36-39.

**Interviews with Talent:** We agreed to withdraw Request No. 41.

**Standard Terms:** We stated during the conference that for Request No. 42, "We are not asking for all agreements. The production companies have forms. You can produce those—the forms used for loan-out companies." We further explained that these documents are relevant to several of our arguments including "the contract is an 'agreement to the contrary' [under the termination provisions of the Copyright Act], a contract of adhesion, unconscionable, and contains a boilerplate work-for-hire clause." You once again stated you would need to discuss this Request with your client, as you apparently had not done so after receiving our November 22 letter. Please confirm that you will produce documents responsive to Request No. 42.

**Artificial Intelligence:** You stated during the conference that Request No. 58 was irrelevant. However, we noted that Defendants' use of artificial intelligence, a drastic measure in direct violation of Defendants' collective bargaining agreements with the WGA, DGA and SAG, is indeed relevant to show that Defendants rushed to complete the 2024 film—which was nowhere near done prior to the effective termination date—and took such drastic measures because they were well aware that Hill's termination notice was valid. As such, this Request is relevant to the issues in this case, including to your "Derivative Works Exception" defense under 17 U.S.C. § 203(b)(1). *See* Defs.' Answer, Affirmative Defense No. 7; *see also id.* ¶ 64 (denying allegation that "The 2024 Remake was not completed until well after the 1986 Grant had been statutorily terminated" and that it therefore "does not qualify for the 'prior derivative works exception' to statutory termination, 17 U.S.C. § 203(b)(1)."). Please confirm that you will produce documents responsive to Request No. 58.

Very truly yours,

*Spencer R. Gibbs*
Spencer R. Gibbs

Exhibit 11
186