# EXHIBIT 12

Exhibit 12
187

**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
30 Rockefeller Plaza
New York, New York 10112-0015
212.653.8700 main
212.653.8701 fax
www.sheppardmullin.com

Wook Hwang
212.634.3054 direct
whwang@sheppardmullin.com

December 12, 2024

File Number:  01WA-388821

**VIA E-MAIL (mtoberoff@toberoffandassociates.com)**

Marc Toberoff
Toberoff & Associates, P.C.
23823 Malibu Road, Suite 50-363
Malibu, California 90265

> **Re:**     *Hill v. Metro-Goldwyn-Mayer Studios Inc.*, **Case No. 2:24-cv-01587-HDV-SSC**

Dear Marc:

As we advised we would during our December 5, 2024 meet-and-confer, this responds to your firm's November 22, 2024 letter purporting to identify deficiencies in the Studio Parties' responses and objections to the Hill Parties' first set of requests for the production of documents (collectively, the "RFPs").  We are also in receipt of your firm's December 11, 2024 letter, sent to us late yesterday evening, purporting to characterize our discussions and agreements reached during our December 5 meet-and-confer.

Given when your December 11 letter was sent, at 9:19pm the night before we advised that we would respond, we will not respond to the litany of false statements and mischaracterizations in that letter except to the extent relevant to our attempts to reach a resolution on the issues you have raised.  As an initial matter, however, the lengthy statements you purport to quote from our December 5 discussion suggests that your firm created a recording of our meet-and-confer. Please advise whether that is the case and, if so, provide us with a copy.

Turning to the substantive issues raised in your letters, the Studio Parties respond as follows.

### I.     Status of the Studio Parties' Document Production

During our December 5 call, you demanded for the first time that the Studio Parties make an initial document production by Friday, December 13, 2024, and threatened to file a motion to compel should the Studio Parties fail to comply with this hastily and unilaterally set deadline.  The Hill Parties only recently produced a handful of documents on November 22, 2024 (on the eve of the Thanksgiving holiday)—consisting almost entirely of publicly available documents and materials the Studio Parties themselves filed as exhibits to their counterclaims[1]—yet you claim that the Studio Parties' failing to comply with your deadline would constitute "bad faith" and subject the Studio Parties to sanctions.

---

[1] By separate letter we will be sending you next week, the Studio Parties will set forth the myriad deficiencies in the Hill Parties' discovery responses.

Exhibit 12
188

**SheppardMullin**

Marc Toberoff
December 12, 2024
Page 2

The Hill Parties can of course proceed as you and your clients deem appropriate.  But as we explained during the meet-and-confer, contrary to the tactically motivated vitriol in your letters, the Studio Parties have been diligently engaged in collecting and preparing for the organized production of non-privileged documents responsive to the Hill Parties' RFPs.  The expansive scope of the Hill Parties' requests, plus the number of people involved in any film's development, has required the Studio Parties to collect materials from a multitude of sources and custodians. The Studio Parties are not stonewalling discovery, as their document production will bear out, and have no desire to prejudice the Hill Parties in discovery.  Indeed, as we explained, we will consent, if necessary, to a joint request for any reasonable continuance of the schedule for the parties to have a full and fair opportunity to discover the facts probative of the issues in this case.

We anticipate commencing production of documents no later than the end of next week, provided that the stipulated protective order we have sent you has been entered by that time.  The review and production of ESI, for reasons we explained, must proceed more systematically.  Please know, however, that we and our clients are proceeding as expeditiously as possible and expect to be in a position to commit to a deadline for substantial completion in short order.

## II.      The Studio Parties' Objections

Your December 11 letter wrongly contends that the Studio Parties' objections are improper for failing to advise whether responsive documents are being withheld on their basis.  As is already facially clear from the RFP responses, the Studio Parties have specified the exact categories of documents they agree to produce in response to each RFP.  Concomitantly, where the Studio Parties have not agreed to produce documents in response to a RFP, the Studio Parties are not agreeing to produce responsive documents.  As we explained during the December 5, 2024 meet-and-confer, the objections are the foundation for the limitations included in each of the responses, and no documents will otherwise withheld based solely on the objections themselves where the Studio Parties have specified the categories of documents they will produce.[2]

## III.     Specific RFPs Addressed in Your Letters

### "All" documents concerning Hill and/or Lady Amos (RFP No. 2)

As we explained on our call, the Studio Parties' response to this RFP was keyed to its manifest overbreadth, as it seeks documents "concerning" Hill or Lady Amos that have nothing to do with the original script, the 1989 film, the 2024 film, nor any of the factual issues surrounding the claims and defenses asserted by the parties.

The Studio Parties have not only agreed to produce documents "concerning Hill or Lady Amos in connection with United Artists' acquisition of the Work"—i.e., the 1986 transaction at the core of this case—but have agreed to produce numerous categories of documents in response to other

---

[2] As to your letters' contention that the Studio Parties must somehow prove the basis for their objections in their responses, that is obviously wrong.   No principle requires the objecting party in its discovery *responses* to make any evidentiary showing to support its objections.  That obligation arises, of course, in the context of discovery *motions*.

Exhibit 12
189

**SheppardMullin**

Marc Toberoff
December 12, 2024
Page 3

RFPs that are also responsive to this unlimited request, including: documents concerning Hill's copyright registration (RFP No. 3); agreements concerning the 1986 Screenplay, drafts or iterations thereof, and communications reflecting their negotiation (RFP Nos. 5, 6, 7); agreements with Hill or Lady Amos, drafts or iterations thereof, and communications reflecting their negotiation (RFP Nos. 8, 9, 10); communications with writers, the director, and among defendants concerning Hill, Lady Amos or the 1986 screenplay in connection with the making of the 2024 film (RFP Nos. 31, 32, 33, 35); and documents concerning Hill's screen credits on the 2024 film (RFP No. 34). In other words, the Studio Parties have agreed to produce all categories of documents concerning Hill or Lady Amos bearing any relevance to the works at issue and/or the parties' claims and defenses with respect thereto. Accordingly, the Studio Parties stand on their objections and original responses.

### Unspecified categories of agreements and related documents "relating to" Hill and/or Lady Amos (RFP Nos. 8-10)

These RFPs request agreements "concerning Hill and/or Lady Amos," prior drafts or iterations thereof, and documents reflecting their negotiation. Per their response, the Studio Parties have agreed to produce all agreements *with* Hill or Lady Amos, drafts or iterations thereof, or negotiations relating to any such agreements. As we indicated might be the case, the Studio Parties now also agree to produce agreements with the writers of the 1989 and 2024 films that specifically reference Hill or Lady Amos, to the extent such agreements can be located with a reasonably diligent search.

You advised on our call that this would not suffice because there may be other categories of agreements that "relate to" Hill or Lady Amos other than those agreements where either is a party or is mentioned. You could not explain what types of agreements these might be, and refused to clarify in writing the types of agreements the Hill Parties could be seeking. And your December 11 letter merely parrots the same confusing demand set forth in your prior November 22 letter for all other agreements "relating to" Hill or Lady Amos.

Accordingly, the Studio Parties stand by their response, with their additional agreement to produce other writer agreements for the 1989 and 2024 films that specifically reference Hill or Lady Amos (if any). Attempting to locate any other agreements "relating to" Hill or Lady Amos, even if we understood what that meant (we do not), would be unduly burdensome and provide no information of any relevance to the issues in this case. Please advise whether the parties are in agreement on these RFPs.

### "All" documents and communications concerning the development of the story and screenplay for the 1989 and 2024 films (RFP Nos. 11-15, 32, 35, and 40)

These RFPs request all documents concerning development of the story and screenplay of the 1989 and 2024 films, irrespective of whether they mention Hill, Lady Amos, the 1986 screenplay or the 1989 film. In other words, the Hill Parties demand production of *every single document and communication* concerning any aspect of development on two separate films. These requests are facially overbroad and absurd.

Exhibit 12
190

**Sheppard**Mullin

Marc Toberoff
December 12, 2024
Page 4

As we explained during the December 5 call, the Studio Parties have agreed to produce the following categories of documents:

- In response to RFP Nos. 11, 12, 15, and 40, all versions of the screenplay for the 1989 and 2024 films.  Additionally, as we indicated on the call, in response to RFP Nos. 11, 12, 15, and 40, the Studio Parties now further agree to produce all written materials for the story and screenplay (including, e.g., "drafts, iterations, outlines, treatments and versions" (*see* RFP No. 15)) to the extent these materials are in the files maintained for the evolution of the script on either film—for example, in the WGA credit files we discussed.  In other words, the production will not be limited to "screenplays" to the exclusion of outlines, treatments, or other written materials in any such files.

- In response to RFP Nos. 13 and 14, documents and communications referencing the 1986 screenplay or the 1989 film in the development of the screenplay for the 2024 film.

- In response to RFP Nos. 31, 32, 33, and 35,[3] communications with writers and the director and among defendants concerning Hill, Lady Amos, or the 1986 screenplay in connection with the making of the 2024 film.

- In response to RFP Nos. 49-57, documents showing the dates of completion of the different iterations of the 2024 film; the production, shooting, and/or postproduction schedules for the 2024 film; and documents showing the completion dates of principal photography, last reshoot and/or pickup, the "picture locked" cut, the final audio mix, the visual effects, the color grading, and the printmaster for the 2024 film.

During the call, we explained that these categories of documents would encompass all of the various hypothetical materials you imagined might be of relevance.  Your December 11 letter underscores this point.  For instance, you seek evidence of "the timeline for [the 2024 film's] completion (itself relevant to Defendants' argument that it did not 'utilize' the work post-termination) and infringement, including the incorporation of discrete copyrightable elements from Hill's work."  The above categories of materials, which the Studio Parties have agreed to produce, include all materials that could bear on any of these contentions and issues.  The only other hypothetical in your letter—that "if writers for the 2024 film lifted expressive elements from the 1989 film, and writers for the 1989 film in turn did the same with respect to Hill's work (as is likely), then documents as to each film will be relevant"—is also encompassed by the documents and communications referencing Hill, Lady Amos, the 1986 screenplay, *or* the 1989 film in the development of the 2024 film's screenplay that the Studio Parties have already agreed to produce.

Under no circumstances, however, will the Studio Parties review and turn over virtually every *other* document or communication pertaining to the development of the 2024 film regardless of whether they mention Hill, Lady Amos, the 1986 screenplay, or the 1989 film.  Such documents

---

[3] Regarding RFP No. 32, this will confirm our discussion that the Studio Parties' production will not be limited to communications only with credited writers.

Exhibit 12
191

**SheppardMullin**

Marc Toberoff
December 12, 2024
Page 5

have no relevance to any of the parties' claims and defenses and, indeed, effectively provide the entire roadmap for a film's development that no confidentiality order can adequately protect.

Please advise whether the parties are in agreement on these RFPs in light of the Studio Parties' agreement to produce the additional written materials on the 1989 and 2024 films noted above.

**Documents showing the Studio Parties' "description or characterization" of the themes, plot, characters, settings, moods, pace, dialogue, and all other aspects of the 1986 screenplay, 1989 film, and 2024 film (RFP Nos. 16-31)**

You explained on our call and in the December 11 letter that the endless swaths of materials reflecting the Studio Parties' "description or characterization" of every element of these three works could bear on the substantial similarity determination.  That is wrong.  As your letter itself notes, the substantial similarity is an *objective* one as to which the parties' own "descriptions or characterizations" are irrelevant.  *See, e.g., Carroll Shelby Licensing, Inc. v. Halicki*, 643 F. Supp. 3d 1048, 1053-54 (C.D. Cal. 2022) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 52 (2d Cir. 1986)) ("[I]n copyright infringement cases the works themselves supersede and control contrary descriptions of them.  As the finally released version of the film was the best and most relevant evidence on substantial similarity, the judge was not required to consider the voiceover version in deciding the motion for summary judgment."); *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984) (engaging in "independent review of works" when applying substantial similarity test and noting that "lists of similarities" by the parties are "inherently subjective and unreliable.").

To the extent any such materials could bear any relevance (they do not), the Studio Parties have, as discussed above, already agreed to produce the written materials showing the iterations of the story and screenplay of the 1989 and 2024 films; documents and communications referencing the 1986 screenplay or the 1989 film in the development of the screenplay on the 2024 film; and communications with writers, the director and among defendants concerning the 1986 screenplay in connection with the making of the 2024 film.  While even these materials do not bear any relevance to the objective substantial similarity inquiry, they would more than suffice to establish any reliance on the 1986 screenplay in connection with the development of the 2024 film. Additionally, in response to RFP No. 31, the Studio Parties have further agreed to produce publicly distributed marketing and advertising material for the 2024 film.

Beyond their irrelevance, these requests impose the same extraordinary burden as the group of requests discussed above, as they would require the Studio Parties to review virtually every document and communication relating to the 1989 and 2024 films to determine whether any "description or characterization" may have been made of either of these works before, during, or after their development.  The Studio Parties will not undertake this burden absent a Court order, particularly in view of the broad categories of documents they have already agreed to produce.

Exhibit 12
192

**SheppardMullin**

Marc Toberoff
December 12, 2024
Page 6

**All communications with writers or the director or among the Studio Parties "concerning the Action" (RFP Nos. 36-39)**

You could not explain on our call how communications concerning this lawsuit, to the extent they are not otherwise encompassed in the materials the Studio Parties have agreed to produce, could bear any relevance to any of the issues in the case.  Neither of your letters provide any explanation other than to offer the rhetorical and conclusory assertion that "[d]ocuments concerning this action are plainly relevant to the issues in this case."

We disagree that any such materials (again, beyond the materials the Studio Parties have agreed to produce) could be bear relevance to the factual and legal issues in *this* case.  Under like circumstances, the courts concur.  *See, e.g., In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 09-CV-01967 CW NC, 2012 WL 629225, at *6–7 (N.D. Cal. Feb. 27, 2012) (denying motion to compel production in response to "overly broad" request for "[a]ny documents referencing or referring to the present litigation"); *Glaukos Corp. v. Ivantis, Inc.*, No. 818CV00620JVSJDEX, 2019 WL 1960270, at *2-3 (C.D. Cal. Jan. 24, 2019) (RFP seeking "[a]ll documents and communications referring or relating to Glaukos, this lawsuit [among other things]" deemed "facially overbroad, including its reference to 'this lawsuit'").

**Documents showing "standard and/or usual terms" in agreements over a 10-year span from 1978 through 1987 (RFP No. 42)**

You claimed on our call, and again in your December 11 letter, that any purportedly "standard or usual" terms over a decade-long span could establish that the 1986 LPA is an unenforceable contract of adhesion and thus (somehow) bear relevance to the Hill Parties' position that it constitutes an "agreement to the contrary."  That too is wrong.  It is axiomatic, of course, that, as a general matter, "[a] party who is bound by a contract is bound by all its terms, whether or not the party was aware of them."  *Tabas v. MoviePass, Inc.*, 401 F. Supp. 3d 928, 937 (N.D. Cal. 2019).  And here, the Hill Parties can hardly claim that—represented by one of the most powerful talent agencies in the world and employing a loan-out vehicle Hill himself created 10 years earlier for his own financial ends which received hundreds of thousands of dollars in remuneration as a result of this purportedly "unconscionable" "contract of adhesion"— they were somehow duped into and not bound by the terms of the 1986 LPA.  *See, e.g., Carbajal v. HSBC Bank U.S.A., N.A.*, No. CV 16-9297 PSG FFM, 2017 WL 7806587, at *3 (C.D. Cal. Sept. 1, 2017) (no procedural unconscionability "given that Plaintiff was represented by an agent at the sale [among other reasons].").

That fanciful and utterly implausible theory does not warrant the discovery burden this RFP seeks to impose, likely requiring the Studio Parties to review 10 years' of agreements on an untold number of projects *in which neither Hill nor Lady Amos had any involvement*.  With respect to the Hill Parties' argument that the 1986 LPA constitutes an "agreement to the contrary," these other agreements have no bearing whatsoever on Hill's employment with his own loan-out company.

Accordingly, the Studio Parties stand by their objections.

Exhibit 12
193

**SheppardMullin**

Marc Toberoff
December 12, 2024
Page 7

**All documents concerning the use of "artificial intelligence" in the 2024 film (RFP No. 58)**

As you well know, the headline-grabbing (and, incidentally, false) allegation in the complaint that "artificial intelligence" was used in the 2024 film is utterly irrelevant to any of the issues in this case.  You were unable to provide any explanation as to why that might not be the case during the December 5 meet-and-confer.  Your December 11 letter grasps at straws by manufacturing the purported justification that any responsive materials might "show that Defendants rushed to complete the 2024 film" and that any such evidence might be relevant to the Studio Parties' defense pursuant to the "derivative works exception."

Whether defendants "rushed" to complete the film has no bearing on the applicability of the derivative works exception, 17 U.S.C. § 203(b)(1) ("A derivative work prepared under authority of the grant before its termination may continue to be utilized under the terms of the grant after its termination….").  That inquiry turns on the state of the film prior to the effective date of termination and the Studio Parties' uses of those materials thereafter—issues as to which the Studio Parties have already agreed to provide materials in response to RFP Nos. 49-57.  Accordingly, the Studio Parties will not engage in this press-hunting sideshow and stand by their objections.

Please let us know if you would like to discuss any of the foregoing issues further.

Sincerely,

Wook Hwang
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

cc:     All counsel of record

SMRH:4921-6758-4260

Exhibit 12
194