# EXHIBIT 13

Exhibit 13
195

# TOBEROFF

Toberoff & Associates, P.C. 23823 Malibu Road
Suite 50-363
Malibu, CA 90265
Telephone: +1 310 246 3100

**Marc Toberoff**
Direct Line: +1 310 246 3333
mtoberoff@toberoffandassociates.com

January 19, 2026

*Via Email*

Wook Hwang
whwang@sheppardmullin.com
Dylan J. Price
dprice@sheppardmullin.com
Paul A. Bost
pbost@sheppardmullin.com

*Attorneys for Defendants Metro-Goldwyn-Mayer Studios Inc., Amazon Studios LLC & United Artists Pictures Inc.*

Re:     Defendants' Responses to Hill's First Sets of Request for Production and Defendants'
        December 12, 2024 Letter, *Hill v. Metro-Goldwyn-Mayer Studios Inc., et al*, No. CV 24-
        1587 HDV (SSCx) (C.D. Cal.)

Counsel:

I write with respect to Defendants' respective Responses and Objections to Plaintiff R. Lance Hill's First Sets of Requests for Production of Documents (each dated September 20, 2024) (the "Responses") and the meet and confer process that was initiated as to the same, including Defendants' December 12, 2024 Letter. More specifically, with this case proceeding at pace in all respects following the recent appeal dismissal, I write to resume the meet and confer process as to the Responses, which stalled after your December 12, 2024 letter. Given the approaching May 27, 2025 fact discovery cut-off date and Defendants' continued failure to produce documents despite having had them collected since at least December 2024, further delay is unacceptable. Accordingly, Plaintiff hereby requests a meet and confer session under Local Rule 37-1 with respect to the Responses. Please provide your availability for a meet and confer session (note that this session must occur within 10 days of this letter pursuant to Local Rule 37-1).

As you know, we met and conferred as to the Responses on December 5, 2024. Thereafter, on December 11, 2024, we sent you a follow-up letter. Then, on December 12, 2024, you sent us your own follow-on letter. We have reviewed your December 12, 2024 letter and we stand

behind our December 11, 2024 letter.  As explained in our prior meet and confer session and in our December 11, 2024 letter, Defendants Responses are deficient, including because the objections to the at issue requests are not well taken.  Defendants must produce fully, fairly, and promptly.

In your December 12, 2024 letter ("the Letter"), you stated that "the Studio Parties have been diligently engaged in collecting and preparing for the organized production of non-privileged documents responsive to the Hill Parties' RFPs" and that you "anticipate commencing production of documents no later than the end of next week, provided that the stipulated protective order we have sent you has been entered by that time."  A Stipulated Protective Order was entered on February 18, 2025.  *See* Dkt. No. 49.  Please provide a near term date certain by which you will make the substantial production that was long ago promised.  You also stated that you "expect to be in a position to commit to a deadline for substantial completion in short order."  Please provide a near term production completion date.

With respect to **RFP No. 2**, you said that you "stand on [your] objections and original responses."  We maintain that your responses are deficient and your objections not well taken.  The request is reasonably tailored to the scope of this case and the relationship of the parties.  As pointed out prior, you have failed to identify any dealings between Plaintiff (and his loan-out entity) and Defendants other than those at issue in this case.  Indeed, attempting to restrict your ESI search to documents "concerning Hill or Lady Amos in connection with United Artists' acquisition of the Work," as you propose, entails more burden than simply searching for documents concerning Hill and Lady Amos.  Moreover, this artificial limitation would exclude highly relevant documents, such as communications concerning Defendants' decision to proceed with the 2024 Remake notwithstanding Hill's Termination, Defendants' internal assessments of Hill's termination rights, and documents concerning the completion timeline of the 2024 Remake—all of which are plainly relevant to the claims and defenses in this case.  Further, your argument that you need not agree to undertake a reasonable search as to this RFP, because you "have agreed to produce numerous categories of documents in response to other RFPs that are also responsive," is particularly disingenuous, given you then point to RFPs (e.g., RFP Nos. 8-10, 32, and 35) that you have not agreed to fully comply with.

With respect to **RFP Nos. 8-10**, you asked "whether the parties are in agreement."  We are not.  While we thank you for agreeing to produce other writer agreements for the 1989 and 2024 films that specifically reference Hill or Lady Amos in addition to the documents you agreed to produce in your original responses to these requests, we maintain that you must fully comply with the requests.  You seem to contend that we are not entitled to additional documents that fall within our requests unless we meet some burden to articulate specific examples of those documents.  But we bear no such burden.  While taking discovery would certainly be an easier proposition for us if we knew exactly what documents you have concerning agreements with Hill and Lady Amos, we do not have perfect insight into what you have; only you do, hence the need for discovery in the first place.

2
Exhibit 13
197

With respect to **RFP Nos. 11-15, 32, 35, and 40**, you asked "whether the parties are in agreement."  We are not.  For one, Defendants attack on these requests as too broad rests on erecting a request that was never made.  Defendants contend that the requests call for every document and communication relating to the making of the 2024 film.  *See, e.g.,* Letter at p. 4-5 ("Under no circumstances, however, will the Studio Parties review and turn over virtually every other document or communication pertaining to the development of the 2024 film …. Such documents have no relevance to any of the parties' claims and defenses and, indeed, effectively provide the entire roadmap for a film's development ….).  But no "all documents relating to the making of the film" request was served.  For example, RFP Nos. 11 and 12 are appropriately tailored to the mattes put at issue in this case, as they are limited to "Documents … Concerning the development of the story and screenplay" for the films and do not seek all documents related to the making of the films.  Defendants cannot avoid their discovery obligations by erecting their own versions of Plaintiff's requests to knockdown; instead, they must fairly and fully respond to the requests actually made.  Further, your Letter admits that the sought documents are relevant in offering "to produce all written materials for the story and screenplay … to the extent these materials are in the files maintained for the evolution of the script on either film."

These admittedly relevant documents must be searched for and produced, and there is no basis for limiting your search to a specific set of files.  Defendants must undertake a reasonable ESI search, including of email repositories, for documents concerning the development of the story and screenplay for both the 1989 Film and the 2024 Remake.  Given that Defendants claim the 2024 Remake is a permissible derivative work under 17 U.S.C. § 203(b)(1), documents showing what creative elements were developed before versus after the November 11, 2023 Termination date are directly relevant to Defendants' own defense.

Moreover, your Letter's confidentiality objection is utterly baseless; so much so that the Responses contain no confidentiality objections within their specific responses, the only unqualified confidentiality objections are general and limited to trade secrets, and your general confidential commercial information objections state that you will produce such documents subject to entry of a protective order.  Unless your contention is that the requested documents are trade secrets you have undoubtably waived your confidentiality objection.  Assuming you have not also waived your trade secret objection, your contention that a protective order will not protect any information that actually qualifies as a trade secret is meritless.  Parties produce trade secret information in litigation all the time.  To contend that you cannot provide your "entire roadmap for a film's development" (assuming that were even the request at issue, it is not), because "no confidentiality order can adequately protect" it is preposterous.  If tech behemoths must produce their source code as to their core products in discovery, a studio can produce its roadmap as to a duo of films.[1]

---

[1] Of course, we do not agree that this material is necessarily confidential (much less a trade secret) in the first place.  While we do not have the documents and so cannot make a full assessment, it stands to reason that much of what is called for (if not all) would not warrant a confidentiality designation much less sealing.

With respect to **RFP Nos. 16-31**, you stated that the "Studio Parties will not undertake this burden absent a Court order." We maintain that your responses are deficient and your objections not well taken, and we intend to seek a court order absent you agreeing to produce the requested documents as part of this meet and confer process. The requested documents are clearly relevant. You must undertake a reasonable search and fairly produce. While your Letter reiterates your contention that the requested documents are not relevant, they are, as we for example explained in our December 11, 2024 letter (citing *Symettrica Ent. LTD. v. UMG Recording, Inc.*, 2020 WL 13311700, at *7 (C.D. Cal. Apr. 30, 2020).[2] And the cases cited in your Letter do not change that.

With respect to **RFP Nos. 36-39**, you stated that "[w]e disagree that any such materials … could bear relevance to the factual and legal issues in this case." As you know, we disagree. Documents concerning this very case are per force relevant to this case. More, these requests are reasonably tailored. These requests do not seek all documents concerning this case; rather, these requests are limited to communications amongst specific sets of persons.

With respect to **RFP Nos. 42**, you stated that "the Studio Parties stand by their objections." We maintain that your responses are deficient and your objections not well taken. The requested materials are highly germane to this case, especially in light of your counterclaims and defenses. As we explained during the December 5, 2024 conference (and reiterated in our follow-up letter), these documents go to at least the following issues with respect to the Literary Purchase Agreement: (1) whether it is an "agreement to the contrary" under 17 U.S.C. § 203 (a)(5); (2) whether it is a contract of adhesion; (3) whether it is unconscionable; and (4) whether it contains a boilerplate work-for-hire clause. Indeed, Documents showing Defendants' standard terms for acquiring literary material during the relevant period are directly probative of whether such boilerplate provisions were routinely inserted regardless of actual authorship circumstances— precisely the point Hill intends to establish. Your refusal to produce these documents while

---

[2] *See also Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 732 (8th Cir. 2006) ("Direct evidence of copying is rarely available because it includes evidence such as party admissions, witness accounts of the physical act of copying, and common errors in the works of plaintiffs and the defendants …. [¶] Rottlund offered some direct evidence of copying, including a purported party admission and certain internal memos by Appellees"); *Tolkien Trust v. Polychron*, No. 2:23-cv-04300-SVW-E, 2023 WL 9471264, at *6 & 8 (C.D. Cal. Dec. 14, 2023) ("Polychron's admission that he attempted to keep his book as closely tied to TLOR is direct evidence that he copied TLOR;" "The similarities between the works are extensive and well-documented by Plaintiffs in their complaint. Moreover, there is a plethora of evidence that Defendant knowingly appropriated countless elements of TLOR for the creation of his unauthorized sequel"); *Friedman v. Live Nation Merchandise, Inc.*, 833 F.3d 1180, 1186 (9th Cir. 2016) ("'[A] finding of 'willfulness' in this context can be based on either 'intentional' behavior, or merely 'reckless' behavior.' 'To prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights.' [¶] A determination of willfulness requires an assessment of a defendant's state of mind") (citations omitted).

simultaneously relying on the 1986 Agreement's terms to attempt to defeat Hill's termination rights is inconsistent and prejudicial.

Your Letter cherry picks the contract of adhesion argument to respond to and then blithely asserts without explanation that "[w]ith respect to the Hill Parties' argument that the 1986 LPA constitutes an 'agreement to the contrary,' these other agreements have no bearing whatsoever on Hill's employment with his own loan-out company." First, the "agreement to the contrary" argument pertains to Plaintiff's contention that the Literary Purchase Agreement is an "agreement to the contrary" not any contention by you that Hill was his loan-out company's employee. Your standard terms concerning the acquisition of literary materials during the specified period are clearly relevant to the actual issue: your wrongful attempt to deprive an author of his 17 U.S.C. § 203 termination rights. Second, your Letter argues the facts on adhesion. The fact that you have a different view of the facts does not render Plaintiff's request irrelevant. Further, the sought documents are also relevant to the causation element of your breach claim.

These documents are relevant and must be produced. *Cf. Copeland Corp. v. Choice Fabricators, Inc.*, No. 3:04CV398, 2007 WL 9717680, at *2 (S.D. Ohio Apr. 6, 2007) ("A party's business transactions with third parties in similar circumstances may be relevant to prove the probable terms or meaning of terms of a disputed agreement. Contracts of a party with third persons may show a customary practice and course of dealing and be highly probative on the terms of the present agreement …. [¶] The evidence regarding Copeland's contracts and dealings with other suppliers is relevant to the issue of whether Choice sought a modification of the price term in good faith. Moreover, Choice seeks to show that Copeland had an established custom or business practice to adjust prices, because of market exigencies, without later attempting to recoup the amount paid; this occurred even though the adjustments made to the prices were done under protest, because the protest language in the letters was ignored by Copeland, other suppliers, and Choice. [¶] Therefore, the evidence is relevant to the issues and facts of the case").

With respect to **RFP No. 58**, you stated that "the Studio Parties … stand by their objections." We maintain that your responses are deficient and your objections not well taken. Whether Defendants took the extraordinary step of using artificial intelligence to attempt to accelerate completion of the 2024 Remake is highly relevant to multiple issues in this case. First, it bears directly on when the film was actually completed—a central issue given the November 11, 2023 Termination effective date. Second, it is probative of Defendants' state of mind regarding Hill's Termination, as the Complaint alleges that Defendants' use of AI during the SAG strike to replicate actors' voices for ADR purposes reflects 'extreme measures' taken by companies that knew Hill's Termination was valid. Third, such conduct would constitute violations of the SAG-AFTRA and DGA collective bargaining agreements, further evidencing willfulness. The fact that production of these documents may generate unfavorable publicity or have consequences unrelated to this action is not a valid objection. Parties routinely produce embarrassing or damaging documents in discovery; that is the nature of civil litigation.

If Defendants do not commit to (1) commencing substantial production within fourteen (14) days of this letter, (2) completing production within forty-five (45) days, and (3) curing the deficiencies in their written responses as outlined herein and in our prior correspondence, Plaintiff will have no choice but to seek an informal discovery conference with Magistrate Judge Christensen pursuant to her Civil Procedures, followed by a formal motion to compel and for sanctions if necessary.  Given the fact discovery cut-off of May 27, 2025, Plaintiff cannot afford further delay.

Sincerely,
*/s/ Marc Toberoff*
Marc Toberoff
