# EXHIBIT 14

Exhibit 14
202

# TOBEROFF

Toberoff & Associates, P.C. 23823 Malibu Road
Suite 50-363
Malibu, CA 90265
Telephone: +1 310 246 3100

**Darrell R. Atkinson**
datkinson@toberoffandassociates.com

February 10, 2026

*Via Email*

Wook Hwang
whwang@sheppardmullin.com
Dylan J. Price
dprice@sheppardmullin.com
Paul A. Bost
pbost@sheppardmullin.com

*Attorneys for Defendants Metro-Goldwyn-Mayer Studios Inc.,*
*Amazon Studios LLC & United Artists Pictures Inc.*

Re:    Follow-Up On February 3, 2026 Meet and Confer Re Plaintiffs' Discovery Requests, *Hill v. Metro-Goldwyn-Mayer Studios Inc., et al*, No. CV 24-1587 HDV (SSCx) (C.D. Cal.)

Counsel:

I write to follow-up on our February 3, 2026 meet and confer with respect to Defendants' responses to Plaintiff's First Set of Requests for Production of Documents.[1]

Thank you for confirming that Defendants' document production is not complete and that a much more substantial production over the 1042-pages produced to date is forth coming.[2]  Thank you for also confirming that where Defendants have agreed to search for and produce documents, the agreement includes ESI.

**Defendants' Proposed Timeline for Production:**

---

[1] I will write separately as to Hill and Lady Amos' responses to Defendants' First Sets of Requests for Production and Interrogatries and our February 3, 2026 meet and confer.

[2] As to your production to date, you confirmed that where a document indicated that it included an attachment and the attachment was not produced, that meant that the attachment has not or has not yet been located and not that Defendants were withholding the attachment.

On the timing of Defendants' substantial production, you indicated that you expect to be able to make your substantial production in two months' time and said that Defendants would not make their production piecemeal.  This is unacceptable.  Defendants were served with these requests 18 months ago.  How can it be that they need another 2 months to make a meaningful production?  Moreover, Defendants additional two months would bring us to the beginning of April.  With fact discovery set to close on May 27 and expert disclosures due June 3, Defendants' delay in making a meaningful production substantially prejudices Hill's and Lady Amos' ability to prepare their cases.

During our meet and confer you indicated that Defendants would agree to request that the Court extend deadlines as necessary to alleviate any prejudice worked by the proposed timing of Defendants' production.  As you know, the Parties recently discussed a case schedule extension.  While Defendants were for such an extension, Hill and Lady Amos were not.  Now it seems you seek to impose your will on Hill and Lady Amos and force an agreement on an extension through a discovery stonewall.  That will not abide.

Please provide a date within the next two weeks by which Defendants will make a substantial document production.  This should be an easy feet for Defendants given your representations 14 months ago that: "the Studio Parties have been diligently engaged in collecting and preparing for the organized production of non-privileged documents" and that "we and our clients are proceeding as expeditiously as possible and expect to be in a position to commit to a deadline for substantial completion in short order."  *See* Defs' Dec. 12, 2024 Letter.

**RFP Nos. 2 and 8-10:**

These requests seek: "All Documents, Including Communications, Concerning Hill and/or Lady Amos;" "All Agreements Concerning Hill and/or Lady Amos;" "All prior drafts or iterations of all Agreements Concerning Hill and/or Lady Amos;" and "All Documents, Including Communications, reflecting negotiations of any Agreement(s) Concerning Hill and/or Lady Amos."  Prior to our meet and confer Defendants agreed to search for and produce documents "concerning Hill or Lady Amos in connection with United Artists' acquisition of the Work."  And, they agreed to search for and produce documents constituting agreements with Hill and Lady Amos, drafts of such agreements, and documents reflecting the negotiation of such agreements in addition to agreements with 1989 Film and 2024 Remake writers that reference Hill or Lady Amos.  During our meet and confer Defendants maintained that they would not agree to anything further as to these requests.

We maintain that Defendants must respond fully to these requests.  This is not a situation where Defendants and Hill/Lady Amos had many dealings such that there are a host of documents concerning other matters.  More, you have already agreed to search for and produce *all* agreements with Hill or Lady Amos and documents reflecting the negotiation of *all* such agreements.

Given the obvious relevance of any documents concerning Hill/Lady Amos and the Work, the 1989 Film, the 2024 Remake, and any follow-up to the 2024 Remake, and that Defendants already agreed to search for and produce *any* agreements that pertain to Hill/Lady Amos and documents reflecting the negotiation of such agreements, Defendants' continued objections to fairly comply with these requests are clearly unwarranted.

Please confirm that Defendants will search for and produce any documents concerning Hill and/or Lady Amos.

**RFP Nos. 5-7:**

These RFPs request: "All Agreements Concerning the Work;" "All prior drafts or iterations of all Agreements Concerning the Work;" and "All Documents, Including Communications, reflecting negotiations of any Agreement(s) Concerning the Work."  In their written responses Defendants already agreed to search for and produce documents responsive to these requests.  However, during our meet and confer it became clear that despite their prior agreement Defendants were refusing to search for and produce their agreements with Hilary Henkin, Joel Silver / Silver Productions, and Rowdy Herrington with respect to the 1989 Film and documents related to those agreements.  Your agreements with the writer, producer, and director (respectively) who took the Work from paper to film are clearly documents concerning the Work.  More, these circa 1986 agreements are relevant to both Hill's copyright claim, as they may evidence the extent to which the 1989 Film was to be based on the Work, and Defendants' breach of contract claim, as they may evidence Defendants' use of standard terms.

Please confirm that Defendants are not in fact trying to renege as to the production of these documents and will promptly produce them.

**RFP Nos. 11-15 and 32-33:**

These requests seek: "All Documents, Including Communications, Concerning the development of the story and screenplay of the 1989 Film; "All Documents, Including Communications, Concerning the development of the story and screenplay of the 2024 Remake;" "Documents sufficient to identify any and all material or sources relied upon in the development of the story or screenplay for the 2024 Remake;" "All Communications Concerning any and all material or sources relied upon in the development of the story or screenplay for the 2024 Remake;" "All drafts, iterations, outlines, treatments, and versions of the 2024 Remake's story and screenplay;" "All Communications between You and any Writer(s) Concerning the Work, Hill, Lady Amos, and/or the development of the 2024 Remake, Including its story and screenplay;" and "All Communications between You and the Director Concerning the Work, Hill, Lady Amos, and/or the development of the 2024 Remake, Including its story and Screenplay."

RFP Nos. 11-15 and 32-33 seek clearly relevant documents, as you implicitly admitted during our meet and confer, in explaining that your objection here is one of burden.

In our meet and confer you offered no further compromise as to these requests, instead insisting that we will get all of the evidence of any copying we need.

 As to RFP No. 13, I offered to limit it to: "Documents sufficient to identify all persons, literary works, and/or audiovisual works relied upon in the development of the story or screenplay for the 2024 Remake." You rejected this compromise. Had you not rejected this compromise I would have offered to limit RFP No. 14 as follows: "All Communications Concerning persons, literary works, and/or audiovisual works relied upon in the development of the story or screenplay for the 2024 Remake."

Defendants' assurance that we will get all that we need will not suffice. For one, Plaintiff cannot be left to rely on Defendants' view of what is and is not relevant to copying.

These requests are not unduly burdensome. RFP Nos. 11-15 are tailored to the central issue of copying. As explained prior, they do not seek every document regarding the making of the films. Instead, RFP Nos. 11-15 are limited to "development of the story and screenplay." Accordingly, these RFPs do not implicate documents about the shooting of the films, for example, and the number of implicated custodians should be small. Please confirm that Defendants will search for and produce as to the full scope of RFP Nos. 11-12, 15, and modified 13-14.[3]

As for RFP Nos. 32-33, they are confined to a specific set of highly relevant witnesses, writers and director Doug Liman. Please confirm that Defendants will search for and produce as to the full scope of RFP Nos. 32-33 as well.

**RFP Nos. 16-31:**

RFP Nos. 16-31 seek documents regarding Defendants' descriptions or characterizations of the Work, 1989 Film, and 2024 Remake. With the exception of RFP No. 31, Defendants have agreed to produce nothing at all responsive to these requests. Based on Defendants' initial

---

[3] You clarified during the meet and confer that where Defendants agreed to search for and produce documents, that search and production includes ESI. In your December 12, 2024 letter you said: "in response to RFP Nos. 11, 12, 15, and 40, the Studio Parties now further agree to produce all written materials for the story and screenplay (including, e.g., 'drafts, iterations, outlines, treatments and versions' (see RFP No. 15)) to the extent these materials are in the files maintained for the evolution of the script on either film—for example, in the WGA credit files we discussed. In other words, the production will not be limited to 'screenplays' to the exclusion of outlines, treatments, or other written materials in any such files.'" Given the reference to "files" we do not understand this to be an offer to search emails for "written materials for the story and screenplay" and it is not clear whether the reference to files is meant to be limited to physical files or includes electronic repositories. It is also not clear to us whether "written materials" is limited to documents that are similar in kind to outlines and treatments or includes all written material including correspondence. <u>Please clarify what the offer is here, as the extent to which you are offering to search for and produce written materials for the story and screenplay that constitutes ESI impacts our assessment as to these RFPs.</u>

Exhibit 14
206

responses and your December 2024 letter, Defendants' principal objection seemed to have been relevance.  *See, e.g.,* Amazon's Response to RFP No. 16 ("Amazon objects to this Request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not proportional to the needs of the case, and seeks documents irrelevant to the claims and defenses in this action. Amazon's own descriptions or characterizations of the Work are irrelevant to the issues in this action").  During our recent meet and confer, however, you did not raise relevance and instead implied that it is too burdensome to separately search for these documents, because these documents are covered by other requests.

First, while there may be some overlap between these requests and those pertaining to the development of the screenplays and stories, for example, the overlap is far from complete. Second, even if the overlap were complete, you have not agreed to search for and produce all documents concerning the development of the screenplays and stories.

These requests seek centrally relevant information on the central issue of copying in this copyright infringement case and are not coterminous in scope with other requests.  Having provided no explanation as to why the burden inherent in these requests is any different from the run of a mill burden in every copyright infringement case; having not offered to quantify Defendants' supposed excessive burden; and having (with the exception of RFP No. 31) refused to produce any documents at all in response to these RFPs, we must insist that Defendants agree to fully comply with these request their rote objections notwithstanding.  Please confirm that Defendants will comply.

**RFP Nos. 36-39:**

These requests seek the following communications concerning the action: between a Defendant and writers; between a defendant and Doug Liman; between the Defendants; and between a Defendant and a third-party.

Defendants have not agreed to produce any documents with respect to these requests and their initial objections comprised pure boilerplate.  During our recent meet and confer I indicated our struggle to see how Defendants' position here was even remotely defensible.  You said that you would take Defendants' position on these requests under further advisement and revert.  Please let us know whether Defendants will agree to comply with these requests or whether they stand on their objections.

**RFP Nos. 42:**

This request seeks: "Documents sufficient to show the standard and/or usual terms used by You in Agreements Concerning the acquisition of literary material from authors and/or their loan out companies from January 1, 1978 to December 31, 1987."  During our meet and confer we discussed whether this request could be limited in some way and you invited a firm proposal as to a limitation on the scope of this request.  We will not provide such a proposal, as this request is well-tailored to the highly relevant information it seeks—it is appropriately circumscribed by

the effective date of the 1976 Copyright Act's termination provisions (January 1, 1978) and a date a little over a year after the contracts at issue here were entered into.  The request is also not unduly burdensome as it does not ask for "all" such agreements but just "Documents sufficient to show the standard and/or usual terms" utilized in United Artists' literary purchase or option/purchase agreements during a circumscribed period.

There is more at play here than whether the work-made-for-hire representation in the at issue literary purchase agreement was a "take it or leave it" term.  The why of it is relevant to whether Defendants were intentionally attempting to retroactively recast works as works-made-for-hire in a wrongful attempt to take advantage of the statutory work-made-for-hire exemption from termination.  The evolution of Defendants' standard terms for the purchase of literary materials in the years following 17 U.S.C. § 203's effective date is germane to this question.

In addition to being addressed to central issues and appropriately tailored as to temporal scope, this request is further mindfully tailored to reduce any burden by calling not for "all documents," but just for "documents sufficient to show the standard and/or usual terms" utilized in United Artists' literary purchase or option/purchase agreements during a circumscribed period.

Please confirm that Defendants will comply with this request.

**RFP No. 49:**

This request seeks: "All Documents, Including Communications, Concerning the completion date(s) of the 2024 Remake, Including target or tentative completion dates."

We propose to limit this request to: "Documents sufficient to evidence, for the 2024 Remake: its completion date(s); its target or tentative completion date(s); the reasons for missing its target or tentative completion date(s); the reasons for advancing its completion date(s) and target or tentative completion date(s); and what remained in the 2024 Remake to be completed as of November 11, 2023 to put the film in its final form.

Please let us know whether we have an agreement.

**RFP No. 58:**

This request seeks: "All Documents, Including Communications, Concerning the use of Artificial Intelligence in the production and/or postproduction of the 2024 Remake."

In our meet and confer you indicated that Defendants would simply not agree to produce any documents responsive to this request.  Nevertheless, in an effort to reach a compromise, please let us know whether Defendants will agree to search for and produce documents for this request if it is limited to: "Documents sufficient to evidence why and when artificial intelligence was used in post-production of the 2024 Remake."

**Reservation:**

As to Request Nos. 35 and 40, while Hill and Lady Amos disagree with respect to Defendants' objections and attempts to limit their obligations, as matters stand and in an effort to reduce the burden on the Court, Hill and Lady Amos will wait to see what documents Defendants ultimately produce, and will then reevaluate the need to meet and confer further and/or move to compel.

Hill and Lady Amos reserve all rights as to these requests, including the right to re-initiate the meet and confer process and move to compel as to these requests at any time.  Further, Hill and Lady Amos' shelfing of the issues presented by Defendants' objections to these requests assumes that Defendants will not attempt to renege as to the documents they committed to searching for and producing in response to these requests in their initial response and during meet and confer efforts to date.  In the event and to the extent Defendants no longer intend to honor their agreement, they must immediately inform us of that.

**Additional Meet and Confer Request**:

As to the date for Defendants' substantial production and RFP Nos. 2, 5-33, 36-39, 42, 49 and 58, we hope that Defendants will agree to fully, fairly, and promptly produce responsive documents (in line with any limitations we have agreed to).  While we await your response, and to keep matters moving along expeditiously, please indicate your availability for a final meet and confer call next week.  If we are at loggerheads after that call, we will need to move forward with an email to the Corut.[4]

Sincerely,

*/s/ Darrell R. Atkinson*
Darrell R. Atkinson

---

[4] While we have already satisfied Civil L.R. 37-1's meet and confer obligation, we believe that Magistrate Judge Christensen has indicated a preference for a follow-on meet and confer session: "if the parties conclude that they have reached an impasse, within one business day of the last meet-and-confer session, the movant must e-mail the Court …." *See* Hon. Christensen Procedures.