SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
WOOK HWANG (*pro hac vice*)
whwang@sheppard.com
ANGELICA H. NGUYEN (*pro hac vice*)
anguyen@sheppard.com
30 Rockefeller Plaza
New York, New York 10112-0015
Telephone:  212.653.8700
Facsimile:   212.653.8701

DYLAN J. PRICE, Cal. Bar No. 258896
dprice@sheppard.com
PAUL A. BOST, Cal. Bar No. 261531
pbost@sheppard.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6017
Telephone:  310.228.3700
Facsimile:   310.228.3701

Attorneys for Defendants and Counterclaimants
METRO-GOLDWYN-MAYER STUDIOS INC.,
AMAZON STUDIOS LLC & UNITED ARTISTS
PICTURES INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| R. LANCE HILL, an individual,<br><br>Plaintiff,<br><br>v.<br><br>METRO-GOLDWYN-MAYER STUDIOS INC., a Delaware corporation; AMAZON STUDIOS LLC, a California limited liability company; UNITED ARTISTS PICTURES INC., a Delaware corporation; and DOES 1-10,<br><br>Defendants. | Case No. 2:24-cv-01587-HDV-SSC<br><br>*Assigned to: Hon. Hernan D. Vera*<br><br>**DISCOVERY MATTER**<br><br>**DEFENDANTS-COUNTERCLAIMANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION AND MOTION TO COMPEL**<br><br>*[Ex Parte Application for Relief from Local Rule 37 and Expedited Hearing on Motion to Compel; Proposed Motion to Compel Production of Documents; Declaration of Wook Hwang filed concurrently herewith]* |

-1-
Case No. 2:24-cv-01587-HDV-SSC

Discovery Cutoff: September 28, 2026
Pre-Trial Conf.:  March 2, 2027
Trial Date:       March 23, 2027

METRO-GOLDWYN-MAYER STUDIOS INC., a Delaware corporation; AMAZON STUDIOS LLC, a California limited liability company; UNITED ARTISTS PICTURES INC., a Delaware corporation,

                Counterclaimants,

       v.

R. LANCE HILL, an individual; and LADY AMOS LITERARY WORKS LTD., a Canadian corporation,

                Counterclaim Defendant and Third-Party Counterclaim Defendant.

# **TABLE OF CONTENTS**

**Page**

A. INTRODUCTION ............................................................................................... 2

B. PROCEDURAL HISTORY ................................................................................ 5

    1. The Hill Parties' and Toberoff's Continuing Failure to Produce Responsive Third-Party Communications, and the Hill Parties' Near-Complete Spoliation Thereof ................................................................... 5

    2. The Hill Parties' Continuing Failure to Produce Documents Concerning Lady Amos ................................................................................... 11

C. THE COURT SHOULD GRANT *EX PARTE* REVIEW AND EXEMPT THE STUDIO PARTIES FROM LOCAL RULE 37 ............................................ 12

D. THE COURT SHOULD COMPEL TOBEROFF TO RETAIN AN ESI VENDOR TO RUN SEARCH TERMS OVER TOBEROFF'S AND ARLOOK'S ESI TO COMPLETE THEIR AND THE HIL PARTIES' PRODUCTIONS ...................................................................................... 13

E. ALL LOGGED COMMUNICATIONS BETWEEN TOBEROFF, THE HILL PARTIES AND/OR ARLOOK SHOULD BE SUBMITTED FOR *IN CAMERA* REVIEW FOR ASSESSMENT OF THE CRIME-FRAUD EXCEPTION'S APPLICABILITY ................................................................. 15

F. THE COURT SHOULD COMPEL THE DEPOSITION OF TOBEROFF ............ 17

G. THE COURT SHOULD COMPEL THE PRODUCTION OF DOCUMENTS CONCERNING LADY AMOS AND ITS RELATIONSHIP TO HILL ........................................................................................................ 21

H. TOBEROFF SHOULD BE REQUIRED TO CERTIFY THE REASONABLE COMPLETENESS OF THE PRODUCTIONS ORDERED BY THE COURT AND/OR PREVIOUSLY AGREED TO BY COUNSEL ......... 24

I. THE STUDIO PARTIES ARE ENTITLED TO THEIR REASONABLE ATTORNEY'S FEES ..................................................................................... 25

J. CONCLUSION ................................................................................................. 25

SMRH:4933-0798-5600

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION AND MOTION TO COMPEL

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Aamot v. Peterson*
No. 18-cv-1402, 2019 WL 13254904 (D. Minn. Aug. 20, 2019) ................................ 18

*Altaa Investments, LLC v. Production Capital, LLC*
No. 2:22-cv-00498-FWS-MAA, 2022 WL 21309976 (C.D. Cal. July 15, 2022) ....... 15

*In re Andre*
No. 19-mc-80266-VKD, 2019 WL 6699958 (N.D. Cal. Dec. 9, 2019) ...................... 18

*Browne v. Clark*
No. 2:21-cv-02840-AB-AJR, 2025 WL 819024 (C.D. Cal. Feb. 18, 2025) ................ 20

*Del Campo v. Am. Corrective Counseling Servs., Inc.*
C 01-21151 JW, 2008 WL 4858502 (N.D. Cal. Nov. 10, 2008) ................................ 21

*DeliverMed Holdings, LLC v. Schaltenbrand*
734 F.3d 616 (7th Cir. 2013) ...................................................................................... 21

*Everflow Tech. Corp. v. Millennium Elecs., Inc.*
No. C07-05795 JF (HRL), 2009 WL 3565558 (N.D. Cal. Oct. 27, 2009) .................. 21

*Firneno v. Nationwide Mktg. Servs., Inc.*
Case No. 14-cv-10104, 2017 WL 9471685 (E.D. Mich. Mar. 20, 2017) .................... 14

*In re Grand Jury Investigation*
974 F.2d 1068 (9th Cir. 1992) ..................................................................................... 16

*In re Hechinger Inv. Co. of Del., Inc.*
350 F.3d 65 (2d Cir. 2003) .......................................................................................... 18

*Holguin v. Cnty. of Los Angeles*
No. CV 10-8011-GW PLAX, 2011 WL 7128640 (C.D. Cal. Oct. 12, 2011) ............. 12

*Laatz v. Zazzle, Inc.*
No. 22-cv-04844-BLF (VKD), 2024 WL 3748434 (N.D. Cal. Aug. 7, 2024) ............ 18

*Massachusetts Mutual Life Ins. Co. v. Cerf*
177 F.R.D. 472 (N.D. Cal. 1998) ........................................................................... 17, 18

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*
883 F. Supp. 488 (C.D. Cal. 1995) ......................................................................... 12, 13

I*n re Napster, Inc. Copyright Litig.*
   479 F.3d 1078 (9th Cir. 2007)..................................................................................... 15

*Renn v. Otay Lakes Brewery, LLC*
   No. 23CV1139-GPC (BLM), 2025 WL 1225102 (S.D. Cal. Apr. 25, 2025).............. 14

*Sadowski v. Gudmundsson*
   206 F.R.D. 25 (D.D.C. 2002) ...................................................................................... 19

*Shelton v. Am. Motors Corp.*
   805 F.2d 1323 (8th Cir. 1986)............................................................................... 17, 18

*In re Soc. Media Adolescent Addiction/Personal Inj. Prods. Liab. Litig.*
   No. 22-md-03047-YGR (PHK), 2026 WL 1632746 (N.D. Cal. Jan. 12, 2026).......... 15

*U.S. v. Zolin*
   491 U.S. 554 (1989) ............................................................................................... 15, 16

*Unicolors, Inc. v. H&M Hennes & Mauritz, LP*
   52 F.4th 1054 (9th Cir. 2022) ...................................................................................... 21

*Vieste, LLC v. Hill Redwood Dev. Ltd.*
   No. C-09-04024 JSW (DMR), 2011 WL 855831 (N.D. Cal. Mar. 9, 2011) ............... 21

*Waite v. UMG Recordings, Inc.*
   450 F. Supp. 3d 430 (S.D.N.Y. 2020)......................................................................... 10

*Wang v. Zymergen Inc.*
   No. 21-cv-06028-PCP (SVK), 2025 WL 2978393 (N.D. Cal. Oct. 22, 2025)
   ................................................................................................................................. 15, 16

*Younger Mfg. Co. v. Kaenon, Inc.*
   247 F.R.D. 586 (C.D. Cal. 2007) ................................................................................ 18

Statutes

17 U.S.C.
   § 203(a) .................................................................................................................... 8, 19
   § 411(b)(1) ................................................................................................................... 20
   § 411(b)(1)(A).............................................................................................................. 20
   § 411(b)(1)(B).............................................................................................................. 20
   § 411(b)(2) ................................................................................................................... 20

Other Authorities

C.D. Cal. Local Rule 37.................................................................................................. 12

SMRH:4933-0798-5600
Case No. 2:24-cv-01587-HDV-SSC

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION AND MOTION TO COMPEL

Federal Rule of Civil Procedure 37(a)(5)(A) ........................................................25

Case No. 2:24-cv-01587-HDV-SSC
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION AND MOTION TO COMPEL

Defendants/Counterclaimants Metro-Goldwyn-Mayer Studios Inc., Amazon Studios LLC, and United Artists Pictures Inc. (collectively, the "Studio Parties") submit this memorandum of law in support of their *ex parte* application and motion seeking an Order: (1) compelling non-party Marc Toberoff and Toberoff & Associates, P.C.'s (collectively, "Toberoff") to retain an independent vendor to run search terms over the electronically stored information ("ESI") maintained by Toberoff and non-party The Arlook Group, Inc. ("Arlook"), and produce or log all responsive ESI; (2) compelling Plaintiff/Counterclaim Defendant R. Lance Hill ("Hill"), Third-Party Counterclaim Defendant Lady Amos Literary Works Ltd. ("Lady Amos," and together with Hill, the "Hill Parties"), Toberoff and Arlook to submit to the Court for *in camera* review all communications among them that have been withheld from production on the basis of privilege; (3) compelling Toberoff to appear for deposition at a time and date to be mutually agreed upon by the parties; (4) compelling the production of responsive documents concerning Lady Amos, following a reasonable effort to procure such documents from the Hill Parties' banks, accountants and other agents, by a date certain; (5) compelling Toberoff to certify to the Court that it has fully complied with the foregoing and detailing the steps taken; and (6) awarding sanctions against the Hill Parties and Toberoff, jointly and severally, in the amount of attorney's fees the Studio Parties have incurred in connection with the disputes raised on this motion.

The Studio Parties respectfully request that the Court set an expedited hearing such that this motion can be heard on or before August 21, 2026.

Case No. 2:24-cv-01587-HDV-SSC
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION AND MOTION TO COMPEL

## A.     INTRODUCTION

The Hill Parties and their counsel Toberoff have subverted the discovery process by concealing or destroying critical evidence relevant to the core issues in this action, regrettably necessitating this *ex parte* motion.  Documents produced by non-party Doug Liman ("Liman") pursuant to the Court's May 26, 2026 Order have exposed startling discovery abuses by Toberoff and the Hill Parties, ranging from ongoing non-compliance with this Court's prior orders to the ***near-complete spoliation of Hill's email accounts***.  Their misconduct is sanctionable and requires the relief sought herein.

Liman recently produced numerous email exchanges with Hill spanning nearly two years, both before and after this action commenced.  These emails contain critical admissions made by Hill that directly contradict the factual allegations underpinning Hill's claim of copyright ownership that Toberoff has asserted in this action and to the U.S. Copyright Office.  For obvious reasons, the Hill Parties and Toberoff have gone to extraordinary lengths to bury these communications.  Initially, Toberoff attempted to block Liman's counsel from producing documents that Liman was prepared to produce in response to a valid non-party subpoena, asserting a contrived "privilege" Liman himself disavowed and that Toberoff himself had previously told Liman would *not* apply.  *Compare* Dkt. No. 89, at 12-17 (Toberoff's May 5, 2026 brief, asserting "co-client privilege"), *with* Hwang Decl. ¶ 4, Ex. B (Toberoff on December 4, 2025: "Doug, please be aware that these conversations, emails etc. are not privileged and will be viewed as ***waiving*** privilege.") (emphasis in original).  The Court ultimately granted the Studio Parties' *ex parte* motion to compel (Dkt. No. 105), and Liman produced a trove of damning evidence the Hill Parties and Toberoff had concealed.

Liman's document production not only undercuts the claims in this lawsuit but also exposed a myriad of troubling discovery abuses in which the Hill Parties and Toberoff have engaged:

- ***Mass Spoliation of Hill's Emails***:  When queried as to why the Hill Parties failed to produce any of the emails produced by Liman, as ordered by this Court, Toberoff finally admitted that Hill had spoliated responsive communications from both of his email accounts *after he commenced this action*.  First, Hill's Xplornet cloud account was purportedly expunged *in toto* by the service when Hill stopped using it, without any effort by Hill or Toberoff to preserve the emails.  Second, Toberoff acknowledged that Hill "would as a matter of course delete his emails" from his Gmail account notwithstanding both Hill and Toberoff being fully aware of their ongoing duty to preserve them.

- ***Toberoff Withheld Non-Privileged Documents***:  When queried as to why even *Toberoff* failed to produce responsive communications he had had with Liman, all of which included one or more search terms Toberoff claimed to have already run,[1] Toberoff belatedly produced the emails evident from Liman's production (but no others)—revealing that, in fact, those non-privileged documents had been withheld despite Toberoff's representation that search terms had been run and that the production was "complete."

- ***Toberoff Failed to Produce Responsive Third-Party Communications***:  Following the Court's May 26, 2026 order (Dkt. No. 105)[2]—and a related agreement between counsel that Toberoff would produce or log all communications concerning third-party financial interests in the outcome of

---

[1] *See* June 9, 2026 Order (Dkt. No. 117) (directing the parties to confer regarding "search terms applicable for the response to the Toberoff subpoenas addressed as Dispute No. 2 in ECF 110").

[2] *See* May 26, 2026 Order (Dkt. No. 105) ("The Court grants MGM's motion to compel the Hill Parties to produce: (1) third-party communications concerning the 1986 screenplay, Hill's claim of authorship, and/or the 2024 film; (2) documents concerning financial interests in the 1986 screenplay; and (3) Lady Amos's financial and banking records").

-3-                                          Case No. 2:24-cv-01587-HDV-SSC

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION AND MOTION TO COMPEL

this case (including Toberoff's own) and/or this action after its commencement—Toberoff has failed to produce or log *any* such communications other than the few with Liman that Toberoff belatedly produced (and then only because Liman already had produced them).

- ***The Hill Parties Failed to Produce Lady Amos Documents***:  No documents have been produced following the Court's May 26 order compelling production of Lady Amos's financial and banking records to vet Toberoff's allegation that Hill and Lady Amos are merely "alter egos," based on the dubious claim that all such documents had already been produced *before* the Hill Parties' contested the Studio Parties' motion to compel their production.

Liman's documents also revealed the extent of Toberoff's financial interests in the outcome of this action and, in turn, in his and his clients' alarming efforts to conceal probative evidence: Toberoff is contractually entitled to receive 40% of any proceeds recovered by the Hill Parties from this action, *plus* a separate monetary windfall from producer deals Toberoff would negotiate for *himself* on any new productions "based on intellectual property rights recovered or settled hereunder." *Cf.*  https://www.imdb.com/name/nm0864844/ (Toberoff IMDb page identifying producer credits).  In Hill's own words, as revealed in his emails to Liman, Toberoff "is fully aware he is in multiple, transparent conflicts" driven by his own financial motives; "[h]is attitude is that screenwriters are the bottom rung, know nothing, having no control or influence on their own original material, should to be meek and compliant and silent"; and "he has always only said what suits his purpose…. I learned to never trust what he says." Hwang Decl. ¶ 4, Exs. D, F, G.  Together with the allegations that Toberoff has asserted that are directly contradicted by Hill's own admissions, and the ongoing efforts to stymie discovery at every turn, the evidentiary record thus paints the picture of a conflicted lawyer/producer spinning a false narrative in this case and to the Copyright Office without any evidentiary support from even his own client, in service of his own financial ends.

These remarkable revelations fully warrant the discovery and related relief requested herein.  The Studios Parties respectfully seek *in camera* review of the communications between the Hill Parties (or their agent) and Toberoff pursuant to the crime/fraud exception, as relevant to the Studio Parties' counterclaim for fraud on the Copyright Office; the deposition of Toberoff to examine the factual bases for the representations he made to the Copyright Office and the supporting factual underpinning for those representations, including those contradicted by Hill; various additional relief to bring the Hill Parties and Toberoff into compliance with the Court's prior orders and their own discovery agreements; and an award of sanctions based on the obstructive efforts and other discovery abuses in which the Hill Parties and Toberoff have engaged.

**B.    PROCEDURAL HISTORY**

**1.    The Hill Parties' and Toberoff's Continuing Failure to Produce Responsive Third-Party Communications, and the Hill Parties' Near-Complete Spoliation Thereof**

On May 26, 2026, the Court granted the Studio Parties' motion to compel, *inter alia*, all communications the Hill Parties and/or Toberoff "have exchanged with any PERSON … concerning the 1986 SCREENPLAY, HILL's claim of authorship thereto and/or the 2024 FILM," as well "All DOCUMENTS and COMMUNICATIONS concerning or reflecting any financial interest in the 1986 SCREENPLAY and/or any rights therein held by any other PERSON…." Dkt. 105 at 7-13.  Per the Court's admonitions, and express agreement between counsel, this required the Hill Parties and Toberoff to also produce or log all communications concerning this action generally.[3]

---

[3] At the April 22, 2026 hearing on the motion, the Court explained that its ruling on the motion would "map" to the Studio Parties' RFPs on the Hill Parties and Toberoff for communications relating to the action generally.  *See* April 22, 2026 IDC Tr. (Dkt. No. 83) at 15:1-11; Dkt. 78-1 at 2.  Toberoff later expressly agreed

-5-

SMRH:4933-0798-5600    MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION AND MOTION TO COMPEL

As of May 21, 2026, and more than two years after Hill had filed this case, the Hill Parties had produced a mere handful of flattened pdf scans of emails, all from Hill's bigblackdogs@xplornet.com email address.  This facially deficient production was not surprising given Toberoff's disclosure at the parties' March 27, 2026 Informal Discovery Conference that counsel had exercised zero oversight over the Hill Parties' collection efforts.  *See* Mar. 26, 2026 IDC Tr. (Dkt. No. 69) at 7:11-17 ("We're receiving images, screenshots, and he takes pictures of things.  There are no search terms or custodians on our end.  That's not how our search is being conducted.  It's 'Plaintiff, you're a person.  Go off, find us everything on these categories, and give them to us' is how our search has proceeded.").  Presented with this abdication of counsel's oversight obligations, the Court ordered the Hill Parties to, *inter alia*, "produce responsive documents in native format [and] search cloud storage for responsive information" using search terms to be agreed upon by the parties (Dkt. 110), including ESI from Hill's bigblackdogsx3@gmail.com address disclosed to the Studio Parties for the first time during May 27 conference.  *See* May 27, 2026 IDC Tr. (Dkt. No. 113) at 13:25-14:1 (disclosing that "[Hill] recently switched to Gmail.  Before it was Xplornet.").  Following Toberoff's refusal to meet-and-confer about search terms, the Court ordered (Dkt. No. 117) that the search terms proposed by the Studio Parties be used on the Hill Parties' accounts and, further, that the parties confer regarding the terms to be run over Toberoff's own communications.  *See* Dkt. No. 117.  Toberoff subsequently agreed to run

that a ruling in the Studio Parties' favor on this prong of their motion would necessitate Toberoff's production of all communications concerning the action in response to the Studio Parties' subpoenas.  *See* Hwang Decl. ¶ 5, Ex. L (in connection with "Toberoff Subpoenas," stating that "[i]nformation relating to … this action are deemed non-response [*sic*] and will not be searched for and produced; however, if the Court rules in Defendants' favor with respect to this issue, which was the subject of briefing at Dkt. 74, 80, and 81 and a May 5, 2026 hearing, then this information will be deemed responsive.").

specific terms across the emails maintained by both Toberoff and Arlook, Hill's talent agent also represented by Toberoff in this action.  Hwang Decl. ¶ 6, Ex. M.

Toberoff, on behalf of itself, the Hill Parties, and Arlook, purported to complete the production and logging of documents on June 30, 2026, bringing their total production to approximately 237 documents (Hill Parties), 38 documents (Toberoff), and 72 documents (Arlook).  With respect to Hill's production, Toberoff explained:

> Please note that, pursuant to the Court's June 9, 2026 Order and subsequent conferences between the parties, Mr. Hill's imaged computer hard drive, imaged cellular phone,[4] and his email accounts (i.e., bigblackdogsx3@gmail.com and bigblackdogs@xplornet.com) were all searched with the terms set forth in the June 9 Order, as well as the terms from Mr. Hwang's June 10 email, as agreed upon by the parties (and listed below). Additionally, Mrs. Hill's imaged cellular phone and email account were searched with the same agreed-upon terms.

Hwang Decl. ¶ 7, Ex. N.

This production was anything but complete: the Hill Parties' production contained a *total* of 19 native emails—and *none* from Hill's Gmail account.  The Hill Parties produced virtually none of the emails between Liman and Hill that Liman had produced.  The troubling absence of emails was not hypothetical, as the volume and extensive content of the emails Hill exchanged with Liman alone—one

---

[4] Toberoff's statement contradicts Toberoff's earlier representation to the Court that Hill did not have a cell phone:  "So let me address -- first let me address the mobile phone that you brought up last.  [Hill] has no cell phone.  My client doesn't have a mobile phone. … I'm describing to you the other searches that we've done where we've pulled from his hard drive all emails and we're pulling that from two emails.  He doesn't have a cell phone.  The only question left is the cloud."  May 27, 2026 IDC Tr. (Dkt. No. 113) at 9:6-9, 13:10-13.  In all events, the Hill Parties have not produced any communications from this phone, including emails produced by Liman sent from Hill's iPhone.  *Id.*, ¶ 4, Ex. K.

of which has Hill stating: "a writer writes and you know I prefer emails as it is what I do" (Hwang Decl. ¶ 4., Ex. G)—make clear that Hill is a prolific email user.

Confronted with the dearth of emails from Hill's email accounts, Toberoff finally admitted—after months of costly discovery disputes engendered by the Hill Parties' failure to produce them—that Hill's emails had been the subject of near-total spoliation.  As Toberoff explained, Hill used his Xplornet account "until approximately March 2025," more than a year *after* this action was filed, but neither the Hill Parties nor Toberoff had taken any steps to prevent the expungement (purportedly by Xplornet) of this account "in their cloud after Hill stopped using the account."  Hwang Decl. ¶ 8, Ex. O.  As to Hill's Gmail account, Toberoff explained that Hill "would as a matter of course delete his emails in the mistaken belief it would free up space and prevent future issues."  *Id.*  As a result of this wanton spoliation, Hill produced almost none of the emails he exchanged with Liman, much less any of the relevant and responsive correspondence that Hill——a "writer [who] writes [and] prefer[s] emails as it is what I do"—certainly exchanged with an untold number of other third parties.

The prejudice to the Studio Parties is clear, as Hill made numerous admissions in his emails with Liman alone that are critically relevant to the merits of this action.  Among them, when asked by Liman for a termination notice that Hill allegedly sent to Lady Amos (i.e. to himself in his capacity as a Lady Amos director and officer), he told Liman that "**I sent no such termination letter to myself, nor was told to do so by Toberoff.  This is the first time I heard of it.**"  *See* Hwang Decl. ¶ 4, Ex. H.  The allegation Toberoff concocted in the complaint, however, spins the opposite narrative (Cmplt. ¶ 34):

> 34.    … **[O]n November 10, 2021, Hill sent an additional notice of termination, pursuant to 17 U.S.C. § 203(a), to Lady Amos** and Defendants, terminating any express or implied grant by Hill to Lady Amos of any rights under U.S. copyright in the Screenplay, with an

-8-

effective termination date of November 11, 2023 (the "Lady Amos Termination").

This allegation—proven false by Hill's own email to Liman—goes directly to Hill's claim of copyright ownership underpinning this case. *See* Cmplt. ¶ 36 ("On November 11, 2023, the effective date of both the Termination and the Lady Amos Termination, Hill once again became the sole owner of the U.S. copyright in his original Screenplay.").

Hill also acknowledged to Liman the legal principle that "the vast majority of films in any studio's library were written for hire and therefore do not qualify [for termination]." Hwang Decl. ¶ 4, Ex. I. But he erroneously believed he was exempt from this principle because "**I signed my name only to the 1986 Agreement with UA, never any reference by me to my loanout [Lady Amos] as it would have never occurred and I was never advised to do otherwise. I am sure every other agreement I signed for any other of my specs was the same.**" *Id.*, Ex. J. That is wrong. Lady Amos was not only a party to the 1986 Literary Purchase Agreement at issue (Dkt. No. 22-2)), but both Lady Amos and Hill represented in that agreement that Hill wrote the 1986 Screenplay in his capacity as Lady Amos's employee and that Lady Amos was both the copyright author *and* owner of the 1986 Screenplay. *See* Dkt. No. 22, Counterclaims ¶¶ 18, 24-26, 30-37. And the Hill Parties, represented by a revolving cadre of talent agents and attorneys, made similar representations in *every other agreement* conferring rights to screenplays Hill wrote after forming Lady Amos in 1976.[5]

---

[5] *See* Hwang Decl. ¶ 15, Ex. X (1995 agreement with Katja Motion Picture Corporation: "[Lady Amos] is [Hill's] general **employer** …"); Ex. Y (1997 agreement with Paramount Pictures Corporation: "[Hill] represents that … [he] wrote the Work as an **employee** of [Lady Amos] and that the Work is deemed to be a 'work made for hire' …"); Ex. W (1983 agreement with Columbia Pictures Industries, Inc.: "**Employer** [Lady Amos] will furnish the writing services of [Hill], who will look solely to Employer for his compensation."); *id.*, ¶ 16, Ex. CC (1990

-9-    Case No. 2:24-cv-01587-HDV-SSC

This was consistent with Lady Amos's express purposes "[t]o design, create, and produce screenplays, film scripts, and adaptations" and "[t]o buy, sell and deal in same" when Hill formed it.  The reason, as Hill explained to Liman, was "for a small tax advantage it afforded, tax-paid funds in the loanout could then be withdrawn at any time as dividends at a lower rate than regular income earned outside of a loanout"—further repudiating Toberoff's claim of Hill's copyright authorship.  *See, e.g., Waite v. UMG Recordings, Inc.*, 450 F. Supp. 3d 430, 441-42 (S.D.N.Y. 2020) (rejecting claim of copyright termination by alleged author who used loan-out for grant, because "people cannot use a corporate structure for some purposes – *e.g.* taking advantage of tax benefits – and then disavow it for others."). For present purposes, these communications underscore the complete dissonance between Hill's own recounting of the facts, correct or not, and the factual allegations Toberoff has asserted in this action and to the Copyright Office, purportedly on Hill's behalf.

Toberoff's own production—all the more critical given Hill's near-total spoliation of his emails—also reflects a complete disregard for its discovery obligations.  In the purportedly "complete" production made on June 30, 2026, Toberoff failed to produce even the communications between Toberoff and Liman from Liman's already-completed production, each of which contain one or more of the search terms Toberoff claimed to have run.  Toberoff later produced three of these emails only after being asked why they were missing.  Hwang Decl. ¶ 8, Ex. O.  But other than these three, Toberoff has failed to produce or log *any* responsive

certificate of authorship attesting that Hill wrote work "pursuant to an **employment** agreement between [Hill] and [Lady Amos] …"); Ex. AA (1979 certificate of authorship attesting that "all literary material submitted by [Hill] … were written and will be written by [Hill] as an **employee** of [Lady Amos] …"; Ex. BB (1986 agreement with United Artists: "[Hill] is under an exclusive written contract of **employment** with [Lady Amos]"); Ex. DD (1990 assignment by Lady Amos to Warner Bros., Inc. of literary work).

-10-                      Case No. 2:24-cv-01587-HDV-SSC

communications, whether emails or texts, concerning this action and exchanged after its commencement. *Id*. There is no doubt that such unknown communications exist: Liman's counsel, in response to a separate subpoena, just this week produced recent responsive emails with Toberoff that had been exchanged in connection with Toberoff's improper efforts to obstruct Liman's non-party production. *Id.* ¶ 9 Exs. P, Q, R. None of these were produced or logged, despite containing search terms Toberoff had agreed to run (including "Liman") and obviously constituting documents relating to this action that Toberoff had agreed to produce. Those emails reference other responsive communications Toberoff had with Liman personally, which Toberoff also did not produce or log. *Id*.

More generally, Toberoff has not produced *any* documents substantiating or otherwise relating to the representations of copyright authorship and ownership asserted in the copyright application that Toberoff submitted to the Copyright Office—evidence, if any, that Hill's mass spoliation indicates lies solely with Toberoff.

### 2. The Hill Parties' Continuing Failure to Produce Documents Concerning Lady Amos

On May 26, 2026, the Court granted the Studio Parties' motion to compel the Hill Parties' production of "All DOCUMENTS constituting or reflecting Lady Amos's financial records from its formation through the present, including, without limitation, any and all audited or unaudited balance sheets, income statements, profit and loss statements and cash flow statements" and "All DOCUMENTS constituting or reflecting Lady Amos's banking records from its formation through the present, including, without limitation, any and all bank statements, applications, and records reflecting deposits, withdrawals and/or transfers" dating from 1976-2000. Dkt. 105 at 13-14. Relying on the Hill Parties' prior claim of burden, the Studio Parties had previously agreed to limit the date range to 1976-2000 for these and other RFPs pertaining to Lady Amos. Hwang Decl. ¶ 17, Ex. EE. In granting the motion, the

-11-

Case No. 2:24-cv-01587-HDV-SSC
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION AND MOTION TO COMPEL

Court rejected the Hill Parties' contention that they "should not be required to obtain the sought records from third-party financial institutions."  Dkt. 105 at 14.

Following the May 26 order, however, the Hill Parties produced *none* of the banking and financial records ordered by the Court and that they had opposed producing.   Accordingly, in totality, the Hill Parties' production to date of documents concerning Lady Amos is minimal, consisting of corporate formation documents the Studio Parties filed with their counterclaims, a seemingly random sample of scattershot materials Hill appears to have had laying around, and tax returns from 2011-2025.

## C.    THE COURT SHOULD GRANT *EX PARTE* REVIEW AND EXEMPT THE STUDIO PARTIES FROM LOCAL RULE 37

*Ex parte* consideration is warranted here, where (1) "the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures [of Local Rule 37]" and (2) "the moving party is without fault in creating the crisis that requires *ex parte* relief."  *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

*First*, the Studio Parties face a high risk of "irreparabl[e] prejudice" if subject to the ordinary Local Rule 37 process because the Hill Parties have demonstrated a pattern of destroying and concealing highly relevant evidence.  The more time that passes, the more likely that the Studio Parties are irreparably prejudiced by these abuses.  Additionally, fact discovery is presently scheduled to close on September 28, 2026.  The long-running document discovery disputes resulting from the Hill Parties' and Toberoff's discovery misconduct has delayed depositions that must conclude before the close of fact discovery.  Applying Local Rule 37 would accordingly allow Toberoff to continue his pattern of suppressing evidence from discovery to prejudice the Studio Parties. *See Holguin v. Cnty. of Los Angeles*, No. CV 10-8011-GW PLAX, 2011 WL 7128640, at *1 n.1 (C.D. Cal. Oct. 12, 2011) ("[T]he process … pursuant to Local Rule 37 usually takes no less than 38 days.").

*Second*, the Studio Parties are entirely "without fault" when it comes to the exigent circumstances described herein because they "could not have, with due diligence" prevented the Hill Parties' and Toberoff's extraordinary efforts to spoliate and withhold relevant evidence from discovery. *See Mission Power*, 883 F. Supp. at 492. Rather, these efforts have only recently surfaced based on the Liman production Toberoff sought to prevent (and successfully delayed) and the Studio Parties' comparison of those with the production by the Hill Parties, Toberoff, and Arlook purportedly completed on June 30 pursuant to the Court's May 26, May 27, and June 9 orders.

## D.   THE COURT SHOULD COMPEL TOBEROFF TO RETAIN AN ESI VENDOR TO RUN SEARCH TERMS OVER TOBEROFF'S AND ARLOOK'S ESI TO COMPLETE THEIR AND THE HIL PARTIES' PRODUCTIONS

To feign some semblance of compliance with the Court's orders and the parties' agreements, Toberoff represented to the Studio Parties' counsel that it would run the search terms across its emails and produce all responsive communications hitting one or more of those terms.[6] As explained herein, that representation was false, as Toberoff withheld communications with both Liman and Liman's counsel containing one or more of these terms and that were clearly responsive. Indeed, Toberoff has neither produced nor logged *any* emails relating to this action post-dating its commencement. Such communications no doubt exist that the Studio Parties have no means of identifying, as the emails from Liman and Liman's counsel were identified only in response to subpoenas issued on them.

---

[6] Specifically, Toberoff agreed to run the following terms across its ESI: roadhouse, road house, RH, hill, lance, RLH, DL, DH, David Henry, David Lee, lady amos [and abbreviations or acronyms used by the Hill Parties, if any], bigblackdogs@xplornet.com, bigblackdogsx3@gmail.com, @hypnotic.com, @arlookgroup.com, liman, 1986 w/25 (agreement* or contract* or deal*), and lpa. *See* Hwang Decl. ¶ 6, Ex. M.

As a result of Toberoff's flagrant disregard for the Court's orders and its own agreements, Toberoff has produced only 35 emails and no texts—a paltry total that alone gives rise to significant doubt.[7]  Similarly, while the Studio Parties have no specific knowledge of missing Arlook communications, Arlook has produced only 65 responsive emails hitting on the terms Toberoff agreed to run across Arlook's ESI,[8] despite Arlook's tenure as Hill's talent agent over the entirety of the Internet era.  And Arlook is also represented by Toberoff, who, as noted above, has disregarded his discovery obligations as counsel in a multitude of ways.  *See Renn v. Otay Lakes Brewery, LLC*, No. 23CV1139-GPC (BLM), 2025 WL 1225102, at *11 (S.D. Cal. Apr. 25, 2025) (ordering party, based on past noncompliance, to use a "professional service" to "search its entire Google Drive and … employee email accounts … using the proposed search terms"); *Firneno v. Nationwide Mktg. Servs., Inc.*, Case No. 14-cv-10104, 2017 WL 9471685, at *8 (E.D. Mich. Mar. 20, 2017) (based on defendants' history of noncompliance, ordering defendants and third-party vendor to collect and search for data hitting on proposed search terms).

In light of the foregoing, the Studio Parties respectfully request that Toberoff be ordered to (1) retain an ESI vendor to run the search terms to which they have already agreed (*see* fn 6); (2) also run the terms @silverpictures.com, @casadeplata.net, and silver, to identify responsive communications with Joel Silver, with whom Toberoff appears to be in most frequent contact concerning the

[7] These consist of 24 emails with producer Joel Silver, one email with counsel for the Studio Parties, seven emails with the U.S. Copyright Office, and the three emails with Doug Liman that Toberoff belatedly produced.

[8] Specifically, Toberoff agreed to run the following terms across Arlook's ESI: roadhouse, road house, RH, hill, lance, RLH, DL, DH, David Henry, David Lee, lady amos [and abbreviations or acronyms used by the Hill Parties, if any], 1986 w/25 (agreement* or contract* or deal*), bigblackdogs@xplornet.com, bigblackdogsx3@gmail.com, @toberoffandassociates.com, @hypnotic.com, liman, toberoff, and lpa.  *See* Hwang Decl. ¶ 6, Ex. M.

SMRH:4933-0798-5600    MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION AND MOTION TO COMPEL

issues in this action (*see* fn 8); and (3) produce or log all ESI responsive to the RFPs served on the Hill Parties,[9] the Toberoff subpoenas and/or the Arlook subpoena, as applicable.

**E. ALL LOGGED COMMUNICATIONS BETWEEN TOBEROFF, THE HILL PARTIES AND/OR ARLOOK SHOULD BE SUBMITTED FOR *IN CAMERA* REVIEW FOR ASSESSMENT OF THE CRIME-FRAUD EXCEPTION'S APPLICABILITY**

The attorney-client privilege "does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." *Altaa Investments, LLC v. Production Capital, LLC*, No. 2:22-cv-00498-FWS-MAA, 2022 WL 21309976, at *1 (C.D. Cal. July 15, 2022) (quoting *U.S. v. Zolin*, 491 U.S. 554, 562 (1989)). To vitiate the privilege under the crime-fraud exception, a party must demonstrate that "(1) the client was committing or intending to commit a fraud or crime; and (2) the attorney-client communications were in furtherance of that alleged crime or fraud." *Id.* at *2. Spoliation alone can give rise to its applicability. *See, e.g., In re Soc. Media Adolescent Addiction/Personal Inj. Prods. Liab. Litig.*, No. 22-md-03047-YGR (PHK), 2026 WL 1632746, at *6 (N.D. Cal. Jan. 12, 2026) ("Courts confronted with lawyers involved in advising spoliation of evidence have concluded the such attorney-client communications are not shielded by the privilege due to the crime-fraud doctrine.").

Courts distinguish between "cases in which a party asserts that it is entitled to 'outright disclosure' of privileged materials under the crime-fraud exception and cases in which a party requests that a court review privileged documents *in camera* to determine if the crime-fraud exception applies." *Wang v. Zymergen Inc.*, No. 21-cv-06028-PCP (SVK), 2025 WL 2978393, at *4 (N.D. Cal. Oct. 22, 2025) (citing I*n*

---

[9] While this obligation rests on the Hill Parties, there is no question that documents in the possession, custody or control or Toberoff concerning the matters at issue are within Hill's control given the agency relationships.

*re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1092 (9th Cir. 2007)).    The threshold for obtaining *in camera* review is "considerably lower" than that for outright disclosure.    *Id.*    To meet that threshold, "the party seeking *in camera* review must make an initial showing of 'a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies."    *Id.* at *5 (citing *Zolin*, 491 U.S. at 572).    This threshold showing is "relatively minimal" and "may be met by using any relevant evidence, lawfully obtained, that has not been adjudicated to be privileged."    *Id.* (citing *In re Grand Jury Investigation*, 974 F.2d 1068, 1075 (9th Cir. 1992); *Zolin*, 491 U.S. at 575).    Once that threshold showing is met, the Court may decide whether to undertake *in camera* review in its sound discretion in light of the particular case's facts and circumstances, "including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through in camera review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply."    *Id.* (quoting *Zolin*, 419 U.S. at 572).

Here, the record is replete with evidence adequate to support a good faith belief that *in camera* review of logged communications may reveal evidence to establish the application of the crime-fraud exception or that the logged communications are not privileged,[10] and thus subject to discovery in connection with the Studio Parties' counterclaim for fraud on the Copyright Office.    The representations Toberoff made to the Copyright Office as to Hill's purported copyright authorship and ownership are directly refuted or otherwise belied by Hill's admissions to Liman.    These emails further show that Hill's belief that he was

---

[10] In this regard, the Hill Parties and Arlook somehow *continue* to maintain privilege over certain of the communications Liman has already produced.    *See* Hwang Decl. ¶ 13.

the copyright author of the 1986 Screenplay was based on the erroneous premise that Lady Amos was not a party to the 1986 Literary Purchase Agreement—without awareness that it was, or of the representations and warranties both Lady Amos *and* Hill personally made in that agreement—giving rise to a more-than-plausible inference that the contrary representations of authorship, termination and ownership Toberoff made to the Copyright Office nearly four decades later were concocted out of thin air.  Indeed, according to Hill, Toberoff "has always only said what suits his purpose" and Hill himself "never trust[s] what he says."  Hwang Decl. ¶ 4, Ex. G. The plausibility of a fraud having occurred is amplified by Hill's spoliation of virtually all of the emails in which these admissions were made.

Considering these facts as a whole, or even in isolation, supports an *in camera* review here, as each discretionary factor weighs in favor of the Court conducting *in camera* review of these materials.  First, *in camera* review should not substantially tax the Court's resources.  The Studio Parties are requesting review of a limited set of communications, reflected by the brevity of the logs Toberoff has produced on behalf of itself, the Hill Parties, and Arlook.  Second, if the potential fraud at issue—namely, the veracity of the claims of Hill's copyright authorship, termination and ownership—was indeed perpetrated, it would be dispositive of the parties' respective claims.  Third, review of these documents, combined with the other evidence at bar, should permit the Court to make an assessment of whether the crime-fraud exception to the attorney-client privilege applies in this case.

## F.     THE COURT SHOULD COMPEL THE DEPOSITION OF TOBEROFF

An opposing party's trial counsel is not "absolutely immune from being deposed" and "circumstances may arise in which the court should order the taking of opposing counsel's deposition." *Massachusetts Mutual Life Ins. Co. v. Cerf*, 177 F.R.D. 472, 479 (N.D. Cal. 1998) (citing *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)).  Although the Ninth Circuit has not formally adopted a standard for when it may be required, district courts in this Circuit frequently apply

-17-

the *Shelton* test, which requires a party seeking to take the deposition of opposing party's counsel to show that "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Id.* (citing *Shelton*, 805 F.2d at 1327). Other courts weigh the factors considered by the Second Circuit, namely, "the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." *Younger Mfg. Co. v. Kaenon, Inc.*, 247 F.R.D. 586, 588 (C.D. Cal. 2007) (denying defendants' application for a protective order prohibiting deposition of their trial counsel) (quoting *In re Hechinger Inv. Co. of Del., Inc.*, 350 F.3d 65, 72 (2d Cir. 2003).

Notably, this analysis "does *not* apply to discovery of facts known to counsel as a percipient witness relating to matters that preceded the litigation." *Laatz v. Zazzle, Inc.*, No. 22-cv-04844-BLF (VKD), 2024 WL 3748434, at *2 (N.D. Cal. Aug. 7, 2024) (emphasis added); *see also, e.g., In re Andre*, No. 19-mc-80266-VKD, 2019 WL 6699958, at *2-3 (N.D. Cal. Dec. 9, 2019) ("The mere fact that Mr. Andre and Kramer Levin happen to represent MASA in the pending action does not insulate them from discovery about a transactional matter, now-concluded, that preceded the litigation.").

*Laatz* is instructive. There, the court held that defendant need not satisfy the *Shelton* standard because it did not seek to depose plaintiff's trial counsel "about matters relating to his representation of [plaintiff] in this litigation, but about communications [counsel had] with the Copyright Office in connection with [plaintiff's] copyright registration that occurred more than one year before [plaintiff] filed this action." 2024 WL 3748434, at *3 (granting defendant's motion to take plaintiff's counsel's deposition in support of its counterclaim that plaintiff's copyright registration is invalid); *see also, e.g., Aamot v. Peterson*, No. 18-cv-1402

-18-

SMRH:4933-0798-5600

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION AND MOTION TO COMPEL

(JRT/LIB), 2019 WL 13254904, at *6 (D. Minn. Aug. 20, 2019) (denying motion to quash plaintiff's deposition of defendant's trial counsel regarding his filing of the copyright applications at issue); *Sadowski v. Gudmundsson*, 206 F.R.D. 25, 26 (D.D.C. 2002) (denying motion to quash defendant's deposition of plaintiff's trial counsel regarding a conference call that counsel and his client had with the U.S. Copyright Office).

Here, regardless of which test applies, and irrespective of the applicability of the crime-fraud exception, the Studio Parties are entitled to take the deposition of Toberoff to adduce evidence relevant to their counterclaim for fraud on the Copyright Office. Toberoff represented Hill in his purported termination of the 1986 LPA's grant of rights, filed Hill's application for copyright registration based on Hill's claim of authorship of the 1986 Screenplay, and communicated with the U.S. Copyright Office regarding that application.

The factual underpinnings of the authorship, termination and ownership representations Toberoff made to the Copyright Office are not privileged and subject to discovery. And the evidence demonstrates that Toberoff has exclusive knowledge of these facts, as highlighted by Hill's own misunderstanding of those facts. Toberoff also appears to have exclusive knowledge of the factual basis, if any, for the allegation that Hill sent himself the termination notice that Hill learned about four years after Hill allegedly sent it, well after this action was commenced. *Compare* Cmplt. ¶ 34 ("on November 10, 2021, Hill sent an additional notice of termination, pursuant to 17 U.S.C. § 203(a), to Lady Amos"), *with* Hwang Decl. ¶ 4, Ex. H (Hill, stating on August 1, 2025: "I sent no such termination letter to myself, nor was told to do so by Toberoff. This is the first time I heard of it."). And Toberoff has exclusive knowledge concerning his own financial interests and motivations behind the copyright application Toberoff submitted based on the assertions of Hill's authorship, termination and ownership finding no support

-19-

SMRH:4933-0798-5600    MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION AND MOTION TO COMPEL

anywhere in the evidentiary record, and contradicted by Hill's own representations in 1986 and his admissions to Liman now.

Toberoff's argument in his concurrently filed motion for protective order that "[t]here is nothing left to ask a live witness that the complete written file does not answer" reveals that he misunderstands the Studio Parties' counterclaim for fraud on the Copyright Office, which is based on Hill's claim of authorship of the 1986 Screenplay, not any purported concealment by Hill that his was an "adverse claim."[11]    Similarly, Toberoff's contention that *Browne v. Clark*, No. 2:21-cv-02840-AB-AJR, 2025 WL 819024 (C.D. Cal. Feb. 18, 2025), is "directly on point" is wrong.    There, unlike here, the court granted the motion to quash *without prejudice* and based its ruling in large part on the fact that the subject matter of the sought testimony fell outside of the phase of the action in which the parties were engaged. *Id*. at *4-6.    And unlike in *Browne*, the Studio Parties have propounded relevant discovery on the Hill Parties, and received virtually none regarding the matters as to which Toberoff is a percipient witness.

Toberoff's argument, pursuant to 17 U.S.C. § 411(b)(2), that this information is outside of the Court's purview is also wrong.    *See* 17 U.S.C. § 411(b)(2) ("In any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.").    Ninth Circuit law holds that, "*[b]efore* making such a request,

---

[11] Toberoff's argument regarding 17 U.S.C. § 411(b)(1) fails for the same reason. As Toberoff acknowledges, a registration is invalid if "inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate" and "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration."  17 U.S.C. §§ 411(b)(1)(A), (B).  The inaccurate information at issue in the Studio Parties' counterclaim is not Hill's "concealment" of the Studio Parties' *adverse* assertions of authorship and ownership, but the claim of Hill's authorship and ownership that Toberoff asserted itself.

-20-

a court must first establish whether the registrant had the proper 'knowledge' of the inaccuracy under § 411(b)(1)(A)." *Unicolors, Inc. v. H&M Hennes & Mauritz, LP*, 52 F.4th 1054, 1064 (9th Cir. 2022) (emphasis added) (citing *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 625 (7th Cir. 2013)). Accordingly, Toberoff's contention that knowledge cannot be examined before exhausting administrative remedies lacks any basis.

## G. THE COURT SHOULD COMPEL THE PRODUCTION OF DOCUMENTS CONCERNING LADY AMOS AND ITS RELATIONSHIP TO HILL

As set forth in the Studio Parties' April 16, 2026 motion to compel (Dkt. 74), which the Court granted in its entirety (Dkt. 105), Lady Amos's corporate and financial documents and records are critical to vetting the Hill Parties' own allegations that Lady Amos was merely Hill's "alter ego," and to otherwise obtain information going to the nature of the relationship between Hill and Lady Amos. *See* Dkt. 1 at ¶ 43 ("At all times relevant, Hill exercised complete control of Lady Amos, which merely served as Hill's alter ego for doing business."). This "alter ego" allegation is central to Hill's claim that he is the copyright author of the 1986 Screenplay and a grantor of the copyright therein to United Artists (made via a 1986 grant from Lady Amos—not Hill), both of which are necessary predicates for all of Hill's claims in this action. The records sought here are standard fare when an "alter ego" assertion has been made[12]—a proposition even stronger where the allegation is made, as it is here, *by* the party from whom the discovery is sought.

---

[12] *See, e.g., Everflow Tech. Corp. v. Millennium Elecs., Inc.*, No. C07-05795 JF (HRL), 2009 WL 3565558, at *2 (N.D. Cal. Oct. 27, 2009) (permitting non-party discovery of bank records as "relevant to Everflow's claims of alter ego"); *Vieste, LLC v. Hill Redwood Dev. Ltd.*, No. C-09-04024 JSW (DMR), 2011 WL 855831, at *4 (N.D. Cal. Mar. 9, 2011) (permitting discovery into "bank account and other financial information" as "relevant to alter ego liability"); *Del Campo v. Am. Corrective Counseling Servs., Inc.*, C 01-21151 JW, 2008 WL 4858502, at *5 (N.D.

The Court agreed and thus granted the Studio Parties' motion to compel the production of Lady Amos's financial and banking records from 1976-2000 in the May 26 order.  But the Hill Parties produced no such financial or banking records following the issuance of that order, belying the claims of burden they had asserted in opposition to the Studio Parties' motion. *See* Section B.2 *supra.*  And the limited 1976-2000 date range to which the Studio Parties had previously agreed was based on the same, unfounded claim of burden.

The Studio Parties' agreement to the limited date range applied to all of the following RFPs:

- Lady Amos RFP No. 18: All DOCUMENTS constituting or reflecting Lady Amos' financial records from its formation through the present, including, without limitation, any and all audited or unaudited balance sheets, income statements, profit and loss statements and cash flow statements.

- Lady Amos RFP No. 19: All DOCUMENTS constituting or reflecting Lady Amos' banking records from its formation through the present, including, without limitation, any and all bank statements, applications, and records reflecting deposits, withdrawals and/or transfer.

- Hill RFP No. 20/Lady Amos RFP No. 25: All DOCUMENTS and COMMUNICATIONS concerning HILL's role as a Director of LADY AMOS from its formation through the present.

- Lady Amos RFP No. 27: All DOCUMENTS and COMMUNICATIONS concerning Darlene Hill's role as a Director of LADY AMOS from its formation through the present.

- Hill RFP No. 21/Lady Amos RFP No. 26: All DOCUMENTS and COMMUNICATIONS concerning HILL's role as the President of LADY AMOS from its formation through the present.

Cal. Nov. 10, 2008) ("The financial documents Plaintiffs seek are relevant to determine whether the entity Defendants were merely alter egos of Mealing and Hasney.") (citations omitted).

-22-                    Case No. 2:24-cv-01587-HDV-SSC

- Lady Amos RFP No. 28: All DOCUMENTS and COMMUNICATIONS concerning Darlene Hill's role as the Secretary of LADY AMOS from its formation through the present.

- Lady Amos RFP No. 24: All DOCUMENTS that constitute, refer to, or reflect any agreements between LADY AMOS and any PERSON, including, without limitation, HILL.

- Hill RFP No. 22/ Lady Amos RFP No. 29: All DOCUMENTS signed by HILL and/or Darlene Hill on Lady Amos' behalf from its formation to the present, including, without limitation, any and all agreements, applications and/or governmental filings.

- Hill RFP No. 23/Lady Amos RFP No. 30: All DOCUMENTS and COMMUNICATIONS concerning any monetary payments of any kind or nature paid by LADY AMOS to HILL from its formation through the present, including, without limitation, any salary, disbursements, distributions, dividends, bonuses, and/or expense reimbursements.

- Lady Amos RFP No. 31: All DOCUMENTS and COMMUNICATIONS concerning any monetary payments of any kind or nature paid by LADY AMOS to any other PERSON from its formation through the present, including, without limitation, any salary, disbursements, distributions, dividends, bonuses, and/or expense reimbursements.

Hwang Decl. ¶ 17, Ex. EE; Dkt. 105 at 13-14.  In light of the paltry production, the Studio Parties request an order compelling the Hill Parties and Toberoff to produce all documents responsive to the foregoing RFPs, without date limitation,[13] following a reasonable effort to obtain all such documents from the Hill Parties' banks, accountants and other agents.  *See* May 26, 2026 Order (Dkt. No. 105) at 14

---

[13] Implicitly acknowledging the wild goose chase they led the Studio Parties on, the Hill Parties have agreed to produce all documents responsive to these categories through the present and without time limitation.  The Studio Parties nonetheless seek a Court order given Toberoff's past reneging of agreements reached between the parties concerning discovery.

(rejecting Hill Parties' contention that they "should not be required to obtain the sought records from third-party financial institutions").

Additionally, although the Hill Parties have produced limited tax returns in response to Hill RFP No. 26 and Lady Amos RFP No. 34, each of which call for tax records and related materials, only the tax *returns* have been produced, without any of the backup for those returns or other materials requested in connection with these tax records. Accordingly, the Studio Parties' request an order compelling the Hill Parties to produce all materials responsive to the following RFPs, again without date limitation and following a reasonable effort to obtain all such materials from the Hill Parties' accountants and other agents who might have them:

- Hill RFP No. 26: All DOCUMENTS and COMMUNICATIONS concerning any income taxes HILL has paid since 1975, including, without limitation, all tax returns and/or other tax filings made by HILL, all tax audits of any tax filings made by HILL, all T4 Statements of Remuneration provided to HILL, and all Notices of Assessment or Notices of Reassessment issued to HILL.

- Lady Amos RFP No. 34: All DOCUMENTS and COMMUNICATIONS concerning any and all taxes paid or tax records filed or issued by LADY AMOS from its formation through the present, including, without limitation: (i) all income, payroll, Social Security or any other form of taxes paid by LADY AMOS; (ii) all tax returns or other tax records filed by LADY AMOS; (iii) all tax audits of any tax filings made by LADY AMOS; (iv) all T4 Statements of Remuneration issued by LADY AMOS; and (v) all Notices of Assessment or Notices of Reassessment issued to LADY AMOS.

**H.    TOBEROFF SHOULD BE REQUIRED TO CERTIFY THE REASONABLE COMPLETENESS OF THE PRODUCTIONS ORDERED BY THE COURT AND/OR PREVIOUSLY AGREED TO BY COUNSEL**

Given the myriad discovery abuses that have now come to light—including repeated false representations concerning the "completeness" of the productions made by Toberoff and the Hill Parties; false representations of having run search

-24-

terms; flagrant violations of the Court's prior orders; and obviously inadequate efforts to collect and produce categories of responsive materials previously ordered by the Court and/or that Toberoff agreed to produce—the Studio Parties request that Toberoff be required to submit a declaration attesting to the completeness of any production ordered by the Court in ruling on the instant motion, detailing the steps taken to comply with any such ruling.

## I. THE STUDIO PARTIES ARE ENTITLED TO THEIR REASONABLE ATTORNEY'S FEES

A party who successfully moves for an order compelling an answer and/or the production of documents in response to a request for production is entitled to an award of its reasonable attorney's fees and costs. *See* Fed. R. Civ. P. 37(a)(5)(A) ("If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.").

The Studio Parties should be awarded their attorney's fees here based on the long pattern of ongoing discovery abuses set forth herein, including but not limited to the mass spoliation of emails and concealment of responsive documents that has necessitated the multiple motions the Studio Parties have thus far been forced to bring.

## J. CONCLUSION

For the foregoing reasons, the Studio Parties respectfully request entry of an Order granting the relief requested herein, and such other and further relief the Court deems just and proper.

SMRH:4933-0798-5600

Dated: August 7, 2026

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By          */s/ Wook Hwang*
          WOOK HWANG
          Attorneys for
METRO-GOLDWYN-MAYER STUDIOS
INC.; AMAZON STUDIOS LLC; UNITED
      ARTISTS PICTURES INC.

SMRH:4933-0798-5600

Case No. 2:24-cv-01587-HDV-SSC
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE
APPLICATION AND MOTION TO COMPEL