Marc Toberoff (S.B. #188547)
mtoberoff@toberoffandassociates.com
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, California 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

*Attorneys for Plaintiff and Counterclaim Defendants;*
*Non-Party Movant Marc Toberoff on his own behalf*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| R. LANCE HILL, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>METRO-GOLDWYN-MAYER STUDIOS INC., a Delaware corporation; AMAZON STUDIOS LLC, a California limited liability company; UNITED ARTISTS PICTURES INC., a Delaware corporation; and DOES 1-10,<br><br>    Defendants. | Case No. 2:24-cv-01587-HDV-SSC<br>Assigned to: Hon. Hernan D. Vera<br>Referred to: Hon. Stephanie S. Christensen, U.S. Magistrate Judge<br><br>**DISCOVERY MATTER**<br>**JOINT STIPULATION PURSUANT TO LOCAL RULE 37-2 REGARDING NON-PARTY MARC TOBEROFF'S MOTION FOR A PROTECTIVE ORDER PRECLUDING HIS DEPOSITION**<br><br>Date: September 1, 2026<br>Time: 1:30 p.m.<br>Ctrm.: 790, Roybal Federal Building<br>Hon. Stephanie S. Christensen,<br>United States Magistrate Judge<br><br>Discovery Cutoff: September 28, 2026<br>Pretrial Conference: March 2, 2027<br>Trial: March 23, 2027 |

-i-

METRO-GOLDWYN-MAYER STUDIOS INC., a Delaware corporation; AMAZON STUDIOS LLC, a California limited liability company; UNITED ARTISTS PICTURES INC., a Delaware corporation,

     Counterclaimants,

  v.

R. LANCE HILL, an individual; and LADY AMOS LITERARY WORKS LTD., a Canadian corporation,

     Counterclaim Defendant and Third-Party Counterclaim Defendant.

-ii-

Pursuant to Federal Rules of Civil Procedure 26(c) and 45(d) and Local Rule 37-2, non-party Marc Toberoff ("Movant"), counsel of record for Plaintiff and Counterclaim Defendant R. Lance Hill ("Hill" or "Plaintiff"), and Defendants and Counterclaimants Metro-Goldwyn-Mayer Studios Inc., Amazon Studios LLC, and United Artists Pictures Inc. (collectively, "Defendants" or the "Studio Parties") submit this Joint Stipulation regarding Movant's Motion for a Protective Order precluding his deposition.

The parties met and conferred pursuant to Local Rule 37-1 on July 23, 2026, 2026 and again on July 29, 2026, but were unable to resolve the dispute. Pursuant to Local Rule 37-2.1, a copy of the Court's scheduling order and its amendments is attached as Exhibit H to the Declaration of Marc Toberoff ("Toberoff Decl.").

# TABLE OF CONTENTS

I.    MOVANT'S INTRODUCTORY STATEMENT.................................................1

II.    DEFENDANTS/THE STUDIO PARTIES' INTRODUCTORY STATEMENT .............................................................................................3

II.    THE ISSUE IN DISPUTE ........................................................................4

III.    MOVANT'S CONTENTIONS AND POINTS AND AUTHORITIES.........5

    A.    Movant's Position and Proposed Resolution...............................6

    B.    Governing Standards: Depositions of an Adversary's Trial  Counsel Are Disfavored and Presumptively Improper ...........................................................6

    C.    "No Other Means": Every Subject Identified by Defendants Is  Available From Documents, From Plaintiff, or From Third  Parties ...................................9

    D.    "Nonprivileged": The Deposition Seeks Attorney-Client Communications, Opinion Work Product, and Protected  Litigation Conduct...11

    E.    Not "Crucial": The Copyright Office's Own File Refutes  Defendants' "Fraud" Premise, and the Bifurcated Liability Issues  Do Not Involve Counsel 13

    F.    The Subpoena Is an Improper Litigation Tactic Directed at the Adversary's Counsel .......................................................................15

    G.    In the Alternative, Any Deposition Must Be Strictly Confined ...............16

    H.    The Court Should Award Movant His Expenses......................................16

    I.    Conclusion .......................................................................17

IV.    DEFENDANTS' CONTENTIONS AND POINTS AND  AUTHORITIES17

## I.    MOVANT'S INTRODUCTORY STATEMENT

This is a copyright case about a screenplay written forty years ago. Plaintiff R. Lance Hill wrote the original *Roadhouse* screenplay "on spec" in July 1986, before he had any relationship with United Artists, and assigned it to United Artists in September 1986, including in his personal capacity. Compl., ECF No. 1, ¶¶ 2, 27–31. In 2021, Hill served a statutory notice of termination of his 1986 grant under 17 U.S.C. § 203(a), effective November 11, 2023. Defendants nonetheless completed and released their 2024 remake of *Road House after* the termination's effective date, without a new license. The merits of this action turn on the events of 1986, on the two films and Hill's screenplay: whether Hill's statutory termination was valid or whether the post-creation "work for hire" boilerplate inserted by Defendants' predecessor United Artists in Hill's 1986 agreement could effectively waive his inalienable termination right; if his copyright recapture is valid; and whether the 2024 remake is substantially similar to the protected expression in Hill's 1986 spec screenplay. Not one of those issues calls for testimony from Plaintiff's litigation counsel, who first appeared on the scene decades after the operative facts and whose knowledge was obtained while acting as Hill's counsel.

Yet Defendants have noticed the deposition of Marc Toberoff, Plaintiff's counsel of record, and served him with a Rule 45 subpoena commanding his appearance at the offices of Defendants' counsel on August 19, 2026. Toberoff Decl. ¶ 3, Ex. A. Defendants' supplemental initial disclosures describe the subjects on which they claim Plaintiff's counsel has discoverable knowledge: (i) the application for copyright registration of the 1986 screenplay that Toberoff submitted to the U.S. Copyright Office on Hill's behalf, and communications relating to it; (ii) "Toberoff's financial interest in the rights to the 1986 Screenplay," under counsel's engagement agreement; (iii) "any and all other persons with a financial interest" in those rights; and (iv) "communications with

-1-

non-parties concerning this action." Toberoff Decl. ¶ 4, Ex. B at 5. Every one of those subjects is either documented in writing, is obtainable from Plaintiff or from third parties, is privileged, or is all three. Defendants have already tested this: they served document requests on Movant, and Movant served responses, objections, and a privilege log. Toberoff Decl. ¶ 7.

The deposition of an opposing party's trial counsel is uninformedly disfavored in every circuit. Under the governing three-part test of *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986), which district courts throughout the Ninth Circuit, including this District, consistently apply, the party seeking the deposition must show that "(1) no other means exist to obtain the information than to depose opposing counsel, (2) the information sought is relevant and nonprivileged; and (3) the information is *crucial* to the preparation of the case." *Id.* (emphasis added) (citation omitted). Defendants cannot carry their burden on any of the three factors, let alone all of them.

Defendants' asserted predicate is their own frivolous allegation of a "fraud on the Copyright Office" in their counterclaim for declaratory relief, when the Copyright Office's own file and *the registration itself* refutes that premise. Correspondence between the Office and Hill regarding United Artists' registration of the 1989 *Road House* film and its registration of Hill's 1986 assignment identifying the underlying screenplay as "By Lance Hill" resulted in the Office registering Hill's copyright claim under its established adverse-claim practice, Compendium of U.S. Copyright Office Practices § 1808 (3d ed. 2021), with notice to United Artists. Toberoff Decl. ¶ 8, Ex. F. Such an adverse-claim registration issued by an examiner cannot support Defendants' claim under 17 U.S.C. § 411(b), whose remedy in any event is an administrative referral to the Register of Copyrights, not the deposition of opposing counsel. The balance of what Defendants say they want fares no better. They already know opposing counsel's

contingent compensation, which is plainly stated and defined in the copy of its engagement agreement which was produced. Toberoff Decl. ¶ 12. And Defendants' attempt to ply communications made in the course of counsel's representation transparently invades the attorney-client privilege and work product of the very litigation being defended, in a case now bifurcated such that only liability is at issue.

What remains is the overzealous tactic itself. Defendants, represented by two offices of an international law firm, seek to put Plaintiff's counsel, the principal of a two-attorney boutique firm, in the witness chair in the middle of the litigation he is conducting, based on unsupported accusations Defendants themselves drafted into their counterclaims. Courts have long condemned this maneuver as harassment that "disrupts the adversarial system" and it is subject to particularly strict judicial scrutiny. *Shelton*, 805 F.2d at 1327. The Court should forbid the deposition, quash the subpoena, and award Movant his expenses under Rules 26(c)(3), 37(a)(5)(A), and 45(d)(1).

## II.     THE STUDIO PARTIES' INTRODUCTORY STATEMENT

Toberoff is correct that, at its core, "[t]his is a copyright case about a screenplay written forty years ago" and that Toberoff "first appeared on the scene decades after the operative facts." In 1986, Third-Party Counterclaim Defendant Lady Amos Literary Works Ltd. ("Lady Amos"), Hill's loan-out corporation, sold the screenplay *Roadhouse* ("1986 Screenplay") to United Artists Pictures Inc. ("UA"). Both Lady Amos and Hill (collectively, the "Hill Parties"), individually and as Lady Amos's signatory, represented in that agreement that Lady Amos—*not* Hill—was the copyright author and owner of the 1986 Screenplay and that Hill had written it as a work-made-for-hire as Lady Amos's employee. Toberoff appeared "decades after the operative facts" and represented to the U.S. Copyright Office that

Lady Amos and Hill had lied in the 1986 agreement and that Hill was in fact the copyright author of the 1986 Screenplay.

Neither the Hill Parties nor Toberoff (who was served with a document subpoena) have produced an iota of evidence in this case supporting this decades-late about-face, nor any evidence probative of the core allegations made in this action relevant to Hill's claim of purported copyright authorship. Thus forced to rely upon a bevy of non-party subpoenas to gather relevant evidence, recent productions made by the subpoenaed non-parties has finally provided some clarity as to Toberoff's own financial motivations for the copyright application Toberoff submitted to the Copyright Office. They have further shown that Hill has engaged in a recent campaign of near-complete spoliation of his emails in an ill-conceived attempt to destroy evidence and bury the facts relevant to Toberoff's representations to the Copyright Office after "first appear[ing] on the scene decades after the operative facts."

In light of these revelations, the Studio Parties issued a subpoena on Toberoff on July 17, 2026, seeking to explore, *inter alia*, the factual bases for his and his firm's representations to the Copyright Office. Following Toberoff's preemptive refusal to sit for a deposition, the Studio Parties advised that they would be filing an *ex parte* application to compel his deposition on a date and time to be agreed upon and to address the myriad discovery abuses that have recently come to light. Given the interrelatedness of the issues, the Studio Parties' motion should be the vehicle by which the Court decides whether Toberoff should be compelled to comply with the Studio Parties' deposition subpoena. This redundant motion should be disregarded and denied.

## III.   THE ISSUE IN DISPUTE

One issue is presented: whether the Court should enter a protective order under Federal Rules of Civil Procedure 26(c) and 45(d) prohibiting Defendants

from taking the deposition of Plaintiff's counsel of record, Marc Toberoff, and quashing the deposition subpoena served on him.

Pursuant to Local Rule 37-2.1, the discovery at issue is set forth verbatim. Defendants' Notice of Deposition, served July 17, 2026, states:

> PLEASE TAKE NOTICE that, pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, Defendants and Counterclaimants Metro-Goldwyn-Mayer Studios Inc., Amazon Studios LLC, and United Artists Pictures Inc. (collectively, the "Studio Parties"), by and through their undersigned attorneys, will take the deposition upon oral examination of Marc Toberoff at the offices of Sheppard, Mullin, Richter & Hampton LLP, 1901 Avenue of the Stars, Suite 1600, Los Angeles, California 90067, on August 19, 2026, beginning at 9:00 a.m. PST, or at such other location and time as may be agreed to by counsel and the deponent (including by remote means).

The accompanying subpoena, issued on Form AO 88A and signed by Defendants' counsel on July 17, 2026, commands Marc Toberoff to "appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action," at the same date, time, and place, to be "recorded by this method: stenographic and videotape." It commands no document production.

Defendants unliterally issued the July 17 subpoena for an August 19, 2026 deposition without the professional courtesy of even inquiring as to Mr. Toberoff's availability on that date. On July 18, Mr. Toberoff informed Defendants' counsel that he would be on a pre-planned family vacation August 1-21, and overseas for the majority of that period. Toberoff Decl. ¶ 5, Ex. C. In response, Defendants' counsel informed Mr. Toberoff on July 29 that Defendants would not hold him to the August 17 deposition date in the subpoena, while insisting on taking counsel's deposition. Toberoff Decl. ¶ 6, Ex. D.

## IV.  MOVANT'S CONTENTIONS AND POINTS AND AUTHORITIES

### A.      Movant's Position and Proposed Resolution

The noticed deposition of Plaintiff's trial counsel is improper in its entirety and should be forbidden. Following the parties' Local Rule 37-1 conference of counsel on July 23, Movant proposed on July 30 that Defendants withdraw the deposition notice and subpoena and pursue the subjects identified in their disclosures through party discovery directed to Plaintiff, through the complete documentary record (including the Copyright Office file, which is already in the parties' possession), and through third-party discovery. Toberoff Decl., ¶ 6. Defendants refused to withdraw the subpoena, and insisted on proceeding with the opposing counsel's deposition on a mutually available date. The parties are at impasse. *Id.*

### B.      Governing Standards: Depositions of an Adversary's Trial Counsel Are Disfavored and Presumptively Improper

Rule 26(c) authorizes the Court, for good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including an order "forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1)(A). Good cause exists where specific prejudice or harm will result absent an order. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003). Because Defendants proceeded against Movant, a non-party, by Rule 45 subpoena, mandatory protections also apply: the Court "must quash or modify a subpoena" that "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv). The serving party bears an affirmative duty to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," enforceable by mandatory sanctions. Fed. R. Civ. P. 45(d)(1); *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184–85

(9th Cir. 2013). All discovery, party or non-party, must be proportional to the needs of the case, Fed. R. Civ. P. 26(b)(1), and the Court "must" limit discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

Those general limits carry special force where the discovery sought is the oral examination of the adversary's trial counsel. The Supreme Court's warning in *Hickman v. Taylor* remains the foundation: an attorney must be able to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." 329 U.S. 495, 511 (1947). Forcing an opposing attorney to testify about his handling of a client's matter makes him "much less an officer of the court and much more an ordinary witness," and "[t]he standards of the profession would thereby suffer." *Id.* at 513. As Justice Jackson put it, "[d]iscovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary." *Id.* at 516 (Jackson, J., concurring); *see also Upjohn Co. v. United States*, 449 U.S. 383, 389, 399 (1981) (attorney-client privilege is the oldest of the common-law privileges; discovery revealing an attorney's mental processes is particularly disfavored).

From these principles, *Shelton* articulated the now-prevailing rule: depositions of opposing counsel should be permitted only in "limited circumstances," where the party seeking the deposition shows that "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." 805 F.2d 1323, 1327 (citation omitted). *Shelton* explained why: "Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation." *Id.* The practice detracts from

the quality of client representation and chills the candor of attorney-client communications. *Id.* at 1327.

The Fifth, Sixth, and Tenth Circuits follow *Shelton*. *See Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002); *Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999); *Boughton v. Cotter Corp.*, 65 F.3d 823, 829–30 (10th Cir. 1995). Although the Ninth Circuit has not adopted a single standard, district courts throughout this Circuit, including this District, routinely apply *Shelton*.

For instance, in *Eastwood Ins. Servs., Inc. v. Titan Auto Ins. of N.M., Inc.*, No. CV 08-8078 AHM (RZx), 2010 WL 11595846 (C.D. Cal. Feb. 11, 2010); and *Soukhaphonh v. Hot Topic, Inc.*, No. CV 16-5124 DMG (AGRx), 2017 WL 10378493 (C.D. Cal. Sept. 14, 2017), the Courts consistently denied requests to depose opposing counsel, strictly enforced the legal standards to prevent disruption and protect the attorney-client privilege and directed that information be obtained through less intrusive means, such as document production or depositions of other witnesses. *See also, e.g.*, *Am. Cas. Co. of Reading, Pa. v. Krieger*, 160 F.R.D. 582, 588–90 (S.D. Cal. 1995) ("[T]he practice of forcing trial counsel to testify as a witness has long been discouraged and has been recognized as disrupting the adversarial nature of our judicial system."); *Nocal, Inc. v. Sabercat Ventures, Inc.*, No. C 04-0240 PJH (JL), 2004 WL 3174427 (N.D. Cal. Nov. 15, 2004) (quashing subpoena to opposing counsel as harassment absent extraordinary circumstances).

Most recently, and directly on point, this Court's colleague quashed a subpoena seeking documents and deposition testimony from plaintiffs' counsel of record concerning, of all things, communications about a copyright registration. *Browne v. Clark*, No. 2:21-cv-02840-AB (AJRx), [2025 WL _____] (C.D. Cal. Feb. 18, 2025). Applying Rule 26(b)(2)(C) and the concerns embodied in *Shelton*, the court held that the deposing parties were required first to depose the plaintiffs

themselves and to exhaust written discovery before any examination of counsel could even be considered. *Id.* California law, which governs the professional setting in which counsel here practices, is in accord. *See Carehouse Convalescent Hosp. v. Superior Court*, 143 Cal. App. 4th 1558, 1562 (2006) (depositions of opposing counsel are "presumptively improper, severely restricted" and require an evidentiary showing of "extremely good cause"); *Spectra-Physics, Inc. v. Superior Court*, 198 Cal. App. 3d 1487, 1493–96 (1988) (adopting *Shelton*).

The burden of satisfying all three *Shelton* factors rests on Defendants, the parties seeking the deposition. *See Krieger*, 160 F.R.D. at 588–89; *Erhart v. BofI Fed. Bank*, No. 15-cv-02287 BAS (NLS), 2017 WL 840648, at *3 (S.D. Cal. Mar. 2, 2017). They cannot satisfy any of them.

## C.    "No Other Means": Every Subject Identified by Defendants Is Available From Documents, From Plaintiff, or From Third Parties

Defendants' own disclosures define the universe of subjects on which they claim counsel has knowledge, and each fails the first *Shelton* factor on its face.

*First*, the registration, application and subsequent related communications indicating that Hill's screenplay copyright recovered via statutory termination would be registered as an "adverse claim" are all in Defendants' possession. The application, the Copyright Office's correspondence, counsel's written responses, the 1986 recorded assignment, and the resulting certificate of registration are all in writing and have been duly produced. Toberoff Decl. ¶¶ 8-9, Exs. F-G. Defendants themselves attached the certificate to their pleading. Answer & Countercls., ECF No. 22, Ex. E. There is nothing left to ask a live witness that the complete written file does not answer, and Defendants are not entitled to their opposing counsel's mental impressions, privileged communications or work product. To the extent Defendants want Hill's knowledge of the application filed on his behalf, Hill is a

party whom Defendants may depose. A deposition of counsel is impermissible where the information resides in documents and in party witnesses. *Browne*, *supra*; *Soukhaphonh*, 2017 WL 10378493 at *6.

*Second*, counsel's "financial interest" is his engagement on a contingent fee basis. Movant's contingent compensation is fixed by a written engagement agreement with his client that has been produced to Defendants. Toberoff Decl. ¶ 12. It is contingent compensation for legal services measured by the proceeds from a successful recovery of rights, including a producer attachment on future derivative productions, all as explicitly set forth in the engagement agreement itself. Whatever marginal relevance Defendants might assert (and in the current, bifurcated liability phase there is none, see Section E below), the facts are documentary and can be obtained, if at all, through targeted written discovery, not through an oral examination of trial counsel. *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

*Third*, "other persons with a financial interest" in the screenplay rights. An interrogatory to Plaintiff answers that question in a sentence. Moreover, Defendants already have the answer as a result of document discovery: Doug Liman who directed Defendants' 2024 *Road House* remake film. Toberoff Decl. Ex. B at 5–6. Defendants are free to take Mr. Liman's deposition, and it appears they will do so. *Id*.

*Fourth*, "communications with non-parties concerning this action." The non-parties Defendants themselves identify (e,g., Doug Liman and Joel Silver) are available to Defendants by subpoena, and Defendants' disclosures confirm they know exactly who those persons are. Toberoff Decl. Ex. B at 5–6. Movant has, moreover, already responded to Defendants' document requests directed to these subjects and served a privilege log. Toberoff Decl. ¶ 7. Defendants' remedy for any disagreement with those responses is a motion directed to the documents, not a chair-side interrogation of Plaintiff's lawyer.

*Shelton*'s first factor is not satisfied where the information sought can be obtained by other means. Defendants have not deposed Plaintiff, have not exhausted normal discovery on any of these subjects, and have made no showing that they are incapable of obtaining relevant discoverable information by less intrusive means. That alone requires denial of the deposition. *Browne*, *supra*; Fed. R. Civ. P. 26(b)(2)(C)(i).

**D.    "Nonprivileged": The Deposition Seeks Attorney-Client Communications, Opinion Work Product, and Protected Litigation Conduct**

The second *Shelton* factor independently bars the deposition, because what Defendants actually seek from Movant, beyond the documentary record they already possess, is privileged at its core. Movant's knowledge of this matter was acquired in and through his representation of Hill. His communications with his client concerning the registration, the termination notices, and this action are attorney-client privileged and/or attorney work product. *Upjohn*, 449 U.S. at 389. His professional evaluation and selection of facts, his legal theories, and his strategy in exercising Hill's inalienable termination right under 17 U.S.C. § 203(a), securing Hill's registration and prosecuting this case are classic opinion work product, entitled to nearly absolute protection. *Hickman*, 329 U.S. at 510–13.

The acts Defendants point to were themselves litigation conduct undertaken by counsel in a representative capacity. The Copyright Act expressly contemplates that a termination notice is served and recorded, as here, by the author's "duly authorized agent[s]." 17 U.S.C. § 203(a)(4)(A); 37 C.F.R. § 201.10. And registration of Hill's resulting copyright is the statutory precondition to this very infringement suit. 17 U.S.C. § 411(a); *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301–02 (2019). Counsel duly filed the copyright registration application on an expedited basis in January 2024 and filed this action

weeks later. (Compl., ECF No. 1, ¶ 77; see Toberoff Decl. ¶¶ 8-9 & Exs. F-G (Reg. No. PA 2-455-802 registration record).) The registration was not some freestanding business venture; it was a required step in anticipation of, and in preparation for, this litigation.

Examining counsel about why and how he took statutorily required pre-suit steps is examining him about his litigation judgment, the precise inquiry *Hickman* forbids. And insofar as Defendants' state-law counterclaim rests on counsel's statutory notices and pre-suit filings, California law adds an independent bar: communications made in anticipation of litigation are absolutely privileged and cannot be the basis of liability. Cal. Civ. Code § 47(b); *Silberg v. Anderson*, 50 Cal. 3d 205, 212–16 (1990); *Rubin v. Green*, 4 Cal. 4th 1187, 1193–95 (1993) (attorney's pre-litigation conduct in a representative capacity is protected petitioning activity).

Anticipating all of this, Defendants frivolously invoke the crime-fraud exception by pointing to their own counterclaim labels. That gets them nowhere. The exception applies only upon *an evidentiary showing* of "reasonable cause to believe" that counsel's services were obtained in furtherance of an ongoing or planned crime or fraud, *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1094 (9th Cir. 2007), a threshold the Court vigorously polices before any privileged material may even be reviewed, *United States v. Zolin*, 491 U.S. 554, 572 (1989). Pleadings are not evidence, and a party cannot bootstrap its way past the attorney-client privilege and the protection of attorney work product by drafting accusations against opposing counsel and then citing them as the basis for his deposition. Even where the exception applies, it only reaches specific communications shown to further the fraud; it is not a license for a roving oral examination of the adversary's trial counsel. See *Napster,* 479 F.3d at 1090; *In re Grand Jury Proceedings*, 87

-12-

F.3d 377, 382–83 (9th Cir. 1996). Here, as shown next, the documentary record affirmatively disproves the fraud premise, so no threshold showing is possible.

**E.  Not "Crucial": The Copyright Office's Own File Refutes Defendants' "Fraud" Premise, and the Bifurcated Liability Issues Do Not Involve Counsel**

The third *Shelton* factor asks whether counsel's testimony is "crucial" to the preparation of Defendants' case. Here it is not only non-crucial; it is pointless, because the fraud theory it is said to serve is refuted by the record of the very agency Defendants claim was defrauded.

The chronology, documented in full in the correspondence produced to Defendants and attached to the Toberoff Declaration, is as follows. Counsel submitted Hill's registration application on January 24, 2024, on an expedited basis. Two days later, the Copyright Office itself wrote to counsel, identified the 1989 registration for the *Road House* motion picture (No. PA0000420572), observed that the new registration application named Hill as author of the underlying screenplay and answered "No" to the work-made-for-hire question, and asked whether Hill was "disputing the authorship and ownership of the screenplay." Toberoff Decl. Ex. F. Counsel responded in writing on February 1 and February 12, 2024, setting out the facts: the screenplay was written on spec in July 1986; Hill had no employment or contractual relationship with United Artists when he wrote it; the rights were assigned to United Artists in September 1986; and that assignment, identifying the work as "Roadhouse; screenplay / By Lance Hill a.k.a. David Lee Henry," was recorded with the Copyright Office itself in October 1986 (Doc. No. V2209P212). *Id.* The Office replied that it "generally does not have the authority to adjudicate adverse or conflicting claims," that it "may put both claims on record if each is acceptable on its own merits," and that upon registration it would "notify United Artists Pictures, Inc. that an adverse claim is

-13-

being registered." *Id.* When the Office stated that it would proceed under its adverse-claim practice, counsel expressly asked it to "proceed with registering" the screenplay "with an adverse claim designation in accordance with Compendium (Third) § 1808." *Id.* The Office issued the registration on February 21, 2024. Toberoff Decl. Ex. G.

On that record, the counterclaim's reliance on 17 U.S.C. § 411(b)(1) that supposedly necessitates counsel's deposition cannot function. Section 411(b) invalidates a registration only if inaccurate information was included "with knowledge that it was inaccurate" and "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1)(A-B); *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178 (2022) (knowledge means actual knowledge of the inaccuracy, and lack of knowledge of either fact or law will defeat the challenge). Here there was no concealment at all: the examiner knew of the 1989 registration (she raised it), knew Defendants' predecessor claimed "work was made for hire" (the prior registration said so), knew Hill's application took the contrary position, and registered Hill's claim under the Office's adverse-claim practice, with notice to United Artists. Information the Register actually possessed cannot be information whose absence induced the registration. And the statute prescribes the procedure for testing any § 411(b) theory: the Court "shall" refer the question to the Register of Copyrights. 17 U.S.C. § 411(b)(2). The statutory scheme runs through the Register, not through a videotaped examination of the copyright plaintiff's lawyer.

Nor is counsel's testimony crucial to any issue actually being tried. By order of May 27, 2026, the Court bifurcated this action into liability and damages phases. ECF No. 108. The liability issues are the work-made-for-hire status of Hill's 1986 spec screenplay, the validity of Hill's statutory termination notice effective in 2023, and the similarity of two films to Hill's screenplay. The percipient witnesses

to the 1986 events are Hill, the former United Artists executives, and the CAA agents whom Defendants' own disclosures identify; the operative documents are the 1986 agreements and the two films' materials. Toberoff Decl. Ex. B. Movant witnessed none of the 1986 events. His engagement terms decades later have no bearing on any liability issue. A deposition that is unnecessary to the pending phase of the case is the opposite of "crucial."

**F.      The Subpoena Is an Improper Litigation Tactic Directed at the Adversary's Counsel**

Stripped of the fraud rhetoric, what Defendants have done is this: they drafted a counterclaim to declare Plaintiff's routine statutory termination invalid, hyperbolically accused Plaintiff's counsel of a "scheme," listed counsel in their own initial disclosures as a witness to the accusations they authored, and then served a subpoena on him, citing their own filings as the justification. A party cannot manufacture grounds to depose the opposing party's lawyer by the expedient of accusing him in its own pleadings. If it could, every defendant in every case could disable plaintiff's counsel by counterclaiming against him. That is why courts subject motions and tactics aimed at opposing counsel to particularly strict judicial scrutiny, and why they recognize that counsel depositions are a ready instrument of harassment and delay, *Shelton*, 805 F.2d at 1327; *Nocal*, 2004 WL 3174427 at *2; *Krieger*, 160 F.R.D. at 588–90.

The tactical purposes here are not hard to see. An oral examination of Plaintiff's counsel would (1) invade or force the assertion, question by question, of the attorney-client privilege and work product of the pending case; (2) generate a videotaped spectacle Defendants could deploy to cast Plaintiff's counsel as the story, deflecting attention from their own decision to release an unlicensed remake film after Hill's statutory termination took effect; (3) lay some predicate for a potential motion to disqualify Plaintiff's chosen counsel; and (4) impose grossly

-15-

asymmetric burdens: Defendants are represented by an international firm, while Plaintiff's counsel is the principal of a two-lawyer boutique whose absorption in defending his own deposition necessarily comes at his client's expense. Each of these is an illegitimate use of discovery. Rule 26(c) exists precisely to prevent discovery from being used "to annoy, embarrass, or oppress," and Rule 45(d)(1) obligated Defendants, before serving the subpoena, to take reasonable steps to avoid imposing these burdens. They took none.

### G. In the Alternative, Any Deposition Must Be Strictly Confined

The deposition should be forbidden outright based on Defendants' utter failure to satisfy the three Shelton factors. If, however, the Court is inclined to permit any deposition of Plaintiff's counsel, it should be deferred and narrowly confined: (1) Defendants must first exhaust party discovery (including Plaintiff's deposition), written discovery, and third-party discovery on the identified subjects; (2) any renewed request must be made to the Court on a particularized showing, subject by subject, satisfying *Shelton*; (3) any examination allowed should proceed in the first instance by written questions under Rule 31, or, if oral, should be limited to two hours, confined to specifically identified non-privileged topics, and conducted before a designated referee or subject to prompt telephonic recourse to the Court for privilege rulings; and (4) all costs should be borne by Defendants. *See* Fed. R. Civ. P. 26(c)(1)(B)–(D) (court may specify terms, method, and scope of discovery); *Browne, supra* (denying counsel deposition without prejudice pending exhaustion of less intrusive means).

### H. The Court Should Award Movant His Expenses

Rule 26(c)(3) makes Rule 37(a)(5) applicable to the award of expenses on this Motion. If the Motion is granted, the Court "must" require Defendants, their counsel, or both to pay Movant's reasonable expenses, including attorneys' fees, unless their position was substantially justified or other circumstances make an

-16-

award unjust. Fed. R. Civ. P. 37(a)(5)(A). Independently, Rule 45(d)(1) required Defendants to avoid imposing undue burden on a non-party and directs the Court to "enforce this duty and impose an appropriate sanction," which "may include lost earnings and reasonable attorney's fees." Fed. R. Civ. P. 45(d)(1); *Legal Voice*, 738 F.3d at 1184–85. Serving a videotaped deposition subpoena on the adversary's trial counsel, on subjects that are already documented, privileged, or immaterial to the bifurcated liability phase, and refusing to withdraw it after a full meet-and-confer, is not substantially justified. Movant requests his reasonable expenses in an amount to be established by supplemental declaration.

## I.    Conclusion

For the foregoing reasons, the Court should enter a protective order forbidding the deposition of Marc Toberoff, quash the July 17, 2026 subpoena, and award Movant his reasonable expenses under Rules 26(c)(3), 37(a)(5)(A), and 45(d)(1).

## V.    THE STUDIO PARTIES' CONTENTIONS AND POINTS AND AUTHORITIES

The Studio Parties incorporate by reference the factual record and points and authorities set forth in their concurrently filed motion to compel Toberoff's deposition.

DATED: August 7, 2026

TOBEROFF & ASSOCIATES, P.C.

By: */s/ Marc Toberoff*
    Marc Toberoff
*Non-Party Movant, on his own behalf, and*
*Attorneys for Plaintiff R. Lance Hill*

-17-

DATED: August 7, 2026

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: */s/ Wook Hwang*
Wook Hwang
*Attorneys for Defendants and Counterclaimants Metro-Goldwyn-Mayer Studios Inc., Amazon Studios LLC, and United Artists Pictures Inc.*

## SIGNATURE AUTHORIZATION ATTESTATION

I, Marc Toberoff, attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content as to their respective portions, and have authorized the filing.

DATED: August 7, 2026

*/s/ Marc Toberoff*
Marc Toberoff

-18-