Marc Toberoff (S.B. #188547)
mtoberoff@toberoffandassociates.com
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, California 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

*Attorneys for Plaintiff and Counterclaim Defendants;*
*Non-Party Movant Marc Toberoff on his own behalf*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| R. LANCE HILL, an individual,<br><br>Plaintiff,<br><br>v.<br><br>METRO-GOLDWYN-MAYER STUDIOS INC., a Delaware corporation; AMAZON STUDIOS LLC, a California limited liability company; UNITED ARTISTS PICTURES INC., a Delaware corporation; and DOES 1-10,<br><br>Defendants. | Case No. 2:24-cv-01587-HDV-SSC<br><br>Assigned to Hon. Hernan D. Vera<br>Referred to Hon. Stephanie S. Christensen, U.S. Magistrate Judge<br><br>**DISCOVERY MATTER**<br><br>**NON-PARTY MOVANT MARC TOBEROFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF HIS MOTION FOR A PROTECTIVE ORDER PRECLUDING HIS DEPOSITION**<br><br>Date: September 1, 2026<br>Time: 1:30 p.m.<br>Ctrm.: 790, Roybal Federal Building<br>Hon. Stephanie S. Christensen,<br>U.S. Magistrate Judge<br><br>Discovery Cutoff: September 28, 2026<br>Pretrial Conference: March 2, 2027<br>Trial: March 23, 2027 |

METRO-GOLDWYN-MAYER STUDIOS INC., a Delaware corporation; AMAZON STUDIOS LLC, a California limited liability company; UNITED ARTISTS PICTURES INC., a Delaware corporation,

Counterclaimants,

v.

R. LANCE HILL, an individual; and LADY AMOS LITERARY WORKS LTD., a Canadian corporation,

Counterclaim Defendant and Third-Party Counterclaim Defendant.

# I. INTRODUCTION

In this supplement, Movant addresses a narrow but dispositive point: the Studio Parties' case for deposing Plaintiff's trial counsel rests on assertions that the record—much of it the Studio Parties' own exhibits and public records—proves false. Because the Studio Parties incorporate their August 7, 2026 *ex parte* application as their portion of the Joint Stipulation (Dkt. 122-1 at 17), those same false premises comprise their opposition to the protective order. The point matters because of what *Shelton* requires. To depose an adversary's trial counsel, the Studio Parties must show that the information they seek is nonprivileged and "crucial" to their case, and, because they invoke the crime-fraud exception to reach counsel's privileged file, they must first make an evidentiary showing of "reasonable cause to believe" a fraud occurred. *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986); *United States v. Zolin*, 491 U.S. 554, 572 (1989); *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007). A showing built on demonstrably false facts is no showing at all. Once the false assertions are set aside, nothing "crucial" remains, no "reasonable cause" is shown, and the deposition of opposing counsel fails at the threshold. Rather than repeat the Joint Stipulation's *Shelton* analysis, this supplement matches each of the Studio Parties' specific factual claims against the document that refutes it.

# II. DEFENDANTS' JUSTIFICATION FOR DEPOSING COUNSEL RESTS ON DEMONSTRABLY FALSE FACTUAL CLAIMS

## A. The Public Record Refutes the "Concocted" Termination-Notice Claim

The centerpiece of the Studio Parties' bid to depose counsel is their assertion that Toberoff has "exclusive knowledge" of the "factual basis" for the second statutory notice terminating any express or implied transfer to Lady Amos, and a purported "more-than-plausible inference" that the authorship, termination, and ownership representations Toberoff made were "concocted out of thin air." Dkt. 121-2 (incorporated Appl.) at 19, 23. The sole evidentiary basis they offer is Hill's passing mention, in an August 1, 2025 email to film director Doug Liman, that he had no

recollection of this additional notice—years after counsel duly served it and recorded it with the Copyright Office. They say this email "prove[s]" the notice was false. *Id.*

It proves nothing of the kind. The November 10, 2021 Lady Amos termination notice is not a matter of anyone's "exclusive knowledge"; it is a recorded public document. It was served on November 10, 2021 and recorded with the U.S. Copyright Office on January 8, 2022 as Document No. V9982D930—three and a half years *before* Hill's email. Compl. ¶¶ 34-35; Dkt. 125-1 (Toberoff Decl.) ¶ 5, Ex. B. Termination notices "may be signed and served" by an author's authorized agent, 17 U.S.C. § 203(a)(4)(A); 37 C.F.R. § 201.10, and Toberoff was specifically retained to execute and enforce Hill's termination rights under the Copyright Act with respect to his 1986 "spec" screenplay "Roadhouse." Anything counsel "knows" beyond the recorded public notice—e.g., the legal strategy behind serving it—is protected attorney work product, not a ground for deposing opposing trial counsel. An octogenarian client's failure to recall, in a casual 2025 email, a statutory notice his lawyer served and recorded years earlier establishes forgetfulness, not fabrication.

The second Lady Amos notice was served in an "abundance of caution": implied copyright transfers are terminable, and because Hill's screenplay is not "work for hire" under *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989), the 1986 LPA could imply such a transfer to Hill's loan-out. Dkt. 1 (Compl.) ¶ 34. Defendants may disagree; but they may not depose counsel over it. There is nothing "exclusive," "crucial," nor "reasonable cause" to believe what the public record forecloses.

**B. The "Fraud on the Copyright Office" Premise Is Refuted by the Copyright Office's Own File.**

The Studio Parties' entire crime-fraud theory—the predicate for both the deposition and their demand to pierce counsel's privileged file—is that counsel defrauded the Copyright Office by representing Hill's authorship, concealing a "work-made-for-hire." But the agency's own file, long in the Studio Parties' possession and produced in this action, shows that nothing was concealed from anyone. The chronology

is documentary and undisputed. Counsel submitted Hill's registration application on January 24, 2024. Two days later, the Copyright Office itself wrote to counsel, identified the 1989 *Road House* registration (No. PA0000420572), and asked whether Hill was "disputing the authorship and ownership of the screenplay." Dkt. 125-1, ¶ 6, Ex. C. Counsel responded in writing and asked the Office to "proceed with registering" the screenplay "with an adverse claim designation in accordance with Compendium (Third) § 1808." The Office did exactly that, registering the adverse claim with notice to United Artists, observing that the work-for-hire issue was for the Court to decide. *Id*.

An examiner who raised the prior registration, was informed of the competing work-for-hire claim and registered the claim anyway under the agency's *established adverse-claim practice* was not deceived. Section 411(b) invalidates a registration only where inaccurate information was submitted "with knowledge that it was inaccurate" and the Register would have "refuse[d] registration" had she known the truth. 17 U.S.C. § 411(b)(1); *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178 (2022). The "fraud" the deposition is said to be "crucial" to prove is refuted by the file of the very agency alleged to have been defrauded.

**C. The "Mass Spoliation" and "Expunged In Toto" Assertions Are False.**

To lend a sinister cast to their crime-fraud narrative, the Studio Parties tell the Court that Hill's emails were the subject of "near-total spoliation" and that his Xplornet account was "expunged *in toto*." Dkt. 121-2 at 3, 8. Both are false, and were contradicted in writing before the Studio Parties filed. The contents of Hill's former computer's hard drive, including his Xplornet data, were transferred to his new computer, which was forensically imaged, searched with the terms in the Court's June 9, 2026 order and Defendants' June 10 email, and responsive emails were produced. Dkt. 125-1 ¶¶ 7, 11. The defunct Xplornet account was merely no longer in the rural ISP's cloud, all as disclosed to Defendants in pre-filing correspondence. Dkt. 125-1, ¶ 11; Dkt. 121-3 (Hwang Decl.) Ex. O at 1. Both of Hill's email accounts were searched, as were his wife's imaged phone and email account. Dkt. 121-3, Ex. N; Dkt. 125-8 (Hill

Decl.) ¶ 14. A party that surrenders his and his spouse's devices for forensic imaging is the opposite of a spoliator. As for Hill's s deletion of Gmails—unbeknownst to counsel, in the mistaken belief that it freed storage and made his new computer run better—it deprived the Studio Parties of nothing: the only persons with whom Hill emailed about this case were Liman and his agent, Richard Arlook, and both preserved, and produced or logged, that correspondence, which is how the Studio Parties obtained the very emails they quote. Dkt. 125-8 (Hill Decl.) ¶¶ 11–13. The repetition of "spoliation" over the Studio Parties' own refuting exhibits is not evidence of a fraud rendering counsel's testimony "crucial"; it is hyperbole the record disproves.

**D. The "Withheld Documents" Claim Reduces to Three Duplicate Emails All Parties knew the Studio Parties Already Had.**

The Studio Parties assert that counsel's indication that his production was complete "was false," and that Toberoff "withheld communications" with Liman. Dkt. 121-2 at 13. The actual record is this: a Toberoff associate inadvertently omitted three *duplicate* Liman emails from a June 30 production, which *all parties* already had from Liman's own production. When they raised the omission on July 11, counsel promptly produced the duplicates on July 14. Dkt. 125-12 (Kadaba Decl.) ¶¶ 2-3, Ex. A; Dkt. 125-1, ¶ 8. "Concealment" of documents known to already be in an adversary's possession is an impossibility, and inadvertent omission followed by prompt correction is harmless error. The Studio Parties recast this as proof of a "scheme"; the label cannot bear that weight, much less justify deposing opposing counsel.

**E. The "Concealed Financial Interest" Assertion Is False; the Engagement Agreement Was Produced.**

The Studio Parties suggest that Liman's production "revealed" a hidden financial interest—that Toberoff is "contractually entitled to receive 40% of any proceeds." Dkt. 121-2 at 4. Nothing was concealed. Counsel produced his engagement agreement and its amendment (TOBEROFF000144-146) without redaction and logged his privileged transmittal communications with his client. Dkt. 121-3, Ex. O at 2; Dkt. 125-1, ¶ 16.

Counsel's contingent compensation is fixed by his produced engagement agreement; it is irrelevant in the bifurcated liability phase, and no warrant to examine trial counsel.

**F. The Liman "Privilege" and Logging Assertions Are Both False.**

The Studio Parties twice mislead the Court about the Liman materials. They assert that counsel invoked a "contrived 'privilege' Liman himself disavowed," and that the Hill Parties "continue to maintain privilege" over communications Liman already produced. In fact, Hill's log entries reflect Liman's own assertion, through counsel, of a common-interest or joint-client privilege—an assertion the Hill Parties respect, not one they manufactured. Dkt. 121-3, Ex. O at 1-2. The Studio Parties likewise assert that counsel "neither produced nor logged any emails relating to this action post-dating its commencement." But as explained, per customary practice neither side, Defendants' counsel included, logged post-commencement communications with its clients. *Id.*

**G. The Studio Parties' Own Correspondence Refutes Any Claim of Urgency.**

Finally, the Studio Parties' conduct belies their rhetoric. Having unilaterally noticed counsel's deposition for August 19 without asking his availability, Defendants were advised of his long-planned travel and then confirmed on July 29 and August 6 that they would "consent to any reasonable extension request" and were "agreeable to delaying" their filing. Dkt. 125-1, ¶ 4, Ex. A. A deposition the proponent is content to defer is not "crucial," it is a litigation lever the *Shelton* factors prohibit.

## III. <u>CONCLUSION</u>

Strip away the assertions the record disproves, and nothing remains that is nonprivileged, "crucial," or supported by the evidence and "reasonable cause" the crime-fraud exception demands. The Studio Parties cannot satisfy any *Shelton* factor, let alone all three, on a foundation of demonstrably false facts. For the reasons stated, the Court should enter a protective order forbidding the deposition of Marc Toberoff, quash the July 17, 2026 subpoena, and award Movant his reasonable expenses under Rules 26(c)(3), 37(a)(5)(A), and 45(d)(1).

DATED: August 18, 2026

TOBEROFF & ASSOCIATES, P.C.

By: /s/ Marc Toberoff
Marc Toberoff
*Non-Party Movant, on his own behalf, and Attorneys for Plaintiff R. Lance Hill*