Marc Toberoff (S.B. #188547)
mtoberoff@toberoffandassociates.com
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, California 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

*Attorneys for Plaintiff and Counterclaim Defendant Hill and Third-Party Counterclaim Defendant Lady Amos*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

R. LANCE HILL, an individual,

Plaintiff,

v.

METRO-GOLDWYN-MAYER STUDIOS INC., a Delaware corporation; AMAZON STUDIOS LLC, a California limited liability company; UNITED ARTISTS PICTURES INC., a Delaware corporation; and DOES 1-10,

Defendants.

Case No. 2:24-cv-01587-HDV-SSC

Assigned to Hon. Hernan D. Vera
Referred to Hon. Stephanie S. Christensen, U.S. Magistrate Judge

**DISCOVERY MATTER**

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR REVIEW OF, AND OBJECTIONS TO, THE MAGISTRATE JUDGE'S AUGUST 4, 2026 ORDER (DKT. 120)**
**[L.R. 72-2.1; FED. R. CIV. P. 72(a)]**

Date: September 17, 2026
Time: 10:00AM
Courtroom: 5B, Felicitas and Gonzalo Mendez United States Courthouse, Los Angeles

Hon. Hernán D. Vera,
U.S. District Judge

Discovery Cutoff: September 28, 2026
Pretrial Conference: March 2, 2027
Trial: March 23, 2027

METRO-GOLDWYN-MAYER STUDIOS INC., a Delaware corporation; AMAZON STUDIOS LLC, a California limited liability company; UNITED ARTISTS PICTURES INC., a Delaware corporation,

Counterclaimants,

v.

R. LANCE HILL, an individual; and LADY AMOS LITERARY WORKS LTD., a Canadian corporation,

Counterclaim Defendant and Third-Party Counterclaim Defendant.

# I. INTRODUCTION

The Magistrate Judge correctly held that the requested sample of the Studio Parties' non-party acquisition agreements is relevant to whether the *Roadhouse* screenplay was a work-made-for-hire and to Plaintiff's theory that the Literary Purchase Agreement's ("LPA") work-made-for-hire recital is an unenforceable "agreement to the contrary" under 17 U.S.C. § 203. Dkt. 120 at 8. The Court also correctly expanded the date range to 1976–1987 and incorporated Plaintiff's criterion limiting the sample to acquisitions of pre-existing screenplays. *Id*. at 9. The Court erred, however, when it removed the one critical criterion that makes those agreements probative: that the agreement, like Hill's LPA, involve a screenwriter's loan-out entity as a counterparty, on the mistaken ground that it "defeat[s] the purpose of the sampling" and is disproportionate. *Id*. at 9–10.

Those rulings are clearly erroneous and contrary to law. The loan-out structure is not a device to "cherry-pick" agreements that resemble the LPA; it is the structural feature through which the Studio Parties' alleged recharacterization operates: the studio points to the writer's loan-out to recast a pre-existing, independently created "spec" screenplay as a work-made-for-hire for the writer's own loan-out entity. Plaintiff's position is that studios, including United Artists here, routinely include such post-creation "work-for-hire" recharacterizations and acknowledgements when a writer's loan-out entity is involved in the sale of a pre-existing work, stating it is a "work-made-for-hire" for the writer's own entity regardless of whether it qualifies as such under the facts of creation and copyright law. A simple studio-writer purchase agreement cannot show that maneuver because without a loan-out entity, there would be no plausible basis for pretending the work was "for hire."

By stripping the loan-out structure from the compelled sampling of United Artists' literary purchase agreements during the relevant period, the Order rendered the sampling largely futile and irrelevant, defeating its very purpose of showing

United Artists' routine contractual practice when purchasing a completed screenplay from a writer and his loan-out entity as in Hill's LPA. The Studio Parties indisputably have sophisticated contract retention, filing and retrieval systems. The Order's proportionality ruling rests on nothing but the Studio Parties' unsubstantiated *attorney argument*, precisely what governing law forbids. The objected-to portions should be duly modified or set aside.

## II. RELEVANT BACKGROUND

Hill wrote the screenplay *Roadhouse* (the "Screenplay"). In 1986, Hill and his loan-out entity, Lady Amos, entered into the LPA with United Artists ("UA"). Dkt. 120 at 2; Dkt. 91-1 at 6, 20. The LPA is a three-party agreement—it implicates a studio (UA), a screenwriter (Hill), and the screenwriter's loan-out (Lady Amos)—and it contains the work-made-for-hire recital on which the Studio Parties solely rely (the "WMFH Clause"). Dkt. 91-1 at 17, 20. Hill served a statutory notice of termination under 17 U.S.C. § 203, effective in 2023, and alleges the Studio Parties' 2024 *Roadhouse* remake infringes his statutorily recovered rights in his *Roadhouse* screenplay written "on spec" and thereafter purchased by UA. Dkt. 120 at 2–3.

The central issue is whether the Screenplay was a work made for hire for Lady Amos, in which case the Studio Parties contend Hill could not terminate, or Hill's own work subject to § 203 termination. Dkt. 120 at 2–3; Dkt. 91-1 at 17. Plaintiff contends that the 1986 spec screenplay was not a work for hire under the test articulated in *Community for Creative Non-Violence v. Reid,* 490 U.S. 730, 751–52 (1989), that the WMFH Clause is a rote, post-creation recital which cannot defeat statutory termination by retroactively recharacterizing a pre-existing screenplay as a "work-made-for-hire," and as used by the Studio Parties to do so is an unenforceable "agreement to the contrary" under § 203(a)(5). Dkt. 120 at 8; Dkt. 91-1 at 16–19; see *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 290–92 (2d Cir. 2002); *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 986–89 (9th Cir. 2008). That challenged recharacterization operates, as in Hill's LPA, through the writer's

loan-out: in a three-party deal, the studio invokes the loan-out to recast the pre-existing work as the loan-out's "work-made-for-hire"—a mechanism visible "only by examining agreements with loan outs." Dkt. 98 at 4–5.

After several informal discovery conferences, the parties agreed that a sample of 20 agreements was appropriate; the two remaining disputes were (1) the date range and (2) which agreements would "count" toward the sample. Dkt. 120 at 5–7. The Order granted the motion in part—expanding the range to 1976–1987 and incorporating Plaintiff's "pre-existing screenplay" criterion—but denied it in part by rejecting Plaintiff's most critical loan-out criterion as disproportionate. Dkt. 120 at 9–11.

## III. LEGAL STANDARD

A district judge reviews a magistrate judge's order on a non-dispositive pretrial matter, including a discovery order, and must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *accord* 28 U.S.C. § 636(b)(1)(A); L.R. 72-2.1. A finding is clearly erroneous when the reviewing court, on the entire record, is "left with the definite and firm conviction that a mistake has been committed." *Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan,* 410 F.3d 1173, 1178 (9th Cir. 2005). The "contrary to law" prong permits independent review of the magistrate judge's legal conclusions, including the legal standards governing relevance under Rule 26(b)(1) and the allocation of the burden on proportionality.

## IV. ARGUMENT

### A. The Order's Conclusion That the Loan-Out Criterion "Defeat[s] the Purpose of the Sampling" Is Clearly Erroneous.

The Order reasons that "[b]y including only loan-out entities, the criteria defeat the purpose of the sampling to which the parties agreed." Dkt. 120 at 9. That conclusion rests on a mistaken premise: that the parties agreed to an unfiltered, "representative" sample of all of the Studio Parties' literary acquisition agreements,

such that adding a relevance criterion "defeats" its purpose. The parties agreed only to *the size* of the sample (twenty agreements), not that the population from which the sample is drawn would be unfiltered by relevance, which hardly makes sense. Dkt. 120 at 5–7.

The Order's own reasoning refutes its conclusion. In the same breath, the Court incorporated Plaintiff's "pre-existing screenplay" criterion into the sample, a limitation the Studio Parties were constrained to concede. Dkt. 120 at 9; Dkt. 98 at 3. Moreover, defining the sample population by reference to relevance is what Rule 26(b)(1) requires; it does *not* breach the parties' agreement on *sample size*. The loan-out criterion is a specification of the relevant population, like the pre-existing-screenplay criterion the Court accepted. Treating one relevance criterion as permissible while condemning the most critical criterion (use of a loan-out entity) as somehow "defeat[ing] the purpose" of the sample is internally inconsistent and clearly erroneous. Business dealings with third parties *in similar circumstances* (i.e., a literary purchase from a writer's *loan-out entity*) are proper objects of discovery because they "may show a customary practice and course of dealing" bearing on the disputed terms. *Copeland Corp. v. Choice Fabricators, Inc.*, No. 3:04CV398, 2007 WL 9717680, at *2 (S.D. Ohio Apr. 6, 2007). The loan-out criterion targets the agreements comparable to the LPA—and thus the most probative—not the least. And, as stated, without the loan-out criterion the sampling is illusory: absent a screenwriter's entity, there is no entity for whom the studio could even arguably claim the pre-existing screenplay was a "work-made-for-hire," because only the individual writer(s) are involved in the sale of the screenplay.

**B. Excluding the Loan-Out Structure Is Contrary to Law Because That Structure Is What Makes the Agreements Probative.**

The Order agreed that the content of the Studio Parties' other agreements "could be relevant to the Hill Parties' theory that the *Roadhouse* screenplay was not, in fact, a work made for hire," and invoked 17 U.S.C. § 203(a) and *Marvel*

*Characters, Inc. v. Simon*, 310 F.3d 280 (2d Cir. 2002). Dkt. 120 at 8. Plaintiff's theory is more precise than the Order credited: the recharacterization of a pre-existing, independently created screenplay as a work made for hire is accomplished *through* the writer's loan-out. In a three-party agreement, the studio points to the loan-out to recast the pre-existing work as the loan-out's work made for hire—the kind of post-creation maneuver § 203(a)(5) and *Marvel v. Simon* forbid as an "agreement to the contrary." Dkt. 91-1 at 17–21; Dkt. 98 at 4–5.

A two-party studio-writer agreement, by contrast, cannot demonstrate that mechanism; there is no loan-out to serve as the vehicle for recharacterization. The question whether the Studio Parties used a writer's loan-out as cover to recharacterize pre-existing works "is answered only by examining agreements with loan outs." Dkt. 98 at 5. By removing the loan-out structure, the Order compels a sample that cannot test the very theory the Order acknowledged to be relevant.

Ordering discovery framed to exclude the feature that makes it probative inverts the relevance inquiry under Rule 26(b)(1) and is contrary to law. It also effectively resolves the merits of Plaintiff's theory at the discovery stage, contrary to the settled rule that the scope of discovery is broader than admissibility. *See* Dkt. 98 at 4. The Order's unexplained characterization of loan-out agreements as "of limited importance," Dkt. 120 at 10, cannot be reconciled with its own relevance holding, and with the central claims and theories of both Plaintiff and Defendants in this case. Dkt. 120 at 2–3; Dkt. 91-1 at 17. Courts have long recognized that a studio's or publisher's use of a form work-made-for-hire recital to recast an already-created work cannot defeat a statutory termination right. *Simon*, 310 F.3d at 290–91 (an agreement executed after a work's creation stipulating that it was "made for hire" is an "agreement to the contrary" that may be disavowed under the Act); *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 315–16 (2d Cir. 2013) (a "forward-looking form contract" extended to all freelance artists "could not render [the work] a 'work made for hire' ex post facto"); *Ray*

*Charles Found. v. Robinson*, 919 F. Supp. 2d 1054, 1065–66 (C.D. Cal. 2013) (the Copyright Act "prevents the Court from interpreting the agreements … as limiting [the] statutory termination rights"), rev'd on other grounds, 795 F.3d 1109 (9th Cir. 2015); see also *Mewborn*, 532 F.3d at 984–85 (termination may be effected "notwithstanding any agreement to the contrary"). That the requested agreements and loan-out criterion would prove the point through the Studio Parties' own course of conduct only confirms their relevance. See *Warner Bros., Inc. v. Curtis Mgmt. Grp., Inc.*, No. CV 91-4016-WMB, 1995 WL 420043, at *12 (C.D. Cal. Mar. 31, 1993) (evidence of "a part[y's] actions under identical provisions in other contracts is relevant to aid … interpretation … because it shows course of conduct"); *Moebius v. HB USA Holdings, Inc.*, No. CV 21-2109 CJC (PVCx), 2022 WL 17219089, at *8 (C.D. Cal. May 25, 2022) (discoverability is "more expansive than admissibility," entitling a party to "a wider range" of comparable agreements). And that is precisely why the Studio Parties have fought tooth and nail to avoid production of a *relevant* sampling of screenplay purchase agreements *with a screenwriter's loan-out entity* comparable to Hill's LPA.

### C. The Proportionality Ruling Is Contrary to Law Because It Credited Unsubstantiated Attorney Argument in Place of the Required Evidentiary Showing.

The Order found the loan-out criterion disproportionate because the Studio Parties "must search an unknown number of project files to locate agreements meeting the Hill Parties' specific criteria." Dkt. 120 at 10. But the party resisting discovery bears the burden of establishing undue burden with specificity—through competent evidence, ordinarily a declaration from a person with knowledge of the recordkeeping system, quantifying the time and resources the search would require. Generalized attorney argument does not suffice. See Dkt. 98 at 5–7 & authorities cited therein; *Vanguard Logistics v. Robinson*, No. CV 20-9880 JAK (PVCx), 2024 WL 1171654, at *7 (C.D. Cal. Mar. 6, 2024); *Shaw v. Experian Info. Solutions,*

*Inc.*, 306 F.R.D. 293, 301 (S.D. Cal. 2015); *Cyr v. Reliance Standard Life Ins. Co.*, No. CV 23-06257 DSF (RAOx), 2024 WL 5717158, at *8 (C.D. Cal. July 10, 2024) (without information on "the time or resources" a search would require, "the Court cannot assess whether the burden would be undue"); *Cliffstar Corp. v. Sunsweet Growers, Inc.*, 218 F.R.D. 65, 69 (W.D.N.Y. 2003) (a burdensomeness objection must be supported by "an affidavit of a person with knowledge of the recordkeeping system"); *Residential Constructors, LLC v. Ace Prop. & Cas. Ins. Co.*, No. 2:05-cv-01318-BES-GWF, 2006 WL 3149362, at *9 (D. Nev. Nov. 1, 2006) ("generalized and unsupported allegations of undue burden are not sufficient"); *Pham v. Wal-Mart Stores, Inc.*, No. 2:11-cv-01148-KJD-GWF, 2011 WL 5508832, at *5 (D. Nev. Nov. 9, 2011).

The Studio Parties made no such showing. Their sole supporting declaration, Dkt. 91-29, did not address burden, and their briefing offered no time estimate and no description of how their files are actually organized. Dkt. 98 at 6–7. Crediting an "unknown number of project files" as dispositive of proportionality, on a record the resisting party left unquantified, relieved the Studio Parties of their evidentiary burden and is contrary to law. The error is compounded because the loan-out criterion *narrows* the qualifying population—only pre-existing-screenplay acquisitions from a loan-out entity "count"—and Plaintiff offered a preamble-only review method to minimize effort, under which the Studio Parties need only review an agreement's parties and preamble to determine whether it qualifies. Dkt. 91-1 at 23; Dkt. 98 at 7. The Order did not address that proposal. On this record, there is no competent evidence that Plaintiff's criterion increases, rather than decreases, the Studio Parties' burden. Moreover, it is well known that major Hollywood studios like the Studio Parties here have sophisticated corporate contract retention and filing systems from which relevant contracts are specifically catalogued and readily retrievable. In all events, that the responsive agreements "might be voluminous

does not suffice" to establish an undue burden. *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1033 (E.D. Cal. 2010).

**D. The Error Is Prejudicial and Warrants Correction Now.**

The work-made-for-hire question is central to both Plaintiff's claims and the Studio Parties' counterclaims. Dkt. 120 at 2–3; Dkt. 91-1 at 17. A sample stripped of the critical loan-out structure yields irrelevant agreements that cannot test the Studio Parties' recharacterization theory, leaving Plaintiff without the evidence the Order otherwise recognized as relevant. Correcting the methodology now, rather than after a deficient production, conserves the parties' and the Court's resources and ensures the agreed twenty-agreement sample serves its intended purpose.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court modify the August 4, 2026 Order to include Plaintiff's criterion that a qualifying agreement must have, as a counterparty, the screenwriter's loan-out entity—like the operative LPA—or, in the alternative, set aside the objected-to portions of the Order as clearly erroneous and contrary to law and re-refer the matter to the Magistrate Judge with instructions.

DATED: August 18, 2026

TOBEROFF & ASSOCIATES, P.C.

By: */s/ Marc Toberoff*
Marc Toberoff
*Attorneys for Plaintiff and Counterclaim Defendant R. Lance Hill and Third-Party Counterclaim Defendant Lady Amos Literary Works, Ltd.*

**L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff R. Lance Hill, certifies that this brief contains 2,494 words, which complies with the word limit of L.R. 11-6.1.

*/s/ Marc Toberoff*
Marc Toberoff